UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-01651-ODW-AYP Date: July 24, 2026

Title Lighthouse Healthcare Center, LLC v. National Fire & Marine Insurance Company et al.

Present: The Honorable: Anna Y. Park, United States Magistrate Judge

| M. Pogosyan | None |
| --- | --- |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: None | Attorneys Present for Defendants: None |

**Proceedings: (In Chambers )INFORMAL DISCOVERY CONFERENCE FINAL ORDER ON PLAINTIFF'S REQUEST FOR RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS (DKT. NO. 42, 48, 50 & 52.)**

## I. BACKGROUND

This insurance dispute arises from Defendants' alleged failure to indemnify Plaintiff for a default judgment that has been entered against it in the underlying action (the "Action"). (Dkt. No. 1.) On July 13, 2026, the Court held an Informal Discovery Conference ("IDC") to address Plaintiff's Request for Responses to their Requests for Production of Documents (the "RFPs") Nos. 24 through 28. At the IDC, Plaintiff narrowed the dispute to RFP Nos. 25, 27, and 28 ("disputed RFPs").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-01651-ODW-AYP Date: July 24, 2026

Title Lighthouse Healthcare Center, LLC v. National Fire & Marine Insurance Company et al.

All three of the disputed RFPs seek discovery of claims files, from 2019 to the present, for long-term care facilities, assisted living facilities, and/or hospitals under liability policies where MedPro denied coverage based on the following grounds: (1) for failing to timely tender the claim (RFP No. 25); (2) MedPro sought or did withdraw a defense on the grounds the case was inactive (RFP No. 27); and (3) where MedPro was unable to timely investigate or defend due to acts or omissions of the insured (RFP No. 28). Defendants assert that Plaintiff is not entitled to this kind of discovery because Plaintiff does not allege a pattern or practice of misconduct, and that reviewing the files would be excessively burdensome. (Dkt. No. 42 at 1.)

The Specific requests are as follows:

**RFP No. 25**

A true and correct copy of the claims files of all other insured long-term care facilities, assisted living facilities, and/or hospitals with liability policies issued by MedPro from 2019 to the present, whose claim MedPro received notice of the underlying claim sought to, or did, deny coverage for on the basis that the insured failed to timely tender the claim.

**RFP No. 27**

A true and correct copy of the claims files of all other insured long-term care facilities, assisted living facilities, and/or hospitals with liability policies issued by MedPro from 2019 to the present, in which MedPro sought to, or did withdraw a

defense on the ground that the underlying case was inactive.

**RFP No. 28**

A true and correct copy of the claims files of all other insured long-term care facilities, assisted living facilities, and/or hospitals with liability policies issued by MedPro from 2017 to the present, whose claim MedPro sought to, or did, deny coverage for any default judgment on the basis that MedPro was unable to timely investigate or defend due to acts or omissions of the insured.

Defendants object to each of the disputed RFPs on the grounds that the requests are overly broad, unduly burdensome, and not narrowly tailored to seek discovery of nonprivileged matters that are relevant to the claims or defenses in this Action or proportional to the needs of this case. (Dkt. No. 42-2.) Defendants also object on the basis that this Action "concerns only Plaintiff's Policy and any claim(s) Plaintiff made during the *Donnell* Suit." (Dkt. No. 42-2 at 5.) As such, Defendants assert that third-party claims have no reasonable nexus to any claim or defense in this Action. *Id*. Defendants additionally object to the disputed RFPs to the extent they seek "information from locations, time periods, and policy types and forms that are wholly unrelated to this case that is not relevant to the claims or defenses in this lawsuit nor proportional to the needs of this case." *Id*. Defendants further object to the disputed RFPs to the extent they seek "the confidential information of

Defendants' other insureds and other persons, and/or private health information protected from disclosure by federal law pursuant to HIPAA, 45 CFR § 164.501 *et. seq*." *Id.* Defendants also argue that responding to the disputed RFPs would require an exceedingly burdensome search that is far disproportionate to Plaintiff's needs in this case. *Id*. Defendants additionally assert general objections on the basis of attorney-client privilege, work-product doctrine, and other privilege, protection, or immunity. On the stated grounds, Defendants did not produce any documents.

In the Request for Informal Telephonic Discovery Conference (the "Joint IDC Request"), Defendants also argue that "Because Plaintiff does not allege a pattern or practice of misconduct, third-party claim files are irrelevant. *See San Diego Unified Port Dist. v. Underwriters at Lloyd's*, 2016 WL 4496824, at *1-2 (S.D. Cal. May 26, 2016); *Kahlenberg v. Bamboo IDE8 Ins. Servs*., LLC, 2021 WL 8693114, at * 4 (C.D. Cal. May 19, 2021)." (Dkt. No. 42 at 1.)

Based upon the written submissions by the parties, the Joint IDC Request, and arguments at the IDC hearing, the Court tentative GRANTS IN PART AND DENIES IN PART Plaintiff's Request for Production of Documents to RFP Nos. 25, 27, and 28.

## II. PERTINENT LAW

Federal Rule of Civil Procedure 26(b)(1) permits discovery regarding any non-privileged matter that is relevant to a claim or defense and proportional to the

needs of the case. Proportionality is evaluated in light of the importance of the issues at stake, the amount in controversy, the parties' access to information and resources, the importance of the discovery to resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Information within this scope need not be admissible to be discoverable. *Id*. Relevance is broadly defined and turns on whether the information has any tendency to make a consequential fact more or less probable. Fed. R. Evid. 401.

The 2015 amendments to Rule 26 reemphasize that even plainly relevant discovery is not unlimited. Courts are encouraged to impose "reasonable limits" and to ensure discovery requests are tailored to the needs of the case. *See Roberts v. Clark Cnty. Sch. Dist.,* 312 F.R.D. 594, 602–03 (D. Nev. 2016). Rule 26(b)(2)(C) further obligates courts to limit discovery that is cumulative, duplicative, or obtainable from a more convenient or less burdensome source.

Pursuant to Rule 34, any party may serve on any other party a request for the production or inspection of documents that is within the scope of Rule 26(b), and is in the responding party's possession, custody or control. Fed. R. Civ. P. 34(a). Documents are deemed to be within a party's possession, custody or control if the party has actual possession, custody or control thereof or the legal right to obtain the property on demand. *In re Bankers Trust Col.*, 61 F. 3d 465, 469 (6th Cir. 1995), cert. Dismissed, 517 U.S. 1205 (1996). A party has an obligation to conduct a reasonable inquiry into the factual basis of its responses to discovery, and based on that inquiry,

a party responding to a Rule 34 production request is under an affirmative duty to seek information reasonably available to it from its employees, agents, or others subject to its control. *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. CA. 2006) (citations and internal quotation marks omitted.).

## III. DISCUSSION

### A. General Objections

[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper–especially when a party fails to submit any evidentiary declarations supporting such objections." *A. Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186, 188 (C.D. Cal. 2006) (citations omitted) (faulting defendant for making "boilerplate objections to almost every single request for production, including broad relevancy objections, objections of 'overly burdensome and harassing,' 'assumes facts not in evidence,' privacy, and attorney-client privilege/work product protection").

In this case, the Court finds that Defendant's general objections asserting the attorney-client privilege, work product doctrine, and other privilege, protection or immunity are boilerplate. Any assertion of a privilege requires a privilege log and a specific assertion tailored to each request. As such, the Court OVERRULES the general boilerplate objections.

The Court also finds that Defendants' general objections based on the confidential nature of other insureds and other persons, and private health

information under federal law pursuant to HIPAA, 45 CFR § 164.501 *et. Seq* are improper.

On September 15, 2025, the Court approved a Stipulated Protective Order in this Action which specifically contemplated covering "confidential medical information of customers, information regarding confidential business practices, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes." (Dkt. No. 25.) Hence, the operative Protective Order more than protects the parties from concerns related to the disclosure of privileged or otherwise protected documents. Moreover, at the IDC, the Plaintiff narrowed their RFP requests in the claims files to Defendants' handling or disposition of the claims and is not seeking discovery of information related to individual personal information or medical related information. (Dkt. No. 42.) Given Plaintiff's narrowing and the operative Protective Order, Defendants' objections based on private health information are OVERRULED.

B. Scope

Plaintiff seeks discovery of documents from 2019 to the present. Plaintiff asserts that the claim was tendered in 2019 and that the claim was ultimately denied in 2025. (Dkt. No. 1 ¶¶ 20 and 29.) Courts in this district appropriately limit the relevant discovery period in breach of contract disputes to the timeframe spanning

the parties' negotiations. *See SSI U.S., Inc v. Ferry,* No. 221CV02073JVSPDX, 2022 WL 17348203, at *4 (C.D. Cal. Sept. 14, 2022)*; see also Integon Preferred Ins. Co. v. Saavedra,* No. CV 18-06689-GW (RAO), 2019 WL 4228372, at *4 (C.D. Cal. July 12, 2019). The period of 2019-2025 encompasses the timeframe relevant to the parties' coverage negotiations in this Action, beginning when the claim was noticed in 2019 and ending with its denial in 2025. (Dkt. No. 1 ¶¶ 20 and 29.) Consequently, discovery of documents from the period of 2019-2025 is both relevant and proportional to the claims and defenses at issue in this Action.

C. Discoverability of Claim Files of Others

California and federal courts have found that "an insurer's handling of other claims is relevant to punitive damages and common law 'bad faith' claims." *Van Duyn v. Am. Sec. Ins. Co.,* No. CV 08-5748-GW (CTx), 2009 WL 10672575, at *3 (C.D. Cal. Apr. 14, 2009) (citing examples from California and federal courts). The "relevance of a non-party insureds' information," however, "turns on whether the non-party insureds' claims were similar to the [plaintiff's.]" *Sentry Select Ins. Co. v. Quaid Harley Davidson, Inc.*, EDCV202145JWHKKX, 2022 WL 1694438, at *4 (C.D. Cal. Jan. 7, 2022).

The relevance of the non-party insureds' information turns on whether the non-party insureds' claims were similar to plaintiff's, and not whether plaintiff has sued under a particular legal theory. *See, e.g., State Farm v. Mut. Auto. Ins. Co. v.*

*Campbell*, 538 U.S. 408, 423–24 (2003) (holding other acts not relevant because they were dissimilar); *see also Van Duyn v. Am. Sec. Ins. Co.*, No. CV 08-5748-GW(CTX), 2009 WL 10672575, at *3 (C.D. Cal. Apr. 14, 2009)("Plaintiff has adequately established that discovery relating to the non-party insureds is relevant to her claims in this action, insofar as the requests seek information pertaining to similarly situated insureds.").

Here, Plaintiff's requests are narrowly tailored to claims files that have specific similar characteristics to the underlying *Donnell* Claim. Plaintiff seeks claims files reflecting claims that were denied on the following grounds: (1) for failing to timely tender the claim (RFP No. 25); (2) MedPro sought or did withdraw a defense on the grounds the case was inactive (RFP No. 27); and (3) where MedPro was unable to timely investigate or defend due to acts or omissions of the insured (RFP No. 28). These specific categories of claims share key characteristics with the Plaintiff's claims and are therefore relevant to Plaintiff's claims in this Action.

Plaintiff is a skilled nursing facility. (Dkt. No. 1 at ¶3.) Discovery seeking the claim files of other "long-term care facilities, assisted living facilities, and/or hospitals with liability policies" (Dkt. No. 42-2 at 4 and 6-8) is overbroad and disproportionate. This matter is an individual bad-faith action and the distinct medical entities identified are not similar to the Plaintiff, which is a "skilled nursing facility" (Dkt. No. 1 at ¶3). Therefore, such discovery is irrelevant, and the Court limits the disputed RFPS to skilled nursing facilities.

At the IDC hearing, Defendants acknowledged that the case involves a senior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-01651-ODW-AYP Date: July 24, 2026

Title Lighthouse Healthcare Center, LLC v. National Fire & Marine Insurance Company et al.

care liability policy and that a special unit of adjusters handle these claims. (Dkt. No. 46.) Defendants contend that the adjuster(s) that handled the Plaintiff's claim(s) were within this specialized unit. Defendants assert that discovery of all claims nationally would not be proportional to the claims or defenses in this case. The Court agrees. As such, the Court limits the scope of the third-party claims to those handled by the adjusters that handled the Plaintiff's claim(s). To allow claims handled by adjusters other than those that handled Plaintiff's claim, in this individual bad faith case, would be overly broad and not proportional to the claims or defenses in this Action.

The parties rely upon California law and established claims-handling practices to support their positions. Therefore, discovery of claims handling information beyond the scope of California law and standard practice is not proportional to the claims or defenses in this case. Given that Plaintiff's individual case arises under California law, limiting discovery to California law and practices satisfies the proportionality requirements of Federal Rule of Civil Procedure 26(b)(1).

D. Overbroad and Burdensome

At the IDC hearing, Defendants requested leave to submit a Declaration of Leah Nollenberger regarding MedPros electronic Claim systems. Accordingly, the Court grants Defendants leave to file the Declaration of Ms. Nollenberger, and the Court incorporates her declaration into Dkt. No. 42. Defendant is to file Ms. Nollenberger's declaration within five (5) days of this Order.

Defendants assert that their claims tracking systems have extremely limited search capabilities. (Dkt. No. 42.) Specifically, Defendants assert that the disputed RFPs "are not tailored by policy type, adjuster, or the unique facts at issue and, as MedPro has explained in detail, the claim systems do not have the capability to search for denied claims or to perform key-word searches. For MedPro to find responsive information, a MedPro employee would have to manually review tens of thousands of claim files on two systems. MedPro has provided Plaintiffs with a detailed explanation of the burden and will produce a supporting declaration" (Dkt. No. 42).

Ms. Nollenberger states in her declaration that OASIS is a system "that was designed to satisfy MedPro's needs in monitoring and adjusting claims." (Dkt. No 42). Defendants contend that OASIS serves to store claim information for NF&M and other companies and lines of business. *Id*. Defendants assert that the systems cannot be searched for denied claims, claims denied for particular reasons, or any of the categories sought by the plaintiff. (Dkt. No. 42.) Defendants represent that the Oasis system has various pre-defined fields. *Id*. Defendants assert that the information responsive to the disputed RFPs would likely be contained in Onbase which also cannot be searched. (Dkt. No. 42.)

However, the declaration is silent as to the information OASIS captures to "monitor and adjust" claims. For example, it does not state whether the system

includes text fields for adjusters to track information. Ultimately, the declaration completely omits any description of the system's actual functionality.

The declaration also states that "neither OASIS nor OnBase allows MedPro to search for denied claims, claims denied for particular reasons, claims involving delayed coverage determinations, or claims involving alleged prejudice default judgments, late notice." (Dkt. No. 42). Defendants assert that this inquiry will require document-by document review. (Dkt. No. 42.) Even if the database itself cannot be searched directly, Plaintiff correctly notes that the underlying data can be extracted and put into a searchable and usable format such as Excel, concordance, relativity, or other platforms. (Dkt. No. 42.)

FRCP 26(f) contemplates the parties' discussion of how to handle electronically stored information ("ESI") at the early meeting of counsel. FRCP 26(f)(3)(c) specifically requires the parties to discuss "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced." In the Joint Rule 26(f) Report, the parties reported to the Court that "the parties may need the use of third-party vendors for collecting electronically stored information related to discoverable communications and have agreed to meet and confer in that regard upon service of the discovery requests. The parties will meet and confer in good faith regarding the scope of custodians and search terms timely in order to avoid delay, should the same be

necessary." (Dkt. No. 18.) As such, it appears, the parties anticipated the need for protocols for handling electronically stored information ("ESI").

The parties are to meet and confer, utilizing the assistance of a Litigation Support Specialist on handling ESI, to evaluate ESI protocols and identify the specific "monitoring and adjusting" information captured by the system. The declaration lacks a transparent explanation of system functionality. It is unclear to the Court how software designed to "monitor and adjust claims" would track only the bare minimum fields identified in the declaration.

The handling of ESI is the responsibility of both parties, and the Federal Rules contemplate that the parties engage in meaningful meet and confer discussions to respond to this Order. There is always some manner of manual review so that alone is insufficient to release Defendants of their obligation to comply with providing relevant information in this Action. The mere fact that production requires effort also does not in and of itself excuse a party from meeting its obligations to produce relevant and proportional documents. Hence, with the narrowing by the Court, Defendants' burdensome objections are overruled.

E. Post Tentative Ruling Submissions

At the request of the parties, the Court issued a tentative ruling wherein the parties were offered an opportunity to provide a response within three (3) days of the Court's tentative Order. The parties had one (1) day to respond to the opposing

party's response. The Court stated that the submissions would be considered prior to issuing a final ruling. (Dkt. No. 47.)

The parties filed their responses. Plaintiff accepts the Court's tentative ruling and states that the parties continue to meet and confer to resolve the dispute. (Dkt. No. 48.) Defendants object to the tentative ruling seeking modification or clarification of the search to be conducted. Defendants "do not seek to avoid the narrowed discovery directed by the Court." (Dkt. No. 50.) Defendants set forth their efforts of searching OASIS and extracting the information into a database. Accordingly, Defendants request the court to approve the following: "(1) MedPro will export the claim notes for the 240 OASIS claims into a Microsoft Access database. (2) The parties will promptly meet and confer regarding reasonable search terms directed to the three disputed categories: late tender, withdrawal of defense because the matter was inactive, and inability to investigate or defend because of acts or omissions of the insured. (3) MedPro will run the agreed search terms across the exported claim notes. For any claim identified by the agreed search terms, MedPro will review the claim notes and associated OnBase documents to determine whether the claim falls within RFP No. 25, 27, or 28. (5) MedPro will produce responsive, nonprivileged claim-handling documentation consistent with the Court's limitations and the operative Protective Order." (Dkt. No. 50.) Plaintiff filed a response requesting the use of AI to search the files with key terms to obviate the for manual searches. (Dkt. No. 52). Defendants' submission was silent as to use of

AI and whether an ESI specialize was engaged to discuss these methods. Defendants would still have to do a manual review of some kind to ensure that the parameters set by the Court are being met.

The Court finds that Defendants' proposal appears reasonable and consistent with the Court's Order in handling documents in OASIS and corresponding OnBase files. Given the burdensome argument raised by the Defendants, the parties are to meet and confer and are free to agree to expedite the review by using a common program to search and sort the documents to ensure that the production comports with the Court's Order in handling documents from the OASIS database and corresponding OnBase files. These discussions are contemplated in developing ESI protocols. Any documents withheld based upon a privilege shall be set forth in a privilege log.

F. OnBase Database

Defendants assert that searches in the OnBase database are not proportional and ask the Court to excuse their obligation to conduct searches from this database. Defendants assert that "OnBase is MedPro's enterprise content management platform and functions as an electronic filing cabinet. Documents associated with an open claim are stored under the claim number, while documents that do not result in an open claim are stored in a general file called "Ops No Coverage." Because no case number is assigned, the documents in the "Ops No Coverage" are not tracked in OASIS. (Dkt. No. 50.) Defendants assert that doing a search of OnBase files is

not proportional to a claim or defense because while there may be documents that are responsive in OnBase, it would entail searching 4,910 files. (Dkt. No. 50 at 3.) Defendants submit declarations to support their position. (Dkt. No. 50-1 and 50-2.)

Documents associated to a case file in OASIS shall be searched and produced as set forth above. However, the Court agrees that, conducting a separate OnBase search of files with case numbers is duplicative and not necessary. However, OnBase is the sole repository for "Ops No Coverage" files and cannot be cross referenced with OASIS. (Dkt. No. 50.) It is not clear whether the 4,910 files are only "Ops No Coverage" files or all files stored in OnBase that are responsive to the disputed RFPs. It is also not clear if the parties explored whether the OnBase database can be downloaded into a searchable format, as it did with OASIS. Again, the unanswered question in Defendants' submission related to OnBase is what can be done to search for the specific files in question. (Dkt. No. 50.) What is not explained is how the documents are maintained and if the parties explored utilizing optical scanners or other means to integrate optical character recognition ("OCR") to allow for searches of documents. OCRing the documents to allow for searches with key words is a basic litigation support function and is an option in developing ESI protocols. It appears the parties need to meet and confer more robustly with an ESI specialist and develop ESI protocols for searching OnBase for "Ops No Coverage" files, given that it is the only repository for "Ops NO Coverage" files that are responsive to RFP nos. 25, 27, and 28. Unless defendants can provide a

definitive declaration to say no responsive documents are contained in the "Ops No Coverage" file, the Defendants have an obligation to explore ESI protocols to extract, search, and produce responsive documents. Plaintiff recommends the use of AI to expedite the searches. The parties are free to explore this option. (Dkt. No. 52).

The Court Orders the parties with respect to "Ops No Coverage" files in OnBase which contain claims that were not given a case number, to meet and confer and discuss how the documents are maintained, if the files can be OCRed to be searchable, and develop a means to download and search utilizing key words to respond to the disputed RFPs. The parties are free to explore other programs to expedite the search. Hence, the Court's original Order stands as to OnBase files but is limited to corresponding files in OASIS with case numbers and "Ops No. Coverage" files that involve coverage issues as defined by the Defendants. These documents are proportional to a defense or claim in this case and since Defendants are solely in possession of these files, the parties are to meet their obligations under FRCP 26(f) to develop ESI for protocols for these subset of documents.

## IV. CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Plaintiff's Request for Responses to the disputed RFP Nos.25, 27 and 28 as follows: Defendants are to produce responsive documents and provide responses within twenty (20) days of this Order claims files from 2019 to 2025 that involve senior care liability policies for

senior nursing facilities in California by the adjuster(s) who handled the Plaintiff's claim(s). Defendants are to produce claims files, governed under California law and practice, that were denied based on the following grounds : (1) failing to timely tender the claim (RFP No. 25); (2) where MedPro sought or did withdraw a defense on the grounds the case was inactive (RFP No. 27); and (3) where MedPro was unable to timely investigate or defend due to acts or omissions of the insured (RFP No. 28). Based upon the narrowing by the Plaintiff, discovery related to the specific circumstances of third-party claims (medical information and personal identifying information) are not to be produced. Discovery is strictly limited to Defendants' claims-handling documentation and data.

Within five (5) days of this Order, the parties are to meet and confer and develop ESI protocols for searching for responsive documents in both OASIS and OnBase databases. Within five (5) days of this Order, the parties are to each engage a litigation support specialist to participate in the meet and confer process to discuss what information can be extracted from Defendants' databases, what can be searched, the methodology of the data extraction, how the information should ultimately be produced, and other issues unique to the type of data. The litigation support specialist is to participate in the meet and confer to assess what information can be extracted/downloaded from Defendants' systems, explore what "monitor and adjust" functions encompass, and develop protocols for downloading the information into useable formats to comply with this Court's Order from both systems identified by the Defendants. The parties are to explore whether there are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-01651-ODW-AYP Date: July 24, 2026

Title Lighthouse Healthcare Center, LLC v. National Fire & Marine Insurance Company et al.

notes that are inputted by the adjusters, and whether the information on the handling of the claims can be isolated and/or downloaded. After determining the universe of fields and information being captured in the databases, the parties are to determine whether the information can be extracted into a secondary database to allow for searches based upon the narrowing by this Court. The review and production of OnBase documents with case numbers are limited to those that overlap with OASIS. The parties are to meet and confer as outlined by the Court. Additionally, the parties are to meet and confer to discuss how files in OnBase entitled "Ops No Coverage" files are maintained, whether the documents can be OCRed or some equivalent to allow for searchability subject to the narrowing by the Court. The parties are to explore the use of programs recommended by the Plaintiff and the parties are free to incorporate the use of other programs into the ESI protocols. The parties are cautioned to work expeditiously given the discovery cutoff in this case.

IT IS SO ORDERED.

Initials of Preparer mp