GREENBERG TRAURIG, LLP
Jon T. Neumann (CA SBN 277331)
NeumannJ@gtlaw.com
Zachary H. Levy (admitted *pro hac vice*)
Zach.Levy@gtlaw.com
2375 E. Camelback Road, Ste. 800
Phoenix, AZ 85016
Telephone: 602.445.8411
*Attorneys for Defendants National Fire & Marine Insurance Company and MedPro Group, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Lighthouse Healthcare Center, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>National Fire & Marine Insurance Company, a Nebraska Corporation; MedPro Group, Inc. and DOES 1-110,<br><br>Defendants. | Case No. 2:25-cv-01651-ODW (AYPx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed concurrently with: *Notice of Motion and Motion; L.R. 56-1 Statement of Uncontroverted Facts; Declaration of Jon T. Neumann; Declaration of John Hopping; and [Proposed] Order*]<br><br>Hearing Date: November 23, 2026<br>Hearing Time: 1:30 p.m.<br>Courtroom: 5D, 5th Floor<br>Assigned to: Hon. Otis D. Wright II |

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ 2

I. INTRODUCTION ........ 6

II. STATEMENT OF RELEVANT FACTS ........ 7

- A. Plaintiff and the Donnell Incident. ........ 7
- B. Plaintiff's Policy Applications. ........ 9
- C. The Policy. ........ 11
- D. The *Donnell* Suit. ........ 13

III. ARGUMENT ........ 13

- A. Legal Standard. ........ 13
- B. Defendants Preserved the Material Misrepresentation Defense and Timely Disclosed It. ........ 14
- C. Plaintiff's Claims Fail As a Matter of Law Because Plaintiff Made Material Misrepresentations in its Policy Applications. ........ 16
- D. The Material Misrepresentation Defense Defeats Plaintiff's Claims. ........ 23
- E. In the Alternative, Exclusions III.D and III.X Independently Bar Coverage for a Potential Claim Plaintiff Knew of and Should Have Reported to Its Prior Insurer. ........ 23

IV. CONCLUSION ........ 25

CERTIFICATE ON USE OF ARTIFICIAL INTELLIGENCE ........ 27

CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2 ........ 27

CERTIFICATE OF SERVICE ........ 28

## TABLE OF AUTHORITIES


**Cases** **Pages(s)**

*Butcher v. Gulf Ins. Co.*, No. C 03-3553 PJH, 2005 WL 1514086 (N.D. Cal. June 15, 2005) ... 20

*Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117 (9th Cir. 2004) ... 8

*Camarillo v. McCarthy*, 998 F.2d 638 (9th Cir. 1993) ... 14

*Coregis Ins. Co. v. Camico Mut. Ins. Co.*, 959 F.Supp. 1213 (C.D. Cal. 1997) ... 24, 25

*Ebert v. County of San Bernardino*, 832 F. Supp. 3d 1040 (C.D. Cal. 2026) ... 15

*Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003) ... 8

*Garcia v. Salvation Army*, 918 F.3d 997 (9th Cir. 2019) ... 15

*Imperial Cas. & Indemn. Co. v. Sogomonian*, 243 Cal. Rptr. 639 (App. 1988) ... 18, 20, 21

*Kinsale Ins. Co. v. Golden Beginnings, LLC*, 557 F. Supp. 3d 1000 (C.D. Cal. 2021) ... 19, 24, 25

*Kunz v. Utah Power & Light Co.*, 913 F.2d 599 (9th Cir. 1990) ... 8

*LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 67 Cal. Rptr. 3d 917 (App. 2007) ... 22, 23

*Ledo Fin. Corp. v. Summers*, 122 F.3d 825 (9th Cir. 1997) ... 14

*Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436 (9th Cir. 1997) ... 14

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881 (9th Cir. 1996) ... 8

*Mitchell v. United Nat'l Ins. Co.*,
25 Cal. Rptr. 3d 627 (App. 2005) .......... 18, 19, 22, 23

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) .......... 14, 15

*Pacific Emps. Ins. Co. v. Superior Court*,
270 Cal. Rptr. 779 (App. 1990) .......... 22

*Simmons v. Navajo County*,
609 F.3d 1011 (9th Cir. 2010) .......... 14

*Superior Dispatch, Inc. v. Ins. Corp. of New York*,
104 Cal. Rptr. 3d 508 (App. 2010) .......... 16, 18, 23, 25

*Taylor v. Sentry Life Ins. Co.*,
729 F.2d 652 (9th Cir. 1984) .......... 19, 23

*Tran v. Kansas City Life Ins. Co.*,
228 F. Supp. 3d 1068 (C.D. Cal. 2017) .......... *passim*

*U.S. Specialty Ins. Co. v. Bridge Cap. Corp.*,
482 F. Supp. 2d 1164 (C.D. Cal. 2007) .......... 19

*U.S. Specialty Ins. Co. v. Calderon*,
No. 2:24-cv-05998-CV(ASx), 2025 WL 3085611 (C.D. Cal. Sept. 24, 2025) .......... 20

*United Farm Workers of Am. v. Hudson Ins. Co.*,
No. 1:18-cv-00134-JLT, 2019 WL 1517568 (E.D. Cal. Apr. 8, 2019) .......... 20

*W. World Ins. Co. v. Prof'l Collection Consultants*,
721 Fed. Appx. 621 (9th Cir. 2018) .......... 19

**Statutes**

Cal. Ins. Code § 330 .......... 16

Cal. Ins. Code § 331 .......... 16

Cal. Ins. Code § 332 .......... 16

Cal. Ins. Code § 334 .......... 18

Cal. Ins. Code § 359 .......... 16

Cal. Ins. Code § 360 .......... 18

**Court Rules**

Fed. R. Civ. P. Rule 8(c) .......... 14

Fed. R. Civ. P. Rule 26(a) .......... 15

Fed. R. Civ. P. 26(e)(1)(A) .......... 15

Fed. R. Civ. P. 37(c)(1) .......... 15

Fed. R. Civ. P. 56(a) .......... 13

Fed. R. Civ. P. 56(c)(2) .......... 8

Fed. R. Evid. 801(c)(2) .......... 8

Plaintiff Lighthouse Healthcare Center, LLC ("Plaintiff") misrepresented material information—its knowledge of the very incident that resulted in this lawsuit—in its Policy applications to Defendants National Fire & Marine Insurance Co. ("NFMI") and MedPro Group, Inc. ("MedPro," collectively with NFMI, "Defendants"). Under the terms of the Policy and California law, Plaintiff's material misrepresentations render the Policy void *ab initio* and provide a complete defense against Plaintiff's claims. Alternatively, the Policy affords no coverage because two Policy exclusions independently bar coverage for a "potential claim" Plaintiff knew or reasonably should have known of and should have reported to its prior insurer. Defendants are entitled to summary judgment on all of Plaintiff's claims.

## I. INTRODUCTION

Before Plaintiff applied for the NFMI Policy, Valerie Donnell ("Donnell") died while resident at Plaintiff's skilled nursing facility. Donnell's family made repeated demands for her medical records, enlisted an ombudsman, and filed complaints with state agencies, including the California Department of Public Health ("CDPH"), which investigated Plaintiff's care of Donnell. David Strother, Plaintiff's administrator, knew these facts before Lighthouse applied for insurance and before he signed the Policy application. He documented these facts in an email and confirmed them at his deposition. Plaintiff was aware that the family was upset, had sought Donnell's medical records, intended to seek an autopsy, and made a complaint to CDPH. Strother also knew the results of CDPH's investigation. Documents from Plaintiff's files further reflect [redacted]. Plaintiff disclosed none of this in its application. Asked whether it was aware of any incident or circumstance that could result in a future claim, Plaintiff answered "no." Asked how many complaints had been made and investigated against it in the prior three years, Plaintiff answered: "n/a." Plaintiff represented its responses were "complete and accurate" and it had not "knowingly

suppressed or misstated any material facts." Relying on those representations, NFMI issued the Policy.

Donnell's death produced the claim Plaintiff's material misrepresentations concealed. Within days of the Policy's inception, Plaintiff received a Notice of Intent to Sue over Donnell's death. Donnell's family sued (the "*Donnell* Suit"), and a default judgment followed. Here, Plaintiff alleges Defendants failed to defend it against the *Donnell* Suit.

Plaintiff's claims fail as a matter of law. The material misrepresentations and omissions in Plaintiff's Policy applications void the Policy *ab initio*. The information Plaintiff withheld was indisputably material: truthful answers would have changed Defendants' decision to insure Plaintiff on the terms offered. The Policy's underwriter says so directly, and the Policy's language, the nature of the coverage sought, and the omitted information further confirm that conclusion.

## II. <u>STATEMENT OF RELEVANT FACTS</u>

### A. Plaintiff and the Donnell Incident.

Plaintiff operates a skilled nursing facility (the "Facility") in Los Angeles. [SOF[1] ¶ 1.] On or about June 24, 2016, Valerie Donnell[2] died while resident at the Facility (the "*Donnell* Incident"). [*Id.* ¶ 2.]

Following her death, Donnell's family came to the Facility and was upset. [*Id.* ¶¶ 3, 7.] David Strother—the Facility administrator [*id.* ¶ 4]—testified that he recalls Donnell's family coming to the Facility and would have been informed shortly after their visit. [*Id.* ¶¶ 5-6.] Consistent with Strother's account that "[t]he family requested a complete copy of the health record," [*id.* ¶ 19], documents produced by Plaintiff reflect that, [redacted]

[1] "SOF" refers to Defendants' Statement of Uncontroverted Facts.

[2] The Complaint identifies Donnell as "Mrs. Doe," however the parties have referred to Donnell by her name in subsequent filings.

[redacted]. [*Id.* ¶ 8.] Defendants offer this record, and related records discussed below, for two limited purposes: to corroborate Strother's testimony and email, and to show the documents exist and the dates they were transmitted to or received by Plaintiff, not for the truth of any matter asserted.[3]

Plaintiff's documents further reflect that, [redacted] [*id.* ¶ 9], [redacted]. [*id.* ¶ 10 [redacted].] [redacted] [*Id.* ¶ 11.] [redacted] [*Id.* ¶¶ 12-13.] Plaintiff's records reflect [redacted]. [*Id.* ¶ 14.] Plaintiff's files further reflect that [redacted]. [*Id.* ¶ 15.]

Plaintiff—more specifically, Strother—knew, at minimum, that Donnell's family (i) was upset and visited the Facility shortly after her death; (ii) requested her records; (iii) requested an autopsy; (iv) filed a complaint with CDPH; and (v) CDPH performed an

---

[3] The pages Plaintiff produced from its files—LH_00010504 & 10507 ([redacted]), 1508 ([redacted]), 10509 ([redacted]), and 10510 ([redacted]), [SOF ¶¶ 8-15]—are offered only to corroborate Strother's testimony and Ex. 39 [*id.* ¶¶ 7, 19] and to establish existence, transmission, and receipt, not for the truth of any matter asserted. *See* Fed. R. Evid. 801(c)(2); *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1124 (9th Cir. 2004); *Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir. 1990) (statement offered to show notice/receipt not hearsay). The Court may consider them because their contents are reducible to admissible form at trial, *see* Fed. R. Civ. P. 56(c)(2) & *Fraser v. Goodale*, 342 F.3d 1032, 1036-1037 (9th Cir. 2003), and they are authenticated by Plaintiff's production, *see Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996) (documents produced by a party deemed authentic when offered by party-opponent).

investigation but did not substantiate any concern regarding Donnell's care. [*Id.* ¶¶ 5-7, 16-19.] Strother testified that the only way he would have known that CDPH did not substantiate any concern is through CDPH's communication of that result to Plaintiff. [*Id.* ¶ 20.] Strother relayed this information to Laib Greenspoon—Plaintiff's CEO—in a March 8, 2017 email. [*Id.* ¶¶ 7, 19.] During his deposition, Strother confirmed that he would not tell Greenspoon something untrue. [*Id.* ¶ 21.] Strother further testified that when a family makes an inquiry and requests records following a resident's death, that is something he believed should be reported to Shomer Insurance Services ("Shomer"), Plaintiff's insurance broker, to report to the insurer. [*Id.* ¶ 23.] In his errata sheet, Strother changed his "Yes" response to "[t]his never occurred[]," [*id.* ¶ 24], *i.e.* Plaintiff never reported the potential claim to Shomer or Defendants.

**B. Plaintiff's Policy Applications.**

On December 9, 2016, Plaintiff submitted an application to MedPro—the third-party administrator for senior care policies issued by NFMI—for a senior care professional liability insurance policy to obtain a quote. [*Id.* ¶ 26, 27.] Shomer submitted the application to Plaintiff's wholesale broker, AmWINS Insurance Brokerage of California, LLC ("AmWINS"), who, in turn, submitted the application to MedPro. [*Id.* ¶ 28.]

The application consisted of (i) an ACORD Commercial General Liability Section, (ii) an ACORD Commercial Insurance Application Applicant Information Section, (iii) a GuideOne Insurance Senior Living Community Supplemental Application (the "GuideOne Application"), (iv) loss runs from Plaintiff's prior carriers, and (v) a Medicare Nursing Home Profile. [*Id.* ¶ 29.] The ACORD materials include general information about Plaintiff, its Facility, and the requested terms. [*Id.* ¶ 30.]

On the GuideOne Application, Plaintiff answered "N/A" to Section VI, Question 5: "Have all legal proceedings, suits, investigations, or claims against any proposed Insured during the past 3 years been reported to the prior carrier(s)?" [*Id.* ¶ 31.] Additionally, Plaintiff answered "No" to Section VI, Question 6:

> Is the undersigned, or any person who is given responsibility by the applicant to give or receive notice of a claim or notice of a possible future claim, aware of any actual or alleged incident or circumstance that has not already been reported to its insurer, that he or she has reason to believe could result in a future claim? (This includes, but is not limited to, incidents or circumstances related to slips or falls, elopements, facility-acquired pressure sores, unplanned weight loss, or medication errors or omissions.)

[*Id.* ¶ 32.] However, Plaintiff never reported an incident or potential claim to GuideOne, its liability insurer for the March 1, 2016 through March 1, 2017 policy period, based on Donnell's death or related events, including the CDPH complaint and investigation. [*Id.* ¶ 33.] Plaintiff represented to MedPro that all application answers were truthful and accurate, and Plaintiff and its brokers expected MedPro to rely on the application in underwriting a policy for Plaintiff. [*Id.* ¶¶ 35-36.]

MedPro confirmed receipt of Plaintiff's submission. [*Id.* ¶ 37.] On February 17, 2017, MedPro delivered a quote for Plaintiff's senior care Policy to AmWINS. [*Id.* ¶ 38.] The quote stated, "***Subject To The Following Conditions:*** This quotation is based upon a reliance on the information submitted prior to the date of this request and is contingent upon the underwriting of a completed National Fire & Marine application." [*Id.* ¶ 39.] In the quote, MedPro listed several "additional subjectivities" to coverage, including: (1) a "Written Order to Bind," (2) a "Recently signed and dated Med Pro Supplemental Application," (3) "Risk Management Customer Contact Information Page for Onsite Visit," and (4) "Currently Valued Financials-PRIOR to Binding." [*Id.* ¶ 40.]

On February 28, 2017, pursuant to direction from Shomer, AmWINS submitted a written order to bind coverage to MedPro. [*Id.* ¶ 42.] On March 1, 2017, MedPro delivered a Senior Care Binder (the "Binder") to AmWINS. [*Id.* ¶ 43.] The Binder listed the terms of Plaintiff's coverage, consistent with the quote, and again noted that "additional subjectivities" must be satisfied before the Policy would issue: (1) a "Recently signed and dated Med Pro Supplemental Application," and (2) a "Risk Management Customer Contact Information Page for Onsite Visit." [*Id.* ¶ 44.] The Binder was a placeholder pending issuance of the Policy. [*Id.* ¶ 45.]

On March 6, 2017, Plaintiff provided MedPro with an executed NFMI Senior Care Application (the "NFMI Application"). [*Id.* ¶ 46.] Section IV.F of the NFMI Application asked, "How many complaints were made against, and investigated by, the Applicant in the past three (3) years?" [*Id.* ¶ 47.] Plaintiff answered "n/a." [*Id.* ¶ 48.] Plaintiff did not respond to the second half of Section IV.F, which asked, "Of those complaints, how many complaints against the Applicant were substantiated?" [*Id.* ¶ 49.]

Strother signed the NFMI Application, representing: (1) he had authority to execute the application on Plaintiff's behalf, and (2) he had "reviewed the responses contained in [the] application and represent them to be complete and accurate to the best of [his] knowledge." [*Id.* ¶ 50.] Strother further acknowledged and agreed that:

> [A]ny and all responses to questions, statements and explanations made in this application, or in any and all documents, supplemental pages or other attachments . . . are true and that [he], nor any applicant, have knowingly suppressed or misstated any material facts and [he], and any applicant, agree that this application, and any Attachments, shall be the basis of the contract with the Company.

[*Id.* ¶ 51.] Strother "agree[d] that if [he] fail[ed] to comply with these terms [Plaintiff] will have no coverage for any claim under any policy of insurance for which [they] are applying." [*Id.* ¶ 52.] These documents were also submitted with the expectation that Defendants would rely on them. [*Id.* ¶ 53.]

Plaintiff satisfied each of the original and additional subjectivities. [*Id.* ¶¶ 41, 54.] Therefore, on April 3, 2017, NFMI issued Senior Care Liability Policy No. NSC100276 (the "Policy") to Plaintiff. [*Id.* ¶ 55.] MedPro would not have issued the Policy if the subjectivities had not been satisfied. [*Id.* ¶ 56.]

### C. The Policy.

The Policy is a claims-made and reported, senior care liability policy issued by NFMI and administered by MedPro. [*Id.* ¶ 57.] The policy period is March 1, 2017 to March 1, 2018, with a retroactive date of March 1, 2007. [*Id.* ¶ 58.]

Policy Condition Q(1) provides:

> By acceptance of this policy, each **insured** agrees, represents, and warrants that the statements and particulars made in all applications, including any statements and particulars made in any and all documents, supplemental pages or other attachments for the purposes of any application, are true and correct. It is further understood and agreed that any application and attachments are incorporated into, and shall form a part of, this policy. Therefore, this policy and any endorsements hereto, and all applications and attachments, embody all agreements between the **company** and any of its authorized representatives, and all **insureds** relating to this insurance.

[*Id.* ¶ 59.] Further, Policy Condition Q(2) provides:

> In the event any application was executed or endorsed by an **insured's** insurance producer, the insured acknowledges that the insurance producer has acted under the insured's express authority and that the **insured** has thoroughly reviewed the information contained on any application. The representations made by an insured in the applications and attachments are the basis for the coverage provided, as well as the **company's** calculation of the applicable premium. Therefore, it is understood and agreed that, to the extent permitted by law, the company reserves the right to rescind this policy, or deny any coverage provided for a **claim** or **potential claim**, based upon any material misrepresentation made by any **insured**. As used in this condition, "material misrepresentation" means concealment, misrepresentation, omission or fraud which, if known by the **company**, would have led to refusal by the **company** to make this contract or provide coverage, or to make this contract or provide coverage on different terms or conditions.

[*Id.* ¶ 60.] And finally, Policy Condition Q(3) provides:

> In the event of any material misrepresentation in connection with any of the particulars or statements in the application, this policy shall be void with respect to any **insured** who knew of such material misrepresentation or to whom such knowledge is imputed.[4]

[*Id.* ¶ 61.]

The Policy defines "claim" as "an express, written demand upon an insured for money or services as compensation for damages, including a suit," and "potential claim" as "an incident arising from, or in connection with, an **event** an insured knows or

[4] Policy Condition Q(4) provides that "[t]he **company** reserves all rights based upon any material misrepresentation by the **insured**." [SOF ¶ 62.]

reasonably should know is likely to result in a claim." [*Id.* ¶ 65.] "Event" is defined as "an accident." [*Id.* ¶ 66.]

### D. The *Donnell* Suit.

On or around March 1, 2017, Plaintiff received a Notice of Intent to Commence Action Against Health Care Provider ("Notice of Intent"). [*Id.* ¶ 67.] The Notice of Intent notified Plaintiff that Mr. Donnell, individually and as personal representative of Donnell's estate, "intend[ed] to commence a legal action against [it]." [*Id.* ¶ 68.] The Notice of Intent alleged Plaintiff was "negligent, reckless, and/or engaged in intentional malfeasance, or other wrongful conduct, in the diagnosis, care and/or treatment of Valerie Donnell." [*Id.* ¶ 69.] It did not contain a monetary demand. [*Id.* ¶ 70.]

On June 5, 2017, Mr. Donnell filed a Complaint in the Los Angeles County Superior Court arising out of the *Donnell* Incident (the "*Donnell* Suit").[5] [*Id.* ¶ 71.] On January 17, 2023, the Superior Court entered default judgment against Plaintiff. [*Id.* ¶ 72.] That judgment is the basis of Plaintiff's claims.

On February 26, 2025, Plaintiff filed its Complaint in this Court for (1) breach of contract, and (2) bad faith against Defendants, alleging that Defendants "fail[ed] and refus[ed] to defend and indemnify [Plaintiff] against [the *Donnell* Suit] falling within the scope of [the Policy]." [*Id.* ¶ 73.] Defendants deny wrongdoing.

## III. ARGUMENT

### A. Legal Standard

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court has previously granted summary judgment rescinding an insurance policy for material misrepresentation, noting that "[t]he materiality of a misrepresentation is a question of law." *Tran v. Kansas City Life Ins. Co.*, 228 F. Supp. 3d 1068, 1077 (C.D. Cal. 2017) (Wright, J.) (quotation omitted). As set forth below, the material facts are

[5] The facts and circumstances surrounding the *Donnell* Suit and any alleged tender thereof by Plaintiff to MedPro are not relevant here.

undisputed, and Defendants are entitled to judgment as a matter of law on Plaintiff's claims.

**B. Defendants Preserved the Material Misrepresentation Defense and Timely Disclosed It.**

Plaintiff cannot avoid summary judgment by contending that Defendants failed to preserve their material misrepresentation defense. Defendants pleaded, in their Fourth, Eleventh, and Twelfth Affirmative Defenses, that Plaintiff's claims fail because Plaintiff did not comply with the Policy's terms, conditions, and conditions precedent—encompassing Policy Condition Q, under which the Policy is "void" and coverage may be denied for a material misrepresentation in the application. [SOF ¶¶ 74, 59-60.] Defendants further expressly reserved "the right to assert additional responses and affirmative defenses based on facts revealed during discovery." [*Id.* ¶ 75.]

Regardless, the defense is preserved under controlling law. Rule 8(c) exists to give a plaintiff "fair notice" of a defense, *Simmons v. Navajo County*, 609 F.3d 1011, 1023 (9th Cir. 2010) (quotation omitted), and the Ninth Circuit has "liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings," *Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997). "In the absence of a showing of prejudice . . . an affirmative defense may be raised for the first time at summary judgment." *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993). There is no prejudice where the defense "would have been dispositive" had it been "asserted [] when the action was filed," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001); the plaintiff must identify a "tangible way in which it was prejudiced by the delay." *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997).

The factual basis for the defense did not fully emerge until discovery was nearly closed. On August 10, 2026, Strother testified that he authored the March 8, 2017 email reporting that Donnell's family "filed a complaint with the CDPH" and that "CDPH was not able to substantiate any concerns," and he confirmed his understanding that CDPH "had done an investigation" and would have informed him of the result. [SOF ¶ 22.] Until

that testimony, Plaintiff had resisted Defendants' inquiry: its corporate designee characterized the CDPH statement as "more conjecture than knowledge" and testified that Plaintiff had no knowledge of any CDPH complaint. [SOF ¶ 25.] Defendants supplemented their disclosures the day after Strother's deposition—before the close of discovery—expressly disclosing that they "seek rescission of [the] Policy . . . based on Plaintiff's failure to disclose, and affirmative misrepresentations concerning, material facts in Plaintiff's Policy application," including Plaintiff's nondisclosure of "CDPH's investigation," and identifying the witnesses supporting that defense. [*Id.* ¶ 76.] Rule 26(e) requires only that a party supplement its disclosures "in a timely manner," and Defendants did exactly that. Fed. R. Civ. P. 26(e)(1)(A).

Plaintiff cannot show prejudice. The material misrepresentation defense would have been dispositive if asserted at the outset, so its detection and development through the discovery process did not cause prejudice. *Owens*, 244 F.3d at 713. Nor can Plaintiff claim surprise or lost discovery: the concealed facts come from Plaintiff's own administrator and records, and Plaintiff deposed MedPro's lead senior care underwriter as a 30(b)(6) witness and received Defendants' supplemental disclosure while discovery remained open. *See Garcia v. Salvation Army*, 918 F.3d 997, 1008-09 (9th Cir. 2019) (no prejudice from a late-raised defense where the underlying facts were within the plaintiff's own knowledge). Because Defendants' supplemental disclosure was served before the discovery cutoff, it was timely, and any omission of a specific reference in the initial disclosure[6] was also "harmless" for that reason. Fed. R. Civ. P. 37(c)(1); *Ebert v. County of San Bernardino*, 832 F. Supp. 3d 1040, 1047-48 (C.D. Cal. 2026) (omission from an initial disclosure was harmless where a timely supplemental Rule 26(a) disclosure cured any prejudice).

[6] MedPro's underwriter for the Policy, John Hopping, was disclosed in Defendants' Initial Disclosure Statement, but Defendants were not aware of Plaintiff's material misrepresentations at that time.

### C. Plaintiff's Claims Fail As a Matter of Law Because Plaintiff Made Material Misrepresentations in its Policy Applications.

Plaintiff's claims fail as a matter of law under both the Policy's express terms and California law. The Policy provides that it "shall be void" in the event Plaintiff knowingly makes a material misrepresentation in connection with the Policy application. [SOF ¶ 61.] California law independently reaches the same result: a misrepresentation or concealment of a material fact in connection with an insurance application entitles the insurer to rescind the policy, *see* Cal. Ins. Code §§ 330, 331, 332, 359, and—independently—"establishes a complete defense in an action on the policy," without any need to show intent to deceive. *Superior Dispatch, Inc. v. Ins. Corp. of New York*, 104 Cal. Rptr. 3d 508, 520-21 (App. 2010).

Plaintiff made multiple misrepresentations in its Policy applications, failing to disclose the *Donnell* Incident to Defendants—including the medical records and autopsy requests, complaints, and CDPH investigation—despite being asked to identify all investigations, claims, and incidents that could result in a claim. Putting aside the documents contained in Plaintiff's files, the "knowingly" requirement is satisfied by Strother's email—***sent six days after he signed the NFMI Application***—because it demonstrates his contemporaneous knowledge of those events. [SOF ¶¶ 7, 19, 46.] These misrepresentations and omissions were material because Defendants would have declined to issue the Policy, expressly excluded the claim, or charged higher premiums had Plaintiff provided truthful information. [*Id.* ¶¶ 93-94.] Accordingly, the Policy is void *ab initio* and Plaintiff's claims fail.

1. <u>Plaintiff made multiple misrepresentations and omissions concerning the *Donnell* Incident in its Policy applications.</u>

Plaintiff submitted the GuideOne Application, along with other materials, to obtain a quote from Defendants. [SOF ¶¶ 26-29.] As Strother confirms, at minimum Plaintiff knew: (i) Donnell died while resident at the Facility; (ii) Donnell's family visited the Facility, was upset, made multiple records requests, had or intended to request a private

autopsy; and filed a complaint with the CDPH; and (iii) CDPH had investigated Plaintiff in connection with Donnell's death. [*Id.* ¶¶ 7, 19.] Plaintiff's files corroborate Strother's testimony that at least (i) and (ii) occurred shortly after Donnell's death. [*Id.* ¶¶ 8-15.] Strother confirmed these were the type of events that should be reported to its insurer through Shomer, but he knew Plaintiff had not reported them.[7] [*Id.* ¶¶ 23-24.]

Despite this, Plaintiff answered "N/A" to Section VI, Question 5 of the GuideOne Application, which asked whether "all legal proceedings, suits, **investigations, or claims** against [Plaintiff] during the past 3 years been reported to" Plaintiff's prior carriers. [*Id.* ¶ 31.] Plaintiff also answered "No" to Section VI, Question 6, which asked whether Plaintiff was "aware of any actual or alleged incident or circumstance that has not already been reported to its insurer, that [Plaintiff] has reason to believe could result in a future claim." [*Id.* ¶ 32.] Plaintiff represented its responses were truthful and accurate. [*Id.* ¶ 35.] They were not. Plaintiff had more than adequate reason to believe the *Donnell* Incident could result in a claim. [*Id.* ¶¶ 7-19.] Yet, Plaintiff never reported its knowledge of the family's CDPH [redacted] complaints, records, and autopsy demands or the CDPH's investigation to GuideOne or in its NFMI applications. [*Id.* ¶¶ 33-34.]

Plaintiff's misrepresentations and omissions continued in the NFMI Application, which Plaintiff submitted to Defendants as a subjectivity to issuance of the Policy. [*Id.* ¶¶ 44, 46.] Plaintiff answered "n/a" when asked how many complaints had been made against it and investigated during the preceding three years. [*Id.* ¶¶ 47-48.] Plaintiff left unanswered the question asking how many of those complaints were substantiated. [*Id.* ¶ 49.] Plaintiff represented that these answers were "complete and accurate to the best of [its] knowledge." [*Id.* ¶ 50.] Again, they were not. Plaintiff omitted the complaints Donnell's family filed with the CDPH, [redacted] as well as CDPH's investigation of the *Donnell* Incident. [*Id.* ¶¶ 7-19.] Plaintiff's knowledge was, if anything, even more acute by the time it executed the NFMI Application—*one day* after it received

---

[7] This is also confirmed as confirmed by GuideOne's loss run (covering March 1, 2016 through November 9, 2016), which makes no reference to the *Donnell* Incident. [SOF ¶ 34.]

the Notice of Intent expressly threatening suit over Donnell's death. [*Id.* ¶¶ 46, 67.] Plaintiff represented that it knew of no complaints despite receipt of the Notice of Intent and, critically, after the date it admits it knew that a liability claim was possible. [*Id.* ¶¶ 46, 67, 98.] In his March 8, 2026 email, sent six days after signing the NFMI application and two days after Plaintiff's broker submitted that application to MedPro, Strother confirmed knowledge of the CDPH complaint he failed to disclose. [*Id.* ¶¶ 16-18; 46; 50.]

2. <u>Plaintiff's misrepresentations were material to Defendants' underwriting decisions.</u>

There is no genuine dispute that Plaintiff's misrepresentations and omissions were material to Defendants' underwriting of the Policy. The Policy and California law define materiality in substantially similar terms. Under the Policy, "material misrepresentation" means "concealment, misrepresentation, omission, or fraud which, if known by the company, would have led to refusal by the company to make this contract or provide coverage, or to make this contract or provide coverage on different terms or conditions." [SOF ¶ 60.] Under California law, "a misrepresentation or concealment is material if a truthful statement would have affected the insurer's underwriting decision"—"a subjective test viewed from the insurer's perspective." *Superior Dispatch*, 104 Cal. Rptr. 3d at 520; *see also* Cal. Ins. Code. §§ 334, 360; *Mitchell v. United Nat'l Ins. Co.*, 25 Cal. Rptr. 3d 627, 638 (App. 2005) ("The test for materiality is whether the information would have caused the underwriter to reject the application, charge a higher premium, or amend the policy terms, had the underwriter known the true facts.").

California courts apply two tests for materiality, and Defendants satisfy both. *See Tran*, 228 F. Supp. 3d at 1077. Under the first test, "any answer to a specific question in an application for insurance is material"—indeed, "[t]hat the insurer puts questions in writing and asks for written answers has itself been deemed proof of materiality." *Id.* at 1077 (quotation omitted); accord *Imperial Cas. & Indemn. Co. v. Sogomonian*, 243 Cal. Rptr. 639, 643 (App. 1988).

Under the second test, the court asks "whether the insurer's decision to issue the relevant policy would have been affected by having access to the correct information," a subjective inquiry which "a declaration from the insurer's underwriter indicating that coverage would not have been offered but for the misrepresentation is typically sufficient" to satisfy. *Tran*, 228 F. Supp. 3d at 1077. Where undisputed evidence shows that an applicant provided false information and the insurer issued the policy in reliance on it, materiality "may be established as a matter of law." *Mitchell*, 25 Cal. Rptr. 3d at 639; *see also Kinsale Ins. Co. v. Golden Beginnings, LLC*, 557 F. Supp. 3d 1000, 1006-07 (C.D. Cal. 2021) (rescinding senior-care facility's policy where underwriter testified it would not have bound the policy on the given terms had the insured disclosed a resident's fall); *U.S. Specialty Ins. Co. v. Bridge Cap. Corp.*, 482 F. Supp. 2d 1164, 1167-69 (C.D. Cal. 2007) (granting insurer summary judgment where undisputed testimony showed it would not have issued coverage had undisclosed prior claims been revealed). Materiality also depends on "the nature of the insurance coverage which defendant sought, [and] the quality and quantity of the information which was not disclosed." *Mitchell*, 25 Cal. Rptr. 3d at 639; *see also Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 655 (9th Cir. 1984); *W. World Ins. Co. v. Prof'l Collection Consultants*, 721 Fed. Appx. 621, 623 (9th Cir. 2018) (a misrepresentation is material when it "regard[s] the nature of the risk to be insured" (quotation omitted)). In *Mitchell*, as here, the application questions "went directly to questions of insurability, risk, and premium" and thus "plainly impact[ed] decisions on whether to insure and the premium to charge." 25 Cal. Rptr. 3d at 639-640.

Consideration of these factors establishes materiality as a matter of law.

**i. The Policy's terms demonstrate materiality.**

Policy Condition Q(2) provides that "[t]he representations made by an insured in the applications and attachments are the basis for the coverage provided, as well as the company's calculation of the applicable premium." [SOF ¶ 60.] The Policy defines "applications and attachments" to include "all applications, including any statements and particulars made in any and all documents, supplemental pages or other attachments for

the purposes of any application" submitted to Defendants in connection with the Policy. [*Id.* ¶ 59.] MedPro routinely relies on other insurer's policy applications submitted as part of an application package. [*Id.* ¶¶ 36, 77-79.] The Policy's definition acknowledges this practice by incorporating all applications and their attachments. [*Id.* ¶ 59.] By expressly linking the representations in those materials to coverage and premium, Condition Q(2) confirms their materiality. *See United Farm Workers of Am. v. Hudson Ins. Co.*, No. 1:18-cv-00134-JLT, 2019 WL 1517568, at *20 (E.D. Cal. Apr. 8, 2019) (finding materiality as matter of law where policy indicated that "statements in the application . . . shall be deemed material and that [the] policy [was] issued in reliance upon the truth of such representations."); *Butcher v. Gulf Ins. Co.*, No. C 03-3553 PJH, 2005 WL 1514086, at *10-13 (N.D. Cal. June 15, 2005) (same).

**ii. The Application's questions demonstrate materiality.**

Defendants requested, received, and relied on applications to elicit disclosure of the exact type of information Plaintiff withheld. As discussed, an insurer's decision to ask specific questions in an application "is in itself usually sufficient to establish materiality as a matter of law." *Imperial*, 243 Cal. Rptr. at 643; *see also U.S. Specialty Ins. Co. v. Calderon*, No. 2:24-cv-05998-CV(ASx), 2025 WL 3085611, at *7-8 (C.D. Cal. Sept. 24, 2025) (granting summary judgment on basis of material misrepresentations in application responses). In response to Section VI, Questions 5 and 6 of the GuideOne Application, Plaintiff misrepresented (i) whether it had reported all known investigations and claims to its prior carrier, and (ii) whether Plaintiff knew of any unreported incidents or circumstances that could result in a future claim. [SOF ¶¶ 31-32.] Although the GuideOne Application was not Defendants' form, Plaintiff submitted it to obtain a quote, expected Defendants to rely on it, and, consistent with its standard practice, Defendants in fact accepted and relied on the representations in the GuideOne Application for the quote. [*Id.* ¶¶ 27, 36, 77-80.] The information requested in Section VI, Questions 5 and 6 of the GuideOne Application regarding complaints, investigations, existing claims, and incidents and circumstances that could give rise to a claim were especially material to underwriting

because, due to the requested retroactive date, the Policy could cover claims first made during the policy period but arising from earlier incidents. [*Id.* ¶¶ 86-89.]

As a condition to issuance of the Policy, Defendants required a signed NFMI Application. [*Id.* ¶¶ 40, 44, 56.] Section IV.F of that Application asked Plaintiff how many complaints were investigated against it in the preceding three years, and how many were substantiated. [*Id.* ¶ 47.] Plaintiff answered "n/a"—omitting to include the Donnell family's CDPH complaint and CDPH's investigation. [*Id.* ¶ 48.] The fact that Defendants incorporated all applications and relied on them to, among other things, approve the requested retroactive date establishes materiality as a matter of law. *Imperial*, 243 Cal. Rptr. at 643.

**iii. Plaintiff's misrepresentations were, in fact, material to Defendants' underwriting decisions.**

While the Court should find that the Policy language and Application questions establish materiality, the uncontroverted evidence also establishes materiality because Defendants would not have issued the Policy on the same terms had they known of the *Donnell* Incident.

Defendants attach the Declaration of John Hopping, MedPro's senior care underwriter for the Policy. Hopping confirms he relied on Plaintiff's representations in the GuideOne and NFMI Applications to price and issue the Policy. [SOF ¶¶ 80-82.] Because the requested retroactive date could reach claims arising in prior policy periods, Hopping required assurance that all known incidents that might give rise to a claim had been reported to prior insurers. [*Id.* ¶ 89.] Plaintiff's responses to Section VI, Questions 5 and 6 of the GuideOne Application, and Section IV.F of the NFMI Application, provided the assurance which Hopping considered vitally important to assessing the risk to be insured. [*Id.* ¶ 86-88.]

Hopping confirms that, had Plaintiff answered those questions truthfully, he would have quoted and issued the Policy on different terms, if at all. [*Id.* ¶¶ 83, 85, 90-94.] A death at Plaintiff's Facility coupled with an upset family, requests for records and a private

autopsy, and a CDPH complaint should have been reported to the prior insurer and, if not reported, would be considered a material underwriting risk. [*Id.* ¶¶ 90-94, 97.] At minimum, Hopping would have sought additional information to assess the risk. [*Id.* ¶ 95.] Knowledge of the *Donnell* Incident would have resulted in a change in the Policy's terms—most likely express exclusion of the *Donnell* Incident or increased premium. [*Id.* ¶¶ 90-94.] These are MedPro's common underwriting responses to potential claims revealed during underwriting. [*Id.*¶ 96.]

Any doubt regarding materiality is resolved by Hopping's Declaration because California's materiality test is subjective and based on *this* insurer. *Tran*, 228 F. Supp. 3d at 1077. Because Defendants would have issued the Policy on different terms, if at all, but for Plaintiff's misrepresentations, materiality is established as a matter of law. *See Mitchell*, 25 Cal. Rptr. 3d at 638; *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 67 Cal. Rptr. 3d 917, 924 (App. 2007) (finding materiality as a matter of law where underwriter testified that misrepresentation "affected [the insurer's] evaluation of risk and the amount of the premiums charged").

**iv. The nature of the coverage sought and information withheld also demonstrates materiality.**

Plaintiff sought claims-made-and-reported coverage with a March 1, 2007 retroactive date. [SOF ¶¶ 58, 89.] Unlike occurrence coverage, which generally covers only acts or omissions *during* the policy period, claims-made coverage with a retroactive date—like this Policy—may cover claims arising from unreported events from prior policy periods. *See Pacific Emps. Ins. Co. v. Superior Court*, 270 Cal. Rptr. 779, 783 (App. 1990). The *Donnell* Incident and the family's response was known by Plaintiff and the claim should have been anticipated, which is exactly why it was material to underwriting.

Claims-made coverage lets insurers assess and price the risk with greater certainty because coverage generally turns on when a claim is made and reported. *Id.* at 785. For the same reason, claims-made policies allow potential claims to be reported, fixing liability within a particular policy period. Underwriting therefore depends on accurate information

about known incidents and circumstances that may give rise to claims during the policy period, and on assurance that known potential claims were reported to prior insurers—exactly what Plaintiff misrepresented here. [SOF ¶ 83-89.]

Thus, the information Plaintiff withheld concerned and impacted the very risk Defendants were asked to insure and, for that reason as well, was material as a matter of law. *See Mitchell*, 25 Cal. Rptr. 3d at 639; *Taylor*, 729 F.2d at 655.

**D. The Material Misrepresentation Defense Defeats Plaintiff's Claims.**

Because the Policy is void *ab initio*, both of Plaintiff's claims fail. A policy void *ab initio* for a material application misrepresentation "cannot be breached," disposing of Plaintiff's breach-of-contract and bad-faith claims. *LA Sound*, 67 Cal. Rptr. 3d at 922; *Superior Dispatch*, 104 Cal. Rptr. 3d at 193 (material misrepresentation "establishes a complete defense to the counts for breach of contract and of the implied covenant").

Nor can Plaintiff avoid the defense on procedural grounds. Waiver requires the intentional relinquishment of a known right, and "[a]n insurer does not waive its right to rescind a policy on the ground of false representations if it was unaware of the falsity of those representations." *LA Sound*, 67 Cal. Rptr. 3d at 925. Defendants were entitled to rely on Plaintiff's application answers without independently investigating them, *Tran*, 228 F. Supp. 3d at 1078, and did not learn the concealed facts until this litigation [SOF ¶ 84]; their defense of the *Donnell* Suit was conducted under a full reservation of rights and did not relinquish the defense.

**E. In the Alternative, Exclusions III.D and III.X Independently Bar Coverage for a Potential Claim Plaintiff Knew of and Should Have Reported to Its Prior Insurer.**

Even if the Policy were valid and enforceable (it is not), it affords no coverage for the *Donnell* Suit. Two Policy exclusions each independently bar coverage for a "potential claim" the insured knew of and should have reported to its prior carrier before the March 1, 2017 Policy inception. This ground is alternative to, and independent of, Defendants'

material misrepresentation defense: it does not turn on the materiality of Plaintiff's Policy application answers, and it bars coverage regardless of Plaintiff's disclosures.

Exclusion III.D bars "[a]ny claim or potential claim which has or which should have been reported to, or has or should have been accepted by any insurer, including through any self-insured or captive program, prior to the policy period." [SOF ¶ 63.] Exclusion III.X bars "[a]ny potential claim that was first known about or discovered, or should reasonably have been known about or discovered by, an authorized insured, or was reported to, or should have been reported to, a prior insurer, self-insurance program or captive insurer prior to the policy period." [*Id.* ¶ 64.] The Policy defines a "potential claim" as "an incident arising from, or in connection with, an event an insured knows or reasonably should know is likely to result in a claim." [*Id.* ¶ 65.]

California courts routinely enforce prior-knowledge and prior-reporting exclusions and resolve them on summary judgment where, as here, the material facts are undisputed. *Coregis Ins. Co. v. Camico Mut. Ins. Co.*, 959 F.Supp. 1213, 1221-22 (C.D. Cal. 1997); *Kinsale Ins. Co. v. Golden Beginnings, LLC*, 557 F. Supp. 3d 1000, 1008-09 (C.D. Cal. 2021). Because each exclusion is framed by what the insured "should reasonably have been" aware of or "should have been reported," it incorporates an objective test: coverage is barred if "a reasonable professional in the insured's position might expect a claim or suit to result," regardless of the insured's subjective belief. *Kinsale*, 557 F. Supp. 3d at 1008; *Coregis*, 959 F.Supp. at 1222.

The undisputed facts satisfy both exclusions. Donnell died while residing at the Facility prior to the policy period. Her family was upset, visited the facility, demanded her records, sought a private autopsy, and filed complaints with at least the CDPH, and CDPH investigated Plaintiff's care of Donnell and informed Plaintiff the investigation was unsubstantiated—all known to Plaintiff through its administrator. [SOF ¶¶ 7-19.] A resident's death followed by a visit by an upset family, records and autopsy demands, agency complaints, and a regulatory investigation is exactly the kind of "incident . . . an insured . . . reasonably should know is likely to result in a claim." [*Id.* ¶¶ 64-65.] On

materially indistinguishable facts—a California elder-care resident's injury and death at the facility—the court in *Kinsale* held that "[a] reasonable professional would have foreseen that [the resident's injury] was likely to give rise to a claim" and granted the insurer summary judgment. 557 F. Supp. 3d at 1009. The *Donnell* Incident was a "potential claim" first known to Plaintiff before the policy period, and Exclusion III.X bars coverage. [SOF ¶ 64.]

Exclusion III.D bars coverage for the same reason. Plaintiff's prior carrier, GuideOne, insured Plaintiff under a claims-made policy from March 1, 2016 through March 1, 2017—the very period in which the *Donnell* Incident, including the records and autopsy demands, the agency complaints, and the CDPH investigation all occurred. [SOF ¶¶ 7-19, 33-34.] Plaintiff's knowledge of the potential claim during the GuideOne policy period is confirmed by Plaintiff's admission that "[b]y February 28, 2017, [Plaintiff] was aware that a liability claim [arising from the *Donnell* Incident] was possible." [*Id.* ¶ 98.] Plaintiff therefore admits the potential claim thus "should have been reported to" GuideOne, yet Plaintiff failed to report it. [*Id.* ¶ 34.] Exclusion III.D, therefore, independently bars coverage for the *Donnell* claim. [*Id.* ¶ 63.]

Because these exclusions eliminate any possibility of coverage, they furnish an alternative and independent basis for summary judgment. *Coregis*, 959 F.Supp. at 1221-22.

## IV. CONCLUSION

Plaintiff knowingly made material misrepresentations and omissions in its Policy applications. The Policy is therefore void *ab initio* under its express terms (Condition Q(3)), and those material misrepresentations supply a complete defense under California law, barring Plaintiff's claims for breach of contract and bad faith. *See Superior Dispatch*, 1104 Cal. Rptr. 3d at 192. In the alternative, Policy Exclusions III.D and III.X independently bar coverage for the *Donnell* Suit as a matter of law, because the *Donnell* Incident was a potential claim Plaintiff knew of—and should have reported to its prior insurer—before the inception of the Policy.

Accordingly, Defendants respectfully request that summary judgment be entered in their favor on all claims raised in the Complaint.

DATED this 19th day of October, 2026.

GREENBERG TRAURIG, LLP

By: /s/ *Jon T. Neumann*
Jon T. Neumann
NeumannJ@gtlaw.com
Zachary H. Levy
Zach.Levy@gtlaw.com
Attorneys for Defendants National Fire & Marine Insurance Company and MedPro Group, Inc.

**CERTIFICATE ON USE OF ARTIFICIAL INTELLIGENCE**

The undersigned certifies that this submission uses generative artificial intelligence. Following drafting, my team and I reviewed, revised, and supplemented all portions of the brief, including those that were informed by the use of Artificial Intelligence or based on prior templates. We independently verified the factual and legal accuracy of the content and confirmed that all arguments and authorities were appropriate to the issues presented.

/s/ *Jon T. Neumann*
Jon T. Neumann
Attorneys for Defendants National Fire & Marine Insurance Company and MedPro Group, Inc.

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Defendants National Fire & Marine Insurance Company and MedPro Group, Inc., certifies that this brief contains 6,986 words, which complies with the word limit of L.R. 11-6.1.

/s/ *Jon T. Neumann*
Jon T. Neumann
Attorneys for Defendants National Fire & Marine Insurance Company and MedPro Group, Inc.

# CERTIFICATE OF SERVICE

(Lighthouse Healthcare Center, LLC v. National Fire & Marine Insurance Company)
USDC Case No: 2:25-cv-01651-ODW (AYPx)

I am employed in the County of Maricopa, State of Arizona; I am over the age of 18 years and not a party to the within action; my business address is 2375 East Camelback Road, Suite 800, Phoenix, Arizona 85016; diane.linn@gtlaw.com.

I hereby certify that on October 19, 2026 and pursuant to Local Rule 5-3.2.1, I filed the foregoing document via the Court's electronic filing system and all counsel of record have been served by that method.

☒ **(FEDERAL)**
I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this court at whose direction the service was made.

Executed on October 19, 2026, at Los Angeles, California.

Diane Linn
Employee of Greenberg Traurig, LLP