Avi Wagner (Cal. SBN #226688)
THE WAGNER FIRM
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: 310.491.7949
avi@thewagnerfirm.com

*Attorneys for Plaintiff Lighthouse Healthcare Center, LLC*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Lighthouse Healthcare Center, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>National Fire & Marine Insurance Company, a Nebraska Corporation; MedPro Group, Inc. and DOES 1-110,<br><br>Defendants. | Case No. 2:25-cv-01651-ODW-AYP<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing: November 23, 2026 at 1:30 p.m.<br><br>Complaint Filed: February 26, 2025<br><br>Trial: January 26, 2027<br><br>Assigned to: Hon. Otis D. Wright |

## TABLE OF CONTENTS

I. INTRODUCTION 4

II. STATEMENT OF FACTS 7

A. The Policy 7

B. Mrs. Donnell's Residency and Death 9

C. Lighthouse Tenders the March 2017 *Donnell* Notice; Defendants Neither Investigate or Defend 9

D. Lighthouse Tenders the *Donnell* Suit in October 2019; Defendants Again Fail to Defend 10

E. Lighthouse Tenders the *Donnell* Default Judgment in August 2023, and Defendants Fail to Defend 12

F. Defendants Withdraw the Defense Without Any Basis and Deny Coverage 13

III. STANDARDS OF REVIEW 14

IV. ARGUMENT 15

A. The *Donnell* Claim Triggered Defendants' Duty to Defend Lighthouse 15

1. Defendants Concede That Coverage Existed for the 2017 *Donnell* Notice 15

2. Despite Receipt of a Covered "Potential Claim" Defendants Fail to Appoint Counsel or Otherwise Defend or Investigate 16

3. Defendants' 2019 Failure to Appoint Counsel is an Independent Breach 17

4. Defendants' Late Appointment and Baseless Withdrawal of Non-Responsive Counsel Compounded Their Breach 19

5. Defendants' Denial on the Basis of Lack of Collection Activity is Impermissible 21

B. Defendants Breached Their Duty to Investigate the *Donnell* Notice 22

C. Defendants Are Equitably Estopped from Denying Coverage for *Donnell* 23

1. Defendants Failed to Act on *Donnell* for Nearly Seven Years, and Then Falsely Asserted That They Never Had Notice 23

2. Lighthouse Suffered Harm Due to Defendants' Failure to Investigate, Defend, or Communicate 25

3. It Would Be Inequitable to Allow Defendants to Benefit from Their Breaches of Duty 27

D. None of the Asserted Exclusions Apply to *Donnell* 27

1. None of the Policy Provisions in the Denial Excluded Coverage at the Time of Tender of the Donnell Notice or Suit 27

2. None of the Denial Bases Applied in 2025 28

3. Defendants Suffered No Prejudice from Any Purported Violation 30

V. CONCLUSION 32

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................... 14

*Anthem Elecs., Inc. v. Pac. Emplrs. Ins. Co.*, 302 F.3d 1049 (9th Cir. 2002)........................................................ 15

*Cathay Mortuary (Wah Sang) Inc. v. United Pac. Ins. Co.*, 582 F. Supp. 650 (N.D. Cal. 1984) ...................................................... 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................................ 14

*Hollyway Cleaners & Laundry Co., Inc. v. Cent. Nat'l Ins. Co. of Omaha, Inc.*, 219 F. Supp. 3d 996 (C.D. Cal. 2016)........................................................ 15

*Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264 (9th Cir. 2010)....................... 15

*L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 608 F. Supp. 3d 968 (C.D. Cal. 2022), *aff'd in part, rev'd in part*, No. 23-55483, 2025 WL 1024392 (9th Cir. Apr. 7, 2025) ...................................... 14

*Liberty Corp. Cap., Ltd. v. California Tau Chapter of Sigma Alpha Epsilon Fraternity at California Polytechnic State Univ.*, No. 211CV02626ODWFFMX, 2012 WL 12877181 (C.D. Cal. Dec. 3, 2012) ............................................ 19

*Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099 (9th Cir. 2000) ........... 14

*RDJ Beverages, Inc. et al., v. United States Liability Insurance Company, et al.*, No. 25-CV-02919-DMS-SBC,

2026 WL 2985002 (S.D. Cal. Oct. 5, 2026) .......... 19

*U.S.A. Nutrasource, Inc. v. CNA Ins. Co.*, 140 F. Supp. 2d 1049 (N.D. Cal. 2001) .......... 20

**California Cases**

*Belz v. Clarendon Am. Ins. Co.*, 158 Cal. App. 4th 615 (2007) .......... 30, 31

*Buss v. Superior Ct.*, 16 Cal. 4th 35 (1997) .......... 16

*Campbell v. Allstate Ins. Co.*, 60 Cal. 2d 303 (1963) .......... 30

*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.*, 188 Cal.App.4th 401 (2010) .......... 8

*City of Hollister v. Monterey Ins. Co.*, 165 Cal.App.4th 455 (2008) .......... 23, 24, 26

*CNA Cas. of California v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598 (1986) .......... 16

*Egan v. Mutual of Omaha Ins. Co.* 24 Cal. 3d 809 (1979) .......... 22

*Eigner v. Worthington,* 57 Cal. App. 4th 188 (1997) .......... 22

*Hartford Accident & Indem. Co. v. Sup.Ct. (Syntex)* 23 Cal.App. 4th 1774 (1994) .......... 18

*Kapelus v. United Title Guaranty Co.,* 15 Cal.App.3d 648 (1971) .......... 21

*Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617 (1996), *as modified* (Mar. 28, 1996), *as modified* (Mar. 29, 1996) .......... 22, 23

*Montrose Chemical Corp. v. Superior Court* 6 Cal.4th 287 (1993) .......... 8

*Ringler Associates Inc. v. Maryland Casualty Co.* 80 Cal.App.4th 1165 (2000) .......... 21

*Scottsdale Ins. Co. v. MV Transp.* 36 Cal. 4th 643 (2005) ........ 18

*Shade Foods, Inc. v. Innovative Products Sales & Mktg., Inc.*, 78 Cal. App. 4th 847 (2000) ........ 20, 22

*Vann v. Travelers Companies*, 39 Cal. App. 4th 1610 (1995) ........ 18

*Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.* 68 Cal.App.4th 1030 (1998) ........ 18

**California Statutes**

California Insurance Code § 790.03(h)(13) ........ 24

**California Regulations**

California Code of Regulations, title 10, § 2695.4(a) ........ 24

TO THE COURT, PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on November 23, 2026, at 1:30 PM, or as soon thereafter as counsel may be heard by the Court, located at First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, Plaintiff Lighthouse Healthcare Center, LLC ("Plaintiff") hereby moves the Court to grant summary judgment on Plaintiff's breach of contract cause of action and find that Defendants MedPro Group, Inc. ("MedPro") and National Fire & Marine Insurance Company ("NFMI") breached its duties to investigate and defend under the professional liability insurance policy they issued to Lighthouse.

This motion is made pursuant to Federal Rule of Civil Procedure 56 on the following grounds:

1. Defendants had a duty to defend the March 2017 Notice of Intent to Sue related to Valerie Donnell ("*Donnell* Notice") tendered by Lighthouse under the Senior Care Professional Liability Policy they issued to Lighthouse. Their failure to investigate and defend breached this duty.

2. Defendants had a duty to defend the lawsuit related to Valerie Donnell ("*Donnell* Suit") that Lighthouse tendered to Defendants in October 2019. Defendants breached this duty by failing to defend.

3. In 2023, when Lighthouse learned that a default judgment had been entered against it in the *Donnell* Suit.

a. Defendants' late appointment of counsel did not cure their breach.

b. Defendants appointed defense provided no defense, ultimately revealing that Defendants had never authorized efforts to set aside the default judgment. Thus, this late appointment was either a continued or independent breach of Defendants' duty to defend.

4. Defendants had an obligation to investigate the *Donnell* Notice and Suit, but breached this duty by performing no investigation until 2023.

5. Defendants are equitably estopped from asserting any Policy defense. *City of Hollister v. Monterey Ins. Co*., 165 Cal.App.4th at 488 (2008).

a. Defendants behaved unfairly by taking no action with respect to either the *Donnell* Notice or Suit for over six years. They did not perform any investigation, or issue any coverage determination or communication to Lighthouse.

b. This lack of communication caused Lighthouse to believe that Defendants were handling the matter. Lighthouse consistently had interaction with Defendants on other matters when there was a need, so understood that the lack of communication meant that they need not take any further action. As a result, they incurred a $2 million default judgment.

c. Defendants violated their duties under the policy, California law and insurance industry customs by taking no action even after

receiving two separate tenders. It would be unfair to allow Defendants to rely on this inaction to deny the claim.

6. Defendants' bases for denying coverage of the *Donnell* Suit: the Assistance and Cooperation and Reporting Requirements provisions, and the default judgment exclusion, do not apply.

This motion is made pursuant to the meet and confer efforts of counsel, in accordance with Local Rule 7-3.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points & Authorities; the Separate Statement; Declarations of Avi Wagner and Laib Greenspoon and exhibits thereto; any reply or other matters as may be presented to the Court.

Dated: October 19, 2026

THE WAGNER FIRM

*/s/ Avi Wagner*
Avi Wagner
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: 310.491.7949
avi@thewagnerfirm.com

*Attorneys for Plaintiff Lighthouse Healthcare Center, LL*

## I. INTRODUCTION

This insurance bad faith action arises from Defendants' failure to investigate and defend Plaintiff Lighthouse Healthcare Center, LLC ("Lighthouse").

Lighthouse tendered a 2017 pre-suit Notice of Intent to Sue ("*Donnell* Notice") and 2019 court filings ("*Donnell* Suit") arising out of alleged professional negligence by Lighthouse re: former resident, Valerie Donnell, to its insurer defendant National Fire & Marine Insurance Company ("NFMI") via defendant MedPro Group, Inc. ("MedPro", and , and with NFMI, "Defendants").[1] Lighthouse was insured under a policy imposing on Defendants a duty to defend for both "claims" and "potential claims", not simply filed lawsuits. MedPro internally confirmed coverage for the 2017 tender of the *Donnell* Notice, but never investigated the claim, never appointed defense counsel, and ultimately disclaimed coverage based largely on Lighthouse's purported failure to tender the matter. Lighthouse seeks a determination that Defendants breached their duties to defend and investigate in 2017 and 2019, and that they further breached the duty to defend in 2023 and 2024.

Defendants took no action upon tender of the covered 2017 *Donnell* Notice: they did not appoint defense counsel, did not investigate, did not issue a coverage position, and surreptitiously closed the file after just one month.

[1] NFMI is the insurer, while MedPro administers the Policy on its behalf. MP-NFM-LH 008054.

Defendants contend that post-2017 developments dictate a different finding. But in fact they only reveal further reckless conduct in Defendants' claim handling. When the *Donnell* Notice matured to a lawsuit Lighthouse again timely tendered half a dozen court-filed documents demonstrating that Lighthouse had been named as a defendant in the action and the plaintiff was seeking a default judgment against it. Rather than accept their defense obligation, Defendants asked the tendering insurance broker to "confirm" a counterfactual, that, despite the plain text of the documents, which made clear that they *were* directed at Lighthouse, that they *were not* directed at Lighthouse. Defendants rely on this confirmation e-mail to pretend as though this notice never occurred. In so doing they obscure both the facts and the law.

Lighthouse only learned of Defendants' years of inaction in August 2023, when they received a copy of a default judgment entered against in the *Donnell* Suit in excess of $2 million. Defendants then belatedly appointed defense counsel purportedly to seek to set aside the default judgment.

But Lighthouse continued to get the runaround for the next ten months, and Defendants likewise failed to respond to Lighthouse's repeated requests to engage in settlement discussions concerning the Donnell judgment. The representation ended in July 2024 when Defendants arbitrarily withdrew the defense based on the inaccurate claim that the *Donnell* plaintiff was not actively seeking to collect the judgment. It was only after the engagement ended that defense counsel revealed that MedPro never

authorized it to seek to set aside the default judgment. The illusory defense provided here serves as a further breach of the duty.

Defendants eventually denied the claim based on the policy's default judgment exclusion, "reporting requirements", and "assistance and cooperation" provisions. They should be estopped from asserting these as defenses.

Defendants' handling of the *Donnell* claim was inequitable and interfered with Lighthouse's ability to obtain the benefits under the policy. Defendants violated their own claims processes and California insurance industry customs and practices by failing to communicate with Lighthouse about coverage, failing to either deny or accept its defense obligation, and failing to conduct any investigation of the *Donnell* Notice or *Donnell* Suit. Having received no denial or request for additional information, Lighthouse reasonably believed that Defendants were handling the *Donnell* matter, and did not defend the case, resulting in a default judgment. It would be inequitable to allow Defendants to disclaim coverage for *Donnell* based on Lighthouse's purported failure to tender the claim, when they admit that they knew it was covered in 2017 and did not investigate it in 2017-2019.

Even if the Court looks past estoppel, the provisions that Defendants cite do not apply here. First, no default judgment existed when Lighthouse tendered *Donnell* in 2017 and 2019. Nor was there any request for cooperation until after default judgment was entered; even if these clauses applied later, they cannot bar coverage for the duty to defend prior to 2023.

Next, even after 2023, *Donnell* does not fall within the scope of these clauses. The default judgment exclusion only applies to default judgments that result from an insured preventing Defendants being unable to investigate a claim. It is undisputed that Defendants could have investigated *Donnell* at any time since 2017.

Nor is it accurate that Lighthouse failed to timely report the *Donnell* Notice or otherwise failed to cooperate. When Defendants first sought cooperation in 2023, Lighthouse fully cooperated.

Finally, even if Lighthouse did violate any of these clauses, Defendants cannot assert this as a defense to coverage unless they were substantially prejudiced by these violations. They were not. Defendants had notice of *Donnell* in 2017 and failed to take any action for more than six years; Defendants had more than sufficient information to protect their own interests and those of their insured.

In sum, it is undisputed that the 2017 Notice was covered under the policy and that Defendants did not investigate or defend. The Court needs no more to grant summary judgment, but the additional facts establish the breadth of Defendants' failures, and that Defendants should be liable for the judgment as damages resulting from those breaches.

## II. STATEMENT OF FACTS

### A. The Policy

Lighthouse is a skilled nursing facility caring for residents. On March 2, 2017, Defendants MedPro and NFMI put a binder into effect for claims-made and reported

Senior Care Liability Policy Number NSC100276 ("Policy") to Lighthouse for the period of March 1, 2017 to March 1, 2018. Statement of Undisputed Fact ("SUF") 1. NFMI is the insurer, while MedPro administers the Policy. SUF 4. The Policy was effective once the binder was in place. *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.*, 188 Cal.App.4th 401, 419-420 (2010). Lighthouse completed subjectivities, including the completion of an on-site Risk Management Assessment, on April 28, 2017.[2] SUF 2. On April 3, 2017 Defendants issued the Policy to Lighthouse. SUF 3.

The Policy's Professional Liability coverage is "claims-made and reported" that obligates Defendants to pay "all loss and claims expense" arising from a health care event that took place on or after March 1, 2007, arising from (1) a claim first made against the insured and reported to Defendants during the Policy period; and (2) a potential claim first known about or discovered by the insured and reported to Defendants during the Policy period. SUF 5.

Under the Policy, Defendants have the duty to defend[3] both claims and potential claims. SUF 6. A "claim" is "an express, written demand upon an insured for money or services as compensation for damages, including a suit." MP-NFM-LH 008063. A "potential claim" is "an incident arising from, or in connection with, an event an insured knows or reasonably should know is likely to result in a claim." SUF 7. The

---

[2] "Subjectivities" in the insurance context refers to conditional requirements that insureds must comply with to receive coverage.

[3] Under a duty to defend, an insurer must defend its insured against claims with even a potential for liability coverage. *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295.

Policy contains no language limiting when Defendants' duty to defend arises. It does not, for example, suggest that the duty to defend only applies once a lawsuit has been filed or served. All claims and potential claims arising out of the same health care event are deemed to have been made on the first date that the claim or potential claims is made or discovered.

**B. Mrs. Donnell's Residency and Death**

Valerie Donnell was a 76 year-old Lighthouse resident who died of cardiac arrest on June 24, 2016, one day after being discharged from a hospital. Lighthouse became aware of her death in 2016. SUF 9. At the time of her death, Lighthouse was not aware of any facts about her death that would make it likely to result in a lawsuit against Lighthouse. SUF 9.

After Mrs. Donnell's death, Lighthouse understood that the California Department of Public Health ("CDPH") conducted an investigation into her death, but had not substantiated any complaint. SUF 9.

**C. Lighthouse Tenders the March 2017 *Donnell* Notice; Defendants Neither Investigate Nor Defend**

On March 8, 2017 Lighthouse provided MedPro with a copy of the *Donnell* Notice through AmWINS, its wholesale broker.[4] SUF 8. The *Donnell* Notice was a California Code of Civil Procedure § 364 Notice of Intent to Sue from counsel

[4] The *Donnell* Notice is dated March 1, 2017 and includes a proof of service by mail only reflecting service on the same date.

representing Dean Donnell, husband of Valerie Donnell. SUF 8. The *Donnell* Notice stated that Dean Donnell "intend[s] to sue you" for misconduct in the diagnosis, care and treatment of Valerie Donnell and seek damages. SUF 8. Upon tendering the *Donnell* Notice to MedPro, AmWINS indicated that Lighthouse administrator David Strother was the contact for questions.

MedPro admits that the *Donnell* Notice was "confirmed" for coverage under the Policy, and on April 7, 2017 it set up a claim file. SUF 10. But neither the assigned claims handler, Christina Ballester, nor anyone else advised Lighthouse that coverage had been confirmed, nor did they request additional information from Lighthouse, nor conduct any investigation. SUF 11. These failures departed from Ms. Ballester's practice in another contemporaneous Lighthouse matter, where she promptly contacted Lighthouse for additional information about a pre-suit notice. SUF 27.

Though coverage was confirmed for the *Donnell* Notice, and Ballester was advised that such notices were "regularly [sent] out to defense counsel", MedPro did not appoint defense counsel. SUF 14, 15.

Instead, the adjuster simply requested that the file be closed on May 9, 2017, without any investigation. SUF 16. MedPro's then-effective procedures directed adjusters to notify the insured when a claim file is closed, but Ballester failed to do so. SUF 16.

### D. Lighthouse Tenders the *Donnell* Suit in October 2019; Defendants Again Fail to Defend

The *Donnell* Notice later matured into a lawsuit that included Lighthouse as a defendant.[5] In late September 2019, Lighthouse received documents indicating that the *Donnell* plaintiff was seeking a default judgment against it, and promptly forwarded these to its insurance broker for tender to Defendants. On October 11, 2019, Steven Riss of AmWINS, who had previously tendered the *Donnell* Notice, sent a set of documents supporting a request for default judgment against Lighthouse to Ms. Ballester. SUF 18. The e-mail itself referenced the Policy number and Lighthouse, and it included 7 attachments, each of which identified Lighthouse as the party against whom relief was requested. SUF 18.

Notwithstanding this, Ballester asked that Riss confirm that the documents were *not* directed to Lighthouse. SUF 19. Riss complied with this request to confirm a false statement, but did not believe that this "confirmation" would replace a coverage determination by MedPro. He understood that MedPro would conduct an independent coverage analysis. SUF 19, 20. It did not.

Although pursuant to MedPro's procedures, adjusters were review all defendants named in a complaint to assess whether coverage existed for any defendant, Ballester did not request the complaint nor any other document of Lighthouse. SUF 21. She did not independently seek to review the docket in the

---

[5] Lighthouse received a copy of the Second Amended Complaint from its registered agent, Rockport Administrative Services, in April 2019, and in August 2019 received some of the individual documents that were later included in the *Donnell* Plaintiff's documents in support of its request for default judgment.

lawsuit, or make any other inquiry into the matter. She did not request that the *Donnell* file be re-opened, nor did she even make a record of this tender in the *Donnell* claim notes. SUF 23, 24, 25.

### E. Lighthouse Tenders the *Donnell* Default Judgment in August 2023, and Defendants Fail to Defend

After Lighthouse's tender of the 2019 *Donnell* filings, it heard nothing further for years. SUF 26. It thus reasonably assumed that the matter was being handled without need for further action. SUF 27.

Only in August 2023 did Lighthouse learn that the *Donnell* court had entered a default judgment against it earlier that year. SUF 28. Lighthouse again immediately caused it to be tendered to MedPro on August 24, 2023. SUF 29. Then, Defendants requested information and documents re: the *Donnell* Suit for the first time. SUF 30.

On September 11, 2023, MedPro purported to accept its defense obligation, appointing counsel "to seek to have the default judgment vacated" and issued a reservation of rights letter ("RoR"). SUF 32. The RoR did not acknowledge Lighthouse's October 2019 tender of the *Donnell* Suit (SUF 40), and reserved rights under the Policy's default judgment exclusion and its "Reporting Requirements" and "Assistance and Cooperation" provisions.

Between September 2023 and July 2024, Lighthouse cooperated with defense counsel's requests for information, but did not receive timely responses. SUF 31 33. Lighthouse repeatedly requested updates from defense counsel, and sought

confirmation that Defendants would participate in settlement efforts. SUF 33. Defendants resisted providing any response. SUF 33.

### F. Defendants Withdraw the Defense Without Any Basis and Deny Coverage

Instead, Defendants withdrew the defense on July 31, 2024 ("Withdrawal Letter"). That withdrawal was not premised on any Policy provision, but rather the assertion that there was "no indication of any attempts at enforcement of judgment and no other activity in this case." SUF 34.

The Withdrawal Letter misleadingly contended that the October 2019 documents seeking default judgment against Lighthouse, which plainly reference Lighthouse, were actually "a copy of a default judgment against another party (unrelated to [Lighthouse])" and that Defendants had received no notice of a suit against Lighthouse until August 2023. SUF 40.

Defense counsel closed the file without ever providing Lighthouse a single report on their efforts, though they did provide such a report to Defendants. SUF 36. In their notice of withdrawal, defense counsel revealed that, contrary to Defendants' representations, they "were not instructed nor authorized by MedPro to attempt to set aside the default judgment". SUF 35.

On January 13, 2025, Defendants denied coverage for the *Donnell* Suit on the same primary bases on which they had belatedly purported to reserve their rights ("Denial"). SUF 37. They repeated the false statement that "in the roughly 6 years

between 2017 and 2023, the Insured did not tender the Lawsuit to MedPro, without the 2019 tender from Riss. SUF 40. It is unclear whether defense counsel knew that the documents provided by Riss identified Lighthouse, as Defendants have claimed privilege over the transmission of court-filed documents.

Since Defendants' Denial, the *Donnell* plaintiff has liened one of Lighthouse's bank accounts, and filed additional enforcement documents. To date, Defendants have not indemnified Lighthouse for the default judgment entered against it in the *Donnell* Suit. SUF 41.

## III. STANDARDS OF REVIEW

Summary judgment is appropriate when the moving party demonstrates there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "When a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Co*., 210 F.3d 1099, 1102 (9th Cir. 2000). It may not "simply rest on the pleadings or argue that any disagreement or 'metaphysical doubt' [] precludes summary judgment", but must show genuine factual issues that could reasonably be resolved in favor of either party. *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 608 F. Supp. 3d 968, 976 (C.D. Cal. 2022), *aff'd in part, rev'd in part*, No. 23-55483, 2025 WL 1024392 (9th Cir. Apr. 7, 2025).

An insurer owes a duty to defend its insured if the claims create even a potential for coverage. *Anthem Elecs., Inc. v. Pac. Emplrs. Ins. Co.,* 302 F.3d 1049, 1055 (9th Cir. 2002). If Plaintiff shows a potential that the *Donnell* Notice and Suit were covered, and Defendants do not conclusively refute that potential, then the Court must find that Defendants had a duty to defend. *Hollyway Cleaners & Laundry Co., Inc. v. Cent. Nat'l Ins. Co. of Omaha, Inc.*, 219 F. Supp. 3d 996, 1002 1004 (C.D. Cal. 2016). Any doubts must be resolved in favor of the insured. *Hudson Ins. Co. v. Colony Ins. Co.,* 624 F.3d 1264, 1267 (9th Cir. 2010).

## IV. ARGUMENT

### A. The *Donnell* Claim Triggered Defendants' Duty to Defend Lighthouse

Defendants breached their duty to defend when they failed to take action following receipt of the March 2017 *Donnell* Notice or for the next six years. While they finally purported to provide a defense in 2023, after the entry of default judgment, counsel later revealed they had never been authorized to provide meaningful representation.

#### 1. Defendants Concede That Coverage Existed for the 2017 *Donnell* Notice

Under the Policy, Defendants have the "duty to defend any claim or potential claim" reported between March 1, 2017 to March 1, 2018 arising from a health care event. SUF 5. A "potential claim" is an "incident arising from, or in connection with,

an event an insured knows or reasonably should know is likely to result in a claim." SUF 6.

The Policy was in effect when Defendants received the *Donnell* Notice, informing Lighthouse that Dean Donnell "intend[s] to sue you" and seek damages re: the care of Valerie Donnell and seek damages. SUF 1, 3, 8. Such cannot reasonably be construed as anything but an incident "likely to result in a claim". Defendants have also conceded that they confirmed coverage. SUF 10.

Thus, there can be no dispute that the *Donnell* Notice triggered Defendants' duty to defend.

**2. Despite Receipt of a Covered "Potential Claim" Defendants Fail to Appoint Counsel or Otherwise Defend or Investigate**

Nor can there be a dispute that Defendants breached this duty. The Policy is unambiguous that Defendants have a duty to defend covered potential claims.

This duty arose when Defendants received the *Donnell* Notice, and found that coverage existed for it, irrespective of the fact that a lawsuit did not yet exist. "To defend meaningfully, the insurer must defend immediately." *Buss v. Superior Ct.*, 16 Cal. 4th 35, 49 (1997); *see also CNA Cas. of California v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 605 (1986) ("If the insurer is obliged to take up the defense of its insured, it must do so as soon as possible, both to protect the interests of the insured, and to limit its own exposure to loss").

The Policy contains no language indicating that this duty may be deferred for "potential claims". This is consistent with internal MedPro communications that notices similar to the *Donnell* Notice are "regularly [sent] out to defense counsel", and MedPro's Claim Manual, which indicates that lawsuits are not the only matters requiring appointment of defense counsel. SUF 14. And while Defendants appropriately set up a file in their claims-tracking software, they took no other action. They did not investigate, appoint defense counsel, or even issue a coverage determination or reserve rights. SUF 11, 13, 15. Instead, they simply closed the claim file less than two months after setting up the file, without notifying Lighthouse. SUF 16. This complete inaction forecloses any dispute as to whether Defendants breached their duty to defend.

**3. Defendants' 2019 Failure to Appoint Counsel is an Independent Breach**

Defendants had an opportunity to course-correct in 2019, but again failed to accept their defense obligation, instead turning a blind eye.

In 2019, after being served documents supporting a request for default judgment in the *Donnell* Suit, Lighthouse again had these documents tendered to Defendants. SUF 18. Steven Riss of AmWINS sent Christina Ballester, the same adjuster who opened (and closed) the file for the *Donnell* Notice, eight documents filed in the *Donnell* Suit that were directed to Lighthouse as part of a default judgment prove up package. The e-mail subject line identifies the documents in reference to

Lighthouse and the Policy number. MedPro admits that each of these documents "plainly" references Lighthouse. Instead of reviewing these records, Defendants asked Mr. Riss to inaccurately "confirm" that these documents did not refer to Lighthouse. SUF 19.

But this false confirmation did not relieve Defendants of their duty to defend. Their duty to defend was ongoing after receipt of the 2017 *Donnell* Notice. "[T]he duty to defend begins when a potential for coverage arises, and the duty continues *until the insurer proves otherwise*." *Hartford Accident & Indem. Co. v. Sup.Ct. (Syntex)* (1994) 23 Cal.App. 4th 1774, 1781; *see also Scottsdale Ins. Co. v. MV Transp.* (2005) 36 Cal. 4th 643, 657 (duty to defend continues until the third-party litigation ends "unless the insurer sooner proves, by facts subsequently developed, that the potential for coverage which previously appeared *cannot possibly materialize,* or no longer exists.")

Here, Defendants concede that coverage existed for the *Donnell* Notice. SUF 10. They may not rely on extrinsic evidence to negate their duty to defend where the evidence negates it. "In determining whether a duty to defend exists, courts look to all the facts available to the insurer at the time the insured tenders its claim for a defense." *Vann v. Travelers Companies*, 39 Cal. App. 4th 1610, 1614 (1995). *See also Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.* (1998) 68 Cal.App.4th 1030, 1031 ("Comparing the allegations of the underlying complaint with the extrinsic evidence relied upon by the non-defending insurers clearly shows

that the extrinsic evidence did not eliminate the possibility of coverage."); *Liberty Corp. Cap., Ltd. v. California Tau Chapter of Sigma Alpha Epsilon Fraternity at California Polytechnic State Univ*., No. 211CV02626ODWFFMX, 2012 WL 12877181, at *3 (C.D. Cal. Dec. 3, 2012) ("To refute coverage, the insurer must then conclusively prove that there is no potential for coverage under the policy's terms").

The documents plainly related to Lighthouse and Defendants were already aware of the potential for a *Donnell* Suit in 2017. SUF 10, 22. *See also RDJ Beverages, Inc. et al., v. United States Liability Insurance Company*, *et al.,* No. 25-CV-02919-DMS-SBC, 2026 WL 2985002, at *4 (S.D. Cal. Oct. 5, 2026) (finding that where insurer had sufficient information to put it on notice that a claim was potentially covered, the insured did not need to provide further documentation).

Defendants cannot evade their duty to defend by relying on a third-party's factual mistake that they induced where they had both prior notice of a potential claim, and court-stamped documents identifying Lighthouse as a named Defendant. The Court should grant summary judgment on Plaintiff's breach of contract claim.

**4. Defendants' Late Appointment and Baseless Withdrawal of Non-Responsive Counsel Compounded Their Breach**

Defendants' breach of their duty to defend was ongoing when they finally appointed defense counsel in 2023 purportedly to seek to set aside the default judgment. This late appointment did not cure the breach. Rather, this was an illusory defense that constitutes an additional breach.

This belated agreement to "defend" the action does not cure Defendants' initial breach of duty, nor the harm resulting from it. *Shade Foods, Inc. v. Innovative Products Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 881 (2000).

Moreover, the appointment ultimately proved to be illusory. Despite receiving cooperation from Lighthouse, defense counsel never took steps to set aside the default judgment. SUF 31, 33, 35. Further, Defendants never responded to months of e-mails from Lighthouse requesting that they participate in settling the *Donnell* Suit. SUF 33. Thus, even this late appointment constituted further breach, not remediation, of Defendants' duty to defend. *Cf. U.S.A. Nutrasource, Inc. v. CNA Ins. Co.*, 140 F. Supp. 2d 1049, 1054 (N.D. Cal. 2001) (finding that allegations that insurer agreed to defend, but failed to participate in settlement negotiations, sufficiently alleged a breach of the duty to defend).

Rather than respond to Lighthouse's requests, Defendants instead unilaterally withdrew their pretense of a defense in July 2024 based on a purported lack of collection efforts on the default judgment.

Defense counsel, withdrawing from the defense at Defendants' direction, also stated that they had never been "authorized or instructed by MedPro to attempt to set aside the default judgment". SUF 35. This directly contradicts what Defendants had represented to Lighthouse. Thus, Defendants had effectively provided no defense even after appointing defense counsel.

The *Donnell* Notice triggered Defendants' duty to defend in 2017; Defendants have never provided any meaningful defense. The Court should grant summary judgment on Plaintiff's breach of contract claim, and find that Defendants are liable for all damages resulting from their wrongful refusal to defend. *Cathay Mortuary (Wah Sang) Inc. v. United Pac. Ins. Co*., 582 F. Supp. 650, 659 (N.D. Cal. 1984) (*citing Kapelus v. United Title Guaranty Co.,* 15 Cal.App.3d 648 (1971)).

**5. Defendants' Denial on the Basis of Lack of Collection Activity is Impermissible**

Finally, Defendants effectively attempted to deny *Donnell* in July 2024 by unilaterally withdrawing the defense based on a purported lack of collection on the default judgment. SUF 34. A pause in judgment enforcement does not terminate the duty to defend. An insurer may withdraw its defense only "once it is able to demonstrate, by reference to undisputed facts, that the claim *cannot* be covered." *Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1186-87. Defendants did not contend that the claim was not covered, only that they did not believe that a defense was necessary at the time of withdrawal. The duty to defend is not contingent on an insurer's subjective belief about the necessity of the defense.

There remained risks of collection activity when Defendants withdrew the defense, which came to fruition as described in Section II.E, *supra*. As collection activities are ongoing, Defendants may not rely on non-collection to disclaim coverage.

### B. Defendants Breached Their Duty to Investigate the *Donnell* Notice

Defendants had a duty to investigate the *Donnell* Notice and Suit, and failed to inquire into either.

"Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim." *Shade Foods, supra* 78 Cal. App.4th at 879. An insurer must conduct a full investigation before taking a coverage position. "[I]t is essential that an insurer fully inquire into possible bases that might support the insured's claim .... [A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Egan v. Mutual of Omaha Ins. Co.* 24 Cal. 3d 809, 819 (1979).

Here, it is uncontroverted that Defendants conducted no investigation in 2017. SUF 12. Ms. Ballester's 2019 request that Riss "confirm" that documents were not directed to Lighthouse does not discharge this obligation.

This is particularly true because Defendants already had other information available to it that directly contradicted this statement; Defendants were required to review these and any other materials that could potentially establish coverage for the *Donnell* Suit. *Eigner v. Worthington,* 57 Cal. App. 4th 188, 198 (1997) (finding that insurer breached a duty to investigate where insurer ignored available "extrinsic evidence showing that potential coverage was available" and a reasonable investigation "would have revealed facts giving rise to the [duty] to defend"); *see also Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1625 (1996), *as*

*modified* (Mar. 28, 1996), *as modified* (Mar. 29, 1996) (finding that a denial was unreasonable where the insurer did not attempt to contact known witnesses or review their statements).

Defendants' complete failure to investigate the *Donnell* Notice and Suit constitutes an independent breach of contract.

### C. Defendants Are Equitably Estopped from Denying Coverage for *Donnell*

Equitable estoppel applies in the insurance context where: (1) the party to be estopped has engaged in blameworthy or inequitable conduct; (2) that conduct caused or induced the other party to suffer some disadvantage; and, (3) equitable considerations warrant the conclusion that the first party should not be permitted to exploit the disadvantage he inflicted upon the second party. *City of Hollister v. Monterey Ins. Co.*, 165 Cal.App.4th 455, 488 (2008). When invoked, the court "in effect closes its ears to a point—a fact, argument, claim, or defense—on the ground that to permit its assertion would be intolerably unfair." *Id.* at 486. Here, the Court should find that equitable estoppel bars Defendants from asserting that coverage is excluded under the Policy.

#### 1. Defendants Failed to Act on *Donnell* for Nearly Seven Years, and Then Falsely Asserted That They Never Had Notice

Estoppel may be found where an insurer is silent when faced with a duty to speak. Under California law, Defendants bear a common law obligation to assist the insured to recover bargained-for policy benefits. *Id.* at 490. Regulations also impose

on insurers a broad "duty to speak" with regard to an insured's coverage. *See, e.g.,* Cal.Code. Regs. tit. 10, § 2695.4(a); Cal. Ins. Code § 790.03(h)(13).[6]

*Hollister* is particularly instructive, as the court there found estoppel based on conduct by the insurer that has parallels here. There, the court found that estoppel was appropriate due to the breakdown in communication caused by the insurer. *Hollister, supra,* 165 Cal.App.4th at 498. The insurer also interfered by delaying its coverage determination. *Id*. at 491-93. In the interim, it had undertaken no investigation, yet asserted defenses that were not rooted in established fact. *Id*. at 492. The insurer belatedly insisted that no claim had been presented, and asserted that the insured had not cooperated in the insurer's investigation, even though it provided all requested information. *Id*. at 495-96.

So too here, Defendants left Lighthouse in the dark for six plus years. Upon receipt of the *Donnell* Notice in 2017, Defendants internally confirmed coverage, but took no action on this coverage determination. SUF 10, 11, 15. They did not investigate, appoint defense counsel, nor communicate this coverage determination to Lighthouse.

Then, in 2019, when Lighthouse tendered eight documents clearly identifying that it had been sued, it appears that Defendants never reviewed the documents

[6] While these duties do not statutorily apply to policies for medical malpractice claims, it is the custom and practice of insurers in California to comply with these requirements, and MedPro voluntarily incorporated these regulations into their Claims Manual.

provided. They again performed no investigation. *See* Section II.C, *supra*. And when this lack of investigation led them to incorrectly determine that the *Donnell* Suit did not involve Lighthouse, they chose not to disclaim coverage or even record this determination in their OASIS claims tracking software.

Defendants' failures were revealed in August 2023 when Lighthouse learned that a $2 million default judgment had been entered against it. Only after faced with this default judgment did Defendants purport to appoint defense counsel. Even this late activity was a ruse; while it created a paper trail for Defendants to claim that they provided a defense, Lighthouse remained fully exposed.

Lighthouse tried for nearly a year to get updates from defense counsel, and in the end, Defendants withdrew the defense because there was allegedly no activity on the *Donnell* judgment. SUF 33, 34. This is not a permissible basis for withdrawing a defense. Upon their withdrawal, defense counsel revealed that, contrary to Defendants' representations, they had never been authorized to seek to set aside the default judgment. Thus, Defendants had never actually authorized a defense.

This complete failure by Defendants to act or communicate with Lighthouse between 2017 and 2023, coupled with their affirmative deceit, is sufficiently unfair to satisfy the first step of the estoppel inquiry.

**2. Lighthouse Suffered Harm Due to Defendants' Failure to Investigate, Defend, or Communicate**

Equitable estoppel also requires that inequitable conduct cause harm to the party asserting it. Where, as here, "the inequitable conduct is omissive in nature, or more complex…the law will not invariably require reliance; indeed, it would be nonsensical to do so. One cannot 'rely on' another's obstructionism or recalcitrance, but such conduct can nonetheless give rise to estoppel where it causes harm to another…". *Hollister, supra* 165 Cal. App. 4th at 513.

Defendants will likely argue that Lighthouse's alleged inaction between 2019 and 2023 negates estoppel; such an assertion is misleading. It is Defendants who, between March 2017 and August 2023, chose not to comply with their duties under the Policy and California law. They communicated nothing to Lighthouse following the 2017 and 2019 tenders. This lack of communication concealed their failure to act from Lighthouse until 2023.

Although "detrimental reliance" is not required here, Lighthouse did rely on this silence. Lighthouse had contemporaneous experiences with MedPro and Ms. Ballester wherein they affirmatively communicated coverage issues, and requested additional information to resolve these issues. SUF 26. Thus, when Lighthouse did not receive such communications related to *Donnell*, this silence induced Lighthouse to mistakenly believe that they were handling the claim. SUF 27. As a result, Lighthouse did not independently retain defense counsel.

Lighthouse also detrimentally relied on Defendants' representations that they had retained defense counsel in 2023 to seek to set aside the default judgment that had

been entered as a result of their misconduct. In fact, defense counsel was never authorized to do so.

**3. It Would Be Inequitable to Allow Defendants to Benefit from Their Breaches of Duty**

Defendants' failures resulted in a default judgment against Lighthouse, yet they now seek to avoid coverage by contending that Lighthouse did not timely report the claim, did not cooperate, and prevented Defendants from investigating the claim. Not so. Defendants' own conduct prevented timely investigation and defense of the *Donnell* Notice and Suit. It would be inequitable to allow Defendants to benefit from this misconduct by allowing them to assert defenses premised on delays that they caused. *See August v. Provident Life and Acc. Ins. Co*., 772 F. Supp. 2d 1197, 1210 (C.D. Cal. 2011) (finding insurer that unreasonably delayed the denial of a claim by a decade was precluded from denying coverage, and accordingly liable under the policy).

**D. None of the Asserted Exclusions Apply to *Donnell***

Defendants did not reserve any rights upon receipt of the March 2017 *Donnell* Notice. It is only after they purported to accept their duty to defend six years later that they first contended that certain exclusions may bar coverage. They do not.

**1. None of the Policy Provisions in the Denial Excluded Coverage at the Time of Tender of the Donnell Notice or Suit**

As described above, Defendants disclaimed coverage based on the Policy's Default Judgment exclusion; and Assistance and Cooperation and Reporting

Requirements provisions. None of these applied when their duty to defend arose in 2017, or even in 2019 when Lighthouse tendered the *Donnell* Suit.

First, the default judgment exclusion clearly could not apply in 2017 or 2019, as no default judgment was entered until 2023. SUF 28. Even if the default judgment exclusion were applicable when Defendants asserted it in 2025, this does not erase their prior breach of the duty.

The same is true of the Cooperation and Assistance provision, which requires cooperation "in the investigation, defense, and/or settlement of any matter to which this policy applies." SUF 37. In 2017, continuing through 2019, there was no investigation or defense for Lighthouse to cooperate with. Accordingly, this clause could not have permitted Defendants to avoid their duty to defend. Likewise, the "Reporting Requirements" conditions the defense on Lighthouse "forwarding, as soon as practicable and expressly subject to the reporting requirements of the applicable Insuring Clause, notice of every claim, potential claim, demand, suit, summons, or legal paper the insured receives." SUF 37. In 2017, Lighthouse immediately forwarded the *Donnell* Notice, and in 2019 it forwarded eight documents from the *Donnell* Suit. SUF 8, 18.

There are no facts from which the Court could find that any of these provisions applied to bar defense coverage for the *Donnell* Notice or Suit in 2017 or 2019.

**2. None of the Denial Bases Applied in 2025**

***a. The Default Judgment Exclusion Does Not Apply Because Defendants Could Have Timely Investigated the Donnell Suit***

The default judgment exclusion bars coverage for "[d]amages that an insured becomes legally obligated to pay resulting from a default judgment or other claim or potential claim that the company was unable to timely investigate or defend due to the acts or omissions of any insured." SUF 38. This does not apply here.

The plain language of this exclusion limits its scope to default judgments that result from Defendants' inability to investigate or defend due to the acts of the insured. This is how coverage counsel repeatedly interpreted this exclusion. SUF 39. This interpretation is also consistent with the fact that MedPro admits that it has settled a claim despite the existence of a default judgment.

The default judgment here did not result from Defendants' inability to investigate or defend the *Donnell* Suit due to Lighthouse's conduct. To the contrary, Defendants were given multiple opportunities to investigate and defend for nearly six years before entry of the default judgment. *See* Sections II.C-D, *supra*. This exclusion has no application here.

***b. Lighthouse Complied with All Reporting Requirements and Requests for Cooperation***

Defendants also denied the claim under the Policy's Reporting Requirements and Assistance and Cooperation provisions, based on the false premise that

Lighthouse had not provided Defendants any documents following tender of the 2017 *Donnell* Notice. Not so.

There was no request for cooperation until 2023, after Lighthouse tendered notice of the default judgment. SUF 30. Defendants admit that they did not request documents until 2023, and do not dispute that Lighthouse cooperated at that time. Rather, it was Defendants and defense counsel that were non-responsive.

Likewise, the Reporting Requirements require Lighthouse to provide Defendants every "notice of every claim, potential claim, demand, suit, summons, or legal paper the insured receives". After providing defendants the *Donnell* Notice and *Donnell* Suit request for default judgment documents, Lighthouse sent a copy of the default judgment shortly after receiving it in August 2023. Lighthouse complied with these conditions; Defendants may not disclaim coverage for *Donnell* on these bases.

### 3. Defendants Suffered No Prejudice from Any Purported Violation

Even if the Court believes that one of these clauses may apply, coverage can only be barred if Defendants were prejudiced by a violation of these provisions.

"Under California law, an insured's breach of a notice provision or a cooperation clause does not excuse the insurer's performance unless the insurer can show that it suffered prejudice" from the breach. *Belz v. Clarendon Am. Ins. Co.*, 158 Cal. App. 4th 615, 625 (2007); *Campbell v. Allstate Ins. Co.*, 60 Cal. 2d 303, 305 (1963) (holding that a breach of a cooperation clause cannot be a defense "unless the

insurer was substantially prejudiced thereby"). A breach of a default judgment exclusion is subject to the same prejudice requirement where "pertinent language" that was purportedly breached is a notice provision. *Belz, supra* 158 Cal. App. 4th at 625.

Defendants' denial of *Donnell* based on purported breaches of the Assistance and Cooperation and Reporting Requirements clauses thus cannot provide a defense unless Defendants make a showing that they were prejudiced by any breach. *Id*. at 629. Because they had actual notice of both the *Donnell* Notice in 2017, and the *Donnell* Suit in 2019, Defendants cannot make this showing. *See* SUF 8, 18.

Further, the operative language in the default judgment exclusion here is properly construed as either a notice or cooperation provision; Defendants emphasize the exclusion of default judgments that they were "unable to timely investigate or defend due to the acts or omissions of any Insured." Thus, Defendants must demonstrate that they sustained "actual, substantial prejudice" to rely on this as a defense to coverage. *Id*. at 620. Merely losing the opportunity to investigate or defend the action does not satisfy this standard. *Id*. at 632. Lighthouse did not deprive Defendants of the opportunity to investigate or defend but Defendants chose not to act. They cannot now disclaim coverage based on prejudice that they themselves caused.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant summary judgment on its breach of contract claim, finding that Defendants breached their duty to defend, and are liable for all resulting damages.

Dated: October 19, 2026

THE WAGNER FIRM

*/s/ Avi Wagner*
Avi Wagner
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: 310.491.7949
avi@thewagnerfirm.com

*Attorneys for Plaintiff Lighthouse Healthcare Center, LLC*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1**

The undersigned, counsel of record for Plaintiff Lighthouse Healthcare Center, LLC, certifies that this brief contains 6,719 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 19, 2026

*/s/ Avi Wagner*

Avi Wagner

## PROOF OF SERVICE

I, the undersigned say: I am not a party to the above case, and am over eighteen years old. On October 19, 2026 I served true and correct copies of the foregoing documents,

- **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; AND**
- **PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT;**
- **DECLARATION OF AVI WAGER IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT;**
- **DECLARATION OF LAIB GREENSPOON IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT;**
- **APPENDIX OF EVIDENCE IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND**
- **PROPOSED JUDGMENT IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 19, 2026, at Los Angeles, California.

*/s/ Charissa Morningstar*

Charissa Morningstar