Avi Wagner (SBN #226688)
THE WAGNER FIRM
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 491-7949
Facsimile: (310) 694-3967
Email: avi@thewagnerfirm.com
*Attorneys for Plaintiff*
*Lighthouse Healthcare Center, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Lighthouse Healthcare Center, LLC, a California Limited Liability Company,

Plaintiff,

vs.

National Fire & Marine Insurance Company, a Nebraska Corporation; MedPro Group, Inc. and DOES 1-100,

Defendant(s).

Case No.: 2:25-cv-01651-ODW-AYP

Honorable Otis D. Wright

**PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

[Filed with Notice of Motion and Motion]

Date: November 23, 2026
Time: 1:30 p.m.

## I. STATEMENT OF UNDISPUTED FACTS

| No. | Undisputed Material Fact ("UMF") | Supporting Evidence |
|---|---|---|
| ***The Parties and the Policy*** | | |
| 1 | On March 2, 2017, Defendants MedPro and NFMI put a binder into effect for claims-made and reported Senior Care Liability | Exhibit 131; Joint Stipulation of Authenticity. |

| No. | Undisputed Material Fact ("UMF") | Supporting Evidence |
|---|---|---|
| | Policy Number NSC100276 ("Policy") for Lighthouse for the period of March 1, 2017 to March 1, 2018. | |
| 2 | Lighthouse completed subjectivities, including MedPro's completion of an on-site Risk Management Assessment, on April 28, 2017. | Exhibits 119, 120 (To Be Filed Under Seal); Joint Stipulation of Authenticity. |
| 3 | On April 3, 2017 Defendants issued the Policy to Lighthouse for the period of March 1, 2017 to March 1, 2018. | Exhibit 139, Joint Stipulation of Authenticity. |
| 4 | NFMI is the Policy's insurer, while MedPro administers the Policy on NFMI's behalf. | Exhibit 39 at MP-NFM-LH 008054; MP-NFM-LH 008056; Joint Stipulation of Authenticity. |
| 5 | The Policy's Professional Liability coverage is a "claims-made and reported" coverage that obligates Defendants to pay "all loss and claims expense" arising from a health care event that took place on or after March 1, 2007, arising from (1) a claim first made against the insured and reported to Defendants during the Policy period; and (2) a potential claim first known about or discovered by the insured and reported to Defendants during the Policy period. All claims and potential claims arising out of the same healthcare event are deemed made on the date of the first claim or potential claim. | Exhibit 31 at MP-NFM-LH 008084; Joint Stipulation of Authenticity. |

| No. | Undisputed Material Fact (“UMF”) | Supporting Evidence |
|---|---|---|
| 6 | Under the Policy, Defendants have the duty to defend both claims and potential claims. The Policy is silent on the scope of what a defense entails. | Exhibit 31 at MP-NFM-LH 008084; MP-NFM-LH 008070; Joint Stipulation of Authenticity. |
| 7 | The Policy defines a “potential claim” as “an incident arising from, or in connection with, an event an insured knows or reasonably should know is likely to result in a claim.” | Exhibit 31 at MP-NFM-LH 008063; Joint Stipulation of Authenticity. |
| ***Lighthouse's March 2017 Tender of Donnell Notice*** | | |
| 8 | On March 8, 2017 Lighthouse provided MedPro with a copy of the *Donnell* Notice, a California Code of Civil Procedure § 364 Notice of Intent to Sue from counsel representing Dean Donnell, the husband of Valerie Donnell. The *Donnell* Notice stated that Mr. Donnell “intend to sue you” for “injury and damages as a result of diagnosis, treatment, surgery and/or care” of Valerie Donnell, and enumerates 15 categories of loss for which he will seek compensation, as well as four classes of damages. The *Donnell* Notice was dated March 1, 2017 and had a proof of service reflecting that it had been served by mail only. | Exhibits 3, 39; Joint Stipulation of Authenticity.<br><br>Exhibit 140, Excerpt of Transcript of Deposition of MedPro Rule 30 (b)(6) Deponent Leah Nollenberger 30(b)(6) (“Nollenberger Tr.”), 28:17-20; 193:1-11; Declaration of Avi Wagner (“Wagner Decl.”), ¶ 4. |
| 9. | Lighthouse understood that Ms. Donnell died in 2016, and by the date of receipt of the *Donnell* | Declaration of Laib Greenspoon (“Greenspoon Decl.”)., ¶¶ 4-9. |

| No. | Undisputed Material Fact ("UMF") | Supporting Evidence |
|---|---|---|
| | Notice, understood that the California Department of Health ("CDPH") had investigated Mrs. Donnell's death. However, Lighthouse understood that CDPH had never substantiated any complaint related to Mrs. Donnell and, prior to receiving the *Donnell* Notice, was not otherwise aware of any facts that would suggest that her death would result in a lawsuit against Lighthouse. | Exhibits 146, 147; Wagner Decl., ¶¶ 11, 12.<br><br>Exhibit 144, Excerpt of Transcript of Deposition of Robert M. Anderson, 93:2-9; Wagner Decl., ¶ 8. |
| 10 | Ballester admits that the 2017 *Donnell* Notice had been "confirmed" for coverage by the time it was assigned to her. MedPro agrees that no file would have been opened if coverage were not confirmed. | Exhibit 141, Excerpt of Transcript of Deposition of Christina Ballester ("Ballester Tr.") 100:7-20; 132:19-134:24; Wagner Decl., ¶ 5.<br><br>Exhibit 140, Nollenberger Tr. 78:12-20. |
| 11 | Defendants did not advise Lighthouse that coverage had been confirmed for the *Donnell* Notice in 2017. | Exhibit 141, Ballester Tr., 83:2-84:2.<br><br>Exhibit 140, Nollenberger Tr., 200:1-10<br><br>Greenspoon Decl., ¶ 12. |
| 12 | Defendants did not conduct any investigation into the *Donnell* Notice in 2017, either internally or by requesting documents or information from Lighthouse. | Exhibit 140, Nollenberger Tr. 53:23-54:14; 58:17-21; 234:19-235:1.<br><br>Exhibit 141, Ballester Tr. 99:23-99:9.<br><br>Greenspoon Decl., ¶ 11.<br><br>Exhibit 5; Joint Stipulation of Authenticity. |

| No. | Undisputed Material Fact ("UMF") | Supporting Evidence |
|---|---|---|
| | | |
| 13 | It is a custom and practice in the California insurance industry to investigate both claims and potential claims. | Exhibit 143, Excerpt of Deposition Transcript of Barry Zalma ("Zalma Tr."), pp. 59:12-24; 69:24-70:19; 80:14-81:3; Wagner Decl., ¶ 7. |
| 14 | MedPro was aware that counsel was appointed at times prior to the filing of a lawsuit, and that notices like the *Donnell* Notice were "regularly [sent] out to defense counsel". | Exhibit 4; Exhibit 31 at MP-NFM-LH 008054; Joint Stipulation of Authenticity; Ex. 141, Ballester Tr., pp. 124-126.<br><br>Exhibit 2 at MP-NFM-LH 008940 (Filed Under Seal); Joint Stipulation of Authenticity. |
| 15 | Even though coverage was "confirmed", Defendants did not appoint defense counsel after receiving the *Donnell* Notice in 2017. | Exhibit 5; Joint Stipulation of Authenticity.<br><br>Exhibit 141, Ballester 132:17-134:14.<br><br>Greenspoon Decl., ¶ 12. |
| 16 | In May 2017, Ballester closed the claim file without investigation and without notice to Lighthouse, contrary to MedPro's procedures. | Exhibit 5; Joint Stipulation of Authenticity.<br><br>Exhibit 140, Nollenberger Tr., 234:15-22.<br><br>Exhibit 141, Ballester Tr. 99:10-99:18; 152:4-11.<br><br>Exhibit 2 at MP-NFM-LH 008919 (Filed Under Seal).<br><br>Greenspoon Decl., ¶ 13. |

| No. | Undisputed Material Fact ("UMF") | Supporting Evidence |
|---|---|---|
| | | |
| 17. | MedPro gathered no additional information concerning the *Donnell* Notice or *Donnell* Suit in 2018 or 2019. | Exhibit 140, Nollenberger Tr., 73:10-23. |
| | ***Lighthouse Tenders the Donnell Suit in October 2019, and Defendants Again Ignore Their Duty to Defend*** | |
| 18. | On October 11, 2019, Steven Riss of AmWINS, who had previously tendered the *Donnell* Notice, sent a set of documents supporting a request for default judgment against Lighthouse to Ms. Ballester. The e-mail itself referenced the Policy number and Lighthouse, and attached to it were 7 attachments, each of which identified Lighthouse as the party against whom relief was requested. | Exhibits 11, 12, 13, 14, 15, 16, 17, 18; Joint Stipulation of Authenticity.<br><br>Exhibit 140, Nollenberger Tr. 36:18-22. |
| 19. | On October 11, 2019, Ballester responded by asking Riss to confirm that the documents did not relate to Lighthouse, but a separate, unrelated defendant. Riss agreed. | Exhibit 19; Joint Stipulation of Authenticity. |
| 20. | Riss did not believe that his e-mail "confirming" Ballester's erroneous statement that the request for default documents did not involve Lighthouse would supplant an independent coverage determination by MedPro. He | Exhibit 142, Excerpt of Transcript of the Deposition of Steven Riss of AmWINs ("Riss Tr."), 116:24-118:1; Wagner Decl. ¶ 6. |

| No. | Undisputed Material Fact ("UMF") | Supporting Evidence |
|---|---|---|
| | understood that MedPro would perform its own coverage review and determination. | |
| 21. | Although pursuant to MedPro's procedures, Ballester should have reviewed the complaint to determine whether any insureds were named as defendants, neither Ballester nor anyone else at MedPro requested a copy of the Complaint in 2019 nor any other documents related to the *Donnell* Suit. | Exhibit 2 at MP-NFM-LH 008940 (Filed Under Seal).<br><br>Exhibit 140, Nollenberger Tr. 58:17-21; 94:6-9.<br><br>Exhibit 141, Ballester Tr. 67:17-68:7.<br><br>Exhibit 5; Joint Stipulation of Authenticity. |
| 22. | Ballester admits that the attachments received in the October 11, 2019 email "plainly" reference Lighthouse, at least one of them referencing Lighthouse no fewer than 4 times, and seek a request for default judgment against Lighthouse. MedPro agrees that the face of the documents reference Lighthouse. | Exhibit 141, Ballester Tr. 170:20-179:7.<br><br>Exhibit 140, Nollenberger Tr. 224:7-225:16 |
| 23. | Ballester did not include any notes regarding her conversation with Riss in the OASIS claim file. | Exhibit 140, Nollenberger Tr. 92:24-94:23; 217:7-21; 219:1-9; 228:20-229:12<br><br>Exhibits 5, 32; Joint Stipulation of Authenticity. |
| 24. | Ballester did not request the *Donnell* file be reopened after receiving the request for default package or take any other action. | Exhibit 140, Nollenberger Tr. 95:3-9<br><br>Exhibit 32; Joint Stipulation of Authenticity.<br><br>Exhibit 5; Joint Stipulation of Authenticity. |

| No. | Undisputed Material Fact ("UMF") | Supporting Evidence |
|---|---|---|
| | | |
| 25. | Defendants did not assign defense counsel to Lighthouse in the *Donnell* Suit following the October 11, 2019 tender. | Exhibit 140, Nollenberger Tr. 93:12-20. |
| | ***Lighthouse Learns of a Default Judgment in 2023*** | |
| 26. | After Lighthouse's receipt and tender of the 2019 *Donnell* filings, Lighthouse received no further notice about case developments between 2019 and 2023. | Greenspoon Decl., ¶ 18. |
| 27. | Since it never received any communications from MedPro notifying it that there was no coverage for *Donnell*, and it knew from contemporaneous experiences with MedPro and Ms. Ballester that they would contact Lighthouse if there was an issue with coverage, Lighthouse assumed that Defendants were handling the matter. | Greenspoon Decl., ¶¶ 14-16, 18-21. |
| 28. | In January 2023, a default judgment was entered against Lighthouse in the *Donnell* Suit for $2,000,885. | Exhibit 86; Joint Stipulation of Authenticity. |
| 29. | In August 2023, Lighthouse first became aware of the default judgment and within days caused it to be submitted it to | Exhibit 148, Greenspoon Decl., ¶¶ 22, 23.<br><br>Exhibit 145, Wagner Decl., ¶ 9. |

| No. | Undisputed Material Fact ("UMF") | Supporting Evidence |
|---|---|---|
| | Defendants. | |
| 30. | Defendants requested documents related to the *Donnell* Suit only after receiving notice of the default judgment in 2023. | Exhibit 140, Nollenberger Tr. 58:17-21.<br><br>Greenspoon Decl., ¶ 24. |
| 31. | Lighthouse cooperated with Defendants requests following tender of the default judgment. | Exhibit 149, Greenspoon Decl., ¶¶ 26, 27.<br><br>Exhibit 142, Riss Tr. 120:18-121:7 |
| 32. | On September 11, 2023, Defendants issued a Reservation of Rights letter representing that they were appointing defense counsel in the *Donnell* Suit "to seek to have the default judgment vacated". | Exhibit 34 at MP-NFM-LH 008790; Joint Stipulation of Authenticity. |
| 33. | Between September 2023 and July 2024, Lighthouse experienced numerous delays in receiving updates from defense counsel, including five months of requests seeking a response on whether Defendants would agree to participate in any attempt to settle the *Donnell* Suit. | Exhibits 150, 151 at LH_00006487-90; Greenspoon Decl., ¶¶ 28, 29.<br><br>Exhibit 152 at LH_00008908-10; Greenspoon Decl., ¶ 30. |
| 34. | In July 2024, Defendants withdrew their defense of the *Donnell* Suit based on a claimed lack of collection efforts on the *Donnell* judgment. | Exhibit 35 at MP-NFM-LH 008718; Joint Stipulation of Authenticity. |
| 35. | In August 2024, Lighthouse received a letter from its appointed defense counsel stating | Exhibit 153, Greenspoon Decl., ¶ 31. |

| No. | Undisputed Material Fact ("UMF") | Supporting Evidence |
|---|---|---|
| | that Defendants had withdrawn the defense and informing Lighthouse that they "were not authorized or instructed by MedPro to attempt to set aside the default judgment." | |
| 36. | Before closing the file, defense counsel did not provide Lighthouse with any report or opinion, but *did* provide MedPro a report. | Exhibit 140, Nollenberger Tr. pp. 147-148.<br><br>Greenspoon Decl., ¶ 32. |
| 37. | On January 15, 2025, Defendants denied coverage for the *Donnell* Suit, asserting that it was barred by, *inter alia*, the Default Judgment exclusion and the Policy's Cooperation and Reporting Requirement provisions. | Exhibit 36; Joint Stipulation of Authenticity.<br><br>Exhibit 140, Nollenberger Tr., 287:11-21; 288:1-17. |
| 38. | The Policy's default judgment exclusion bars coverage for "Damages that an insured becomes legally obligated to pay resulting from a default judgment or other claim or potential claim that the company was unable to timely investigate or defend due to the acts or omissions of any insured." | Exhibit 31 at MP-NFM-LH 008072; Joint Stipulation of Authenticity. |
| 39. | The Reservation of Rights letter, the Withdrawal of Defense letter, and the Denial all assert that the Policy's default judgment exclusion applies to default judgments that occur when MedPro "was unable to timely | Exhibit 34 at MP-NFM-LH 008790;<br><br>Exhibit 35 at MP-NFM-LH 008719;<br><br>Exhibit 36 at MP-NFM-LH 010096; Joint Stipulation of Authenticity. |

| No. | Undisputed Material Fact ("UMF") | Supporting Evidence |
|---|---|---|
| | investigate or defend due to the acts or omissions of any Insured." | |
| 40. | The Reservation of Rights, Withdrawal Letter, and Denial all falsely represent that Lighthouse did not tender the *Donnell* Suit at any point between the years 2017 and 2023. | Exhibit 34 at MP-NFM-LH 008791; Exhibit 35 at MP-NFM-LH 008720, MP-NFM-LH 008736; Exhibit 36 at MP-NFM-LH 010096; Joint Stipulation of Authenticity. |
| 41. | To date, Defendants have not indemnified Lighthouse for the default judgment entered against it in the *Donnell* Suit. | Exhibit 140, Nollenberger Tr., 68:21-24.<br><br>Greenspoon Decl., ¶¶ 33, 34. |

## II. CONCLUSIONS OF LAW

1. Summary judgment is appropriate when the moving party demonstrates there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
2. A fact is material when, under the governing substantive law, it could affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
3. An insurer owes a duty to defend its insured if the claims create even a potential for coverage. *Anthem Elecs., Inc. v. Pac. Emplrs. Ins. Co.,* 302 F.3d 1049, 1055 (9th Cir. 2002).
4. If an insured shows a potential that a claim is covered, and the non-moving

party does not conclusively refute that potential, then the Court must find that the non-moving parties had a duty to defend. *Hollyway Cleaners & Laundry Co., Inc. v. Cent. Nat'l Ins. Co. of Omaha, Inc.*, 219 F. Supp. 3d 996, 1002 1004 (C.D. Cal. 2016).

5. Any doubts must be resolved in favor of the insured. *Hudson Ins. Co. v. Colony Ins. Co.,* 624 F.3d 1264, 1267 (9th Cir. 2010).

6. Defendants had a duty to defend the *Donnell* Notice once they determined that coverage existed for it. To defend meaningfully, the insurer must defend immediately." *Buss v. Superior Ct.*, 16 Cal. 4th 35, 49 (1997).

7. Defendants' duty to defend continued into 2019, when Lighthouse tendered the *Donnell* Suit. The duty to defend begins when a potential for coverage arises, and the duty continues until the insurer proves otherwise. *Hartford Accident & Indem. Co. v. Sup.Ct. (Syntex)* (1994) 23 Cal.App. 4th 1774, 1781.

8. Defendants could not rely on Mr. Riss's induced "confirmation" that the *Donnell* Suit documents did not relate to Lighthouse to avoid their duty to defend. In determining whether a duty to defend exists, courts look to all the facts available to the insurer at the time the insured tenders its claim for a defense. *Vann v. Travelers Companies*, 39 Cal. App. 4th 1610, 1614 (1995).

9. Defendants' belated appointment of defense counsel did not cure the prior breach of its duty to defend. *Shade Foods, Inc. v. Innovative Products Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 881 (2000).

10. Defendants were not entitled to deny the *Donnell* Suit based on a purported lack of collection activity on the *Donnell* Judgment. An insurer may withdraw its defense only "once it is able to demonstrate, by reference to undisputed facts, that the claim *cannot* be covered." *Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1186-87.

11. Defendants breached their duty to investigate the *Donnell* Notice and Suit by failing to make any inquiries between 2017 and 2019. An insurer must conduct a full investigation before taking a coverage position. "[I]t is essential that an insurer fully inquire into possible bases that might support the insured's claim .... [A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Egan v. Mutual of Omaha Ins. Co.* 24 Cal. 3d 809, 819 (1979). An insurer breaches its duty to investigate where it ignores available extrinsic evidence that would have revealed facts giving rise to a duty to defend. *Eigner v. Worthington,* 57 Cal. App. 4th 188, 198 (1997).

12. Defendants are equitably estopped from asserting Policy-based defenses. Equitable estoppel applies in the insurance context where (1) an insurer engages in inequitable conduct; (2) which disadvantages its insured; (3) and equitable considerations counsel that the insurer should not be allowed to benefit from the way it disadvantaged its insured. *City of Hollister v. Monterey Ins. Co*., 165 Cal.App.4th at 488 (2008). Defendants failed to investigate or

defend *Donnell* for more than six years and concealed this from Lighthouse, causing it to take no action in the *Donnell Suit*. This resulted in a default judgment against Lighthouse. Defendants should not be allowed to benefit from their misconduct.

13. Defendants cannot assert the Assistance and Cooperation and Reporting Requirement provisions, nor the default judgment exclusion, as a defense because they suffered no prejudice as a result of any violation of these clauses. "Under California law, an insured's breach of a notice provision or a cooperation clause does not excuse the insurer's performance unless the insurer can show that it suffered prejudice" from the breach. *Belz v. Clarendon Am. Ins. Co.*, 158 Cal. App. 4th 615, 625 (2007). A default judgment exclusion is subject to the same prejudice requirement where "pertinent language" that was purportedly breached is a notice provision. *Id.*

DATED: October 19, 2026 THE WAGNER FIRM

By: *__/s/ Avi Wagner__*
Avi Wagner
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310)491-7949
Facsimile: (310)694-3967
Email: avi@thewagnerfirm.com
*Attorneys for Plaintiff Lighthouse Healthcare Center, LLC*