Avi Wagner (SBN #226688)
THE WAGNER FIRM
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 491-7949
Facsimile: (310) 694-3967
Email: avi@thewagnerfirm.com

*Attorneys for Plaintiff*
*Lighthouse Healthcare Center, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Lighthouse Healthcare Center, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>National Fire & Marine Insurance Company, a Nebraska Corporation; MedPro Group, Inc. and DOES 1-100,<br><br>Defendant(s). | **Case No.: 2:25-cv-01651-ODW-AYP**<br>**Hon. Otis D. Wright**<br><br>**DECLARATION OF LAIB GREENSPOON IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Date: November 23, 2026**<br><br>**Time: 1:30 p.m.** |

I, Laib Greenspoon, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the Chief Executive Officer of plaintiff Lighthouse Healthcare Center, LLC ("Lighthouse") and have served in this position since 2007. I have personal knowledge of the matters set forth herein and if called to testify could and would truthfully testify to the following.

2. I make this declaration in support of Plaintiff Lighthouse's Motion for Partial Summary Judgment.

3. In 2016, I and Lighthouse learned that Valerie Donnell had died.

4. At that time, I was not aware of any facts about Ms. Donnell's death that I believed made it likely to result in a lawsuit against Lighthouse. I have worked in and/or operated skilled nursing facilities ("SNF") for more than 20 years. In my experience, it was not and is not common for SNF residents to pass away without any wrongdoing or injury. That is because SNFs often care for individuals who have significant health problems. This was especially true for residents like Ms. Donnell, who had recently come to the SNF after a hospital discharge.

5. By virtue of my role as Lighthouse's CEO, I am familiar with Lighthouse's experiences with CDPH investigations during 2007 and the present and those of other SNFs.

6. In the 2016 to first half of 2017 timeframe, CDPH was permitted to make a determination that a complaint was not substantiated without making a written report. Thus, it was not uncommon for CDPH to close an investigation with no written report or nice.

7. From before 2016 to the present, it has been common for CDPH to substantiate complaints made against SNFs, and Lighthouse, like most SNFs, has been found to have certain deficiencies during certain periods. But Lighthouse did not receive notice or otherwise understand at any time that CDPH had substantiated any complaint in relation to Ms. Donnell's death.

8. By March 7, 2017, Lighthouse also understood that, at some point after Ms. Donnell's death, the California Department of Public Health ("CDPH") had investigated her death, but had not substantiated any wrongdoing. This means that CDPH did not find any evidence indicating that Lighthouse had engaged in a regulatory violation, misconduct, or otherwise caused a safety issue.

9. At no time from 2016 through the present has CDPH informed Lighthouse or otherwise indicated to it that Lighthouse engaged in any misconduct in connection with Ms. Donnell's residency at Lighthouse or her passing. Thus, Lighthouse still

understands that CDPH has not substantiated any complaint against Lighthouse in relation to Ms. Donnell's death.

10. Upon receiving a Notice of Intent to Sue from counsel representing Mrs. Donnell's husband, Dean Donnell, for alleged misconduct in the care of Mrs. Donnell, ("*Donnell* Notice") Lighthouse immediately sent it to Shomer Insurance for it to tender to MedPro Group, Inc. ("MedPro").

11. After the tender of the *Donnell* Notice in March 2017, MedPro did not reach out to Lighthouse, nor did it request additional documents or information from Lighthouse.

12. After the tender of the *Donnell* Notice in March 2017, Lighthouse never received a coverage determination from MedPro for many years and it now understands that MedPro did not appoint counsel at that time.

13. In 2017, Lighthouse did not receive any notice from MedPro that it had closed the *Donnell* file in its system.

14. Contemporaneous to Lighthouse's tender of the *Donnell* Notice, Lighthouse tendered another pre-suit incident to MedPro, for resident whose initials are PG. Lighthouse tendered this notice in May 2017, and Ms. Christina Ballester of

MedPro reached out shortly thereafter to collect additional information about the notice.

15. Based on MedPro's outreach with the contemporaneous PG matter, Lighthouse expected that MedPro would also request additional information about the *Donnell* Notice if it needed such information.

16. MedPro and Ballester's treatment of the PG matter also matched my experience in 2018 when Lighthouse tendered a lawsuit arising out of alleged misconduct toward another resident. MedPro needed more information before they could determine whether the suit was covered, so Ms. Ballester reached out with additional questions. This reinforced my belief that MedPro would do the same in relation to the *Donnell* Notice if it needed more information.

17. After tender of the *Donnell* Notice, Mr. Donnell filed a lawsuit naming Lighthouse as a defendant ("*Donnell* Suit"). In October 2019, Lighthouse caused a set of 8 documents filed in the *Donnell* Suit in support of a request for default judgment against Lighthouse, to be tendered to MedPro via its insurance broker AmWINS.

18. After the tender of the *Donnell* Suit, Lighthouse received no further communication from MedPro for a number of years until contacted by counsel eventually appointed by MedPro.

19. After the tender of the *Donnell* Suit to MedPro, Lighthouse likewise did not receive any further filings from the *Donnell* Suit until August of 2023, when it received a copy of the default judgment in that action.

20. Based on my experience dealing with insurers after the tender of a lawsuit, it was typical to not receive further communications, even from appointed defense counsel, for months or even years while the case was being handled.

21. The lack of communication, coupled with my prior experience, and my understanding that MedPro would communicate to Lighthouse if there were a problem with confirming coverage or a need for assistance in defending the matter, led Lighthouse to assume that MedPro was handling the *Donnell* Suit and need not take any further action.

22. Lighthouse did not become aware of the default judgment against it until August 2023, when I received a copy of the default judgment from counsel. Included in the Appendix of Evidence as Exhibit 148 is a true and correct copy of the August 21, 2023 e-mail I received informing me of the entry of default judgment.

23. Lighthouse caused the default judgment to be tendered to MedPro on August 23, 2023.

24. MedPro requested additional information and documents related to the *Donnell* Notice and Suit for the first time in 2023, after tender of the default judgment.

25. In September 2023, MedPro represented that it had appointed defense counsel at the firm of Fraser, Watson & Croutch for the purpose of attempting to set aside the default judgment.

26. Between September 2023 and July 2024, Lighthouse complied with all requests by defense counsel and/or MedPro related to the *Donnell* Suit and participated in several calls and responded to requests for information.

27. Attached to the Appendix of Evidence as Exhibit 149 is a true and correct copy of an e-mail thread I received reflecting that Lighthouse worked on scheduling a call with defense counsel in January 2024 and Avi Wagner followed up on behalf of Lighthouse with information and documents requested by defense counsel in less than a week.

28. Lighthouse did not receive the same cooperation. Aware that there were deadlines that would limit the viability of a request to set aside default judgment, Lighthouse's personal counsel Avi Wagner sought updates for nearly 8 weeks in October and December of 2023, only to later find out that defense counsel had been waiting for court files the entire time, which were not obtained in full until January

2024. Included in the Appendix of Evidence as Exhibit 150 is a true and correct copy of an e-mail thread that I was copied on between October 2 and November 23, 2023, wherein Mr. Wagner sent repeated update requests to defense counsel with no substantive response.

29. Included in the Appendix of Evidence as Exhibit 151 is a true and correct copy of an e-mail thread that I was copied on that continues the requests from the previous paragraph, which reflects that defense counsel was no able to have a discussion about the court records until January 2024.

30. The delays continued in 2024, when Mr. Wagner sent multiple requests to defense counsel between February and July 2024, seeking information about whether MedPro would agree to participate in any attempt to settle the *Donnell* Suit. Defense counsel never responded to any of these requests. Included in the Appendix of Evidence as Exhibit 152 is a true and correct copy of an e-mail thread I was copied on wherein Mr. Wagner made multiple requests to defense counsel to see if MedPro would participate in settlement efforts.

31. On July 31, 2024 MedPro informed Lighthouse that it was withdrawing its defense of the *Donnell* Suit based on a lack of collection activity on the *Donnell* judgment. Shortly thereafter, FWC also sent a letter informing Lighthouse that it was

withdrawing as defense counsel at MedPro's request. In this letter, it informed Lighthouse that the firm was "not authorized or instructed by MedPro to attempt to set aside the default judgment." Included in the Appendix of Evidence as Exhibit 153 is a true and correct copy of the August 2, 2024 letter from FWC addressed to me.

32. Contrary to the representations in the letter, FWC had never made any report, either verbally or in writing, to Lighthouse about its analysis with respect to setting aside the default judgment, before closing its file.

33. MedPro has never indemnified Lighthouse for the *Donnell* Suit.

34. Collection activities have continued in the *Donnell* Suit. In February 2025, the plaintiff in the *Donnell* Suit filed a Writ of Execution against Lighthouse. In June 2026, the plaintiff filed an updated Memorandum of Costs related to the judgment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 19, 2026.

/s/

Laib Greenspoon