Avi Wagner (SBN #226688)
THE WAGNER FIRM
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 491-7949
Facsimile: (310) 694-3967
Email: avi@thewagnerfirm.com

*Attorneys for Plaintiff*
*Lighthouse Healthcare Center, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Lighthouse Healthcare Center, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>National Fire & Marine Insurance Company, a Nebraska Corporation; MedPro Group, Inc. and DOES 1-100,<br><br>Defendant(s). | **Case No.: 2:25-cv-01651-ODW-AYP**<br>**Hon. Otis D. Wright**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Date: November 23, 2026**<br><br>**Time: 1:30 p.m.** |

## TABLE OF CONTENTS


I. INTRODUCTION 1

II. CORRECTION OF MATERIAL FACTS 3

A. Ms. Donnell's Death and Subsequent Matters 3

B. Plaintiff Applies for the Policy 3

1. The December 2016 AmWINS Submission 3

2. The NFMI Application 4

C. Plaintiff Tenders the *Donnell* Notice Before the Policy's Issuance 5

D. Defendants Take No Action Regarding the *Donnell* Notice or *Donnell* Suit Until 2023 6

E. Lighthouse Files and Litigates This Action for 18 Months Before Defendants Reference Rescission 7

III. STANDARD OF REVIEW 9

IV. ARGUMENT 10

A. Defendants May Not Rescind the Policy After the Commencement of This Action on the Policy 10

B. Defendants Did Not Preserve Any Right to Rescind 11

1. Defendants' Vague Affirmative Defenses Referencing the Entire Policy Did Not Apprise Plaintiff of a Rescission Affirmative Defense 11

2. Defendants' Late Assertion of Rescission Prejudices Plaintiff 13

3. Equitable Estoppel Should Bar Defendants from Asserting Rescission 18

C. Defendants Have Not Established A Right to Rescind the Policy 19

1. Lighthouse Made No Material Misrepresentation in Its Applications 19

2. Defendants Waived Any Right to Rescind Based on "Misrepresentations" in Plaintiff's Application Materials By Failing to Investigate the Inconsistencies in the Documents Provided by Lighthouse 25

D. Neither of Defendants' Asserted Policy Defenses Bar Coverage 27

V. CONCLUSION 28

# TABLE OF AUTHORITIES

**Federal Cases**

*Admiral Ins. Co. v. Debber*, 442 F. Supp. 2d 958 (E.D. Cal. 2006)........................10

*AmerisourceBergen Corp. v. Dialysist W., Inc.,* 465 F.3d 946 (9th Cir. 2006) ......17

*Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 416 F. Supp. 2d 802 (N.D. Cal. 2006)..........................................................10

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474 (9th Cir. 2000) ..........................................................................9

*Camarillo v. McCarthy*, 998 F.2d 638 (9th Cir. 1993).............................................14

*Citicorp Real Est., Inc. v. Smith*, 155 F.3d 1097 (9th Cir. 1998) .......................15, 16

*Cont'l Cas. Co. v. Stanton Kay & Watson LLP*, No. C05-05333 MJJ, 2006 WL 8442666 (N.D. Cal. Dec. 11, 2006)..............................................................24

*Coregis Ins. Co. v. Camico Mut. Ins. Co.*, 959 F. Supp. 1213 (C.D. Cal. 1997)..............................................................27

*Ebert v. Cnty. Of San Bernardino*, 832 F. Supp. 3d 1040 (C.D. Cal. 2026)...........16

*Garcia v. Salvation Army*, 918 F.3d 997 (9th Cir. 2019) ........................................18

*Hadley v. Kellogg Sales Co.,* No. 16-CV-04955-LHK, 2019 WL 3804661 (N.D. Cal. Aug. 13, 2019).............................................17

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ...........13

*Kearns v. Ford Motor Co.,* 567 F.3d 1120 (9th Cir. 2009).......................................2

*Kinsale Ins. Co. v. Golden Beginnings, LLC*,

557 F. Supp. 3d 1000, (C.D. Cal. 2021) .......... 27

*Larson v. Warner Bros Ent., Inc.*, 640 F. App'x 630 (9th Cir. 2016) .......... 16

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999) .......... 14

*Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708 (9th Cir. 2001) .......... 18

*Scianna v. Arizona,* No. CV-21-01444-PHX-DJH, 2025 WL 963600 (D. Ariz. Mar. 31, 2025)*, aff'd sub nom. Scianna v. Aurora Behav. Healthcare-Tempe, LLC,* No. 25-2989, 2026 WL 1232482 (9th Cir. May 5, 2026) .......... 12

*Sims v. Peak Legal Advocates*, 2018 WL 8731538 (C.D. Cal. Nov. 16, 2018) .......... 12

*Snapp v. United Transp. Union*, 889 F.3d 1088 (9th Cir. 2018) .......... 15

*Star Ins. Co. v. Sunwest Metals, Inc.*, 691 F. App'x 358 (9th Cir. 2017) .......... 25

*Tutor v. Zwirn*, No. CV106867DSFAJWX, 2010 WL 11553171 (C.D. Cal. Dec. 22, 2010) .......... 12

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) .......... 12

**California Cases**

*DiPasqua v. California Western States Life Ins. Co.* (1951) 106 Cal. App. 2d 281 .......... 26

*Douglas v. Fidelity National Ins. Co.*, 229 Cal. App. 4th 392 (2014) .......... 9

*Duarte v. Pacific Specialty Ins. Co.*, 13 Cal. App. 5th 45 (2017) .......... 21

*DuBeck v. California Physicians' Serv.,* 234 Cal. App. 4th 1254 (2015) .......... 26

*Imperial Cas. & Indem. Co. v. Sogomonian* (1988) 198 Cal.App. 3d 169 ............10

*Rutherford v. Prudential Ins. Co. of Am.*, 234 Cal. App. 2d 719 (Cal. Ct. App. 1965)................................................24

*Superior Dispatch, Inc. v. Ins. Corp. of New York*, 181 Cal. App. 4th 175 (2010), *as modified on denial of reh'g* (Feb. 22, 2010) ......................................10, 19

*Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904 (1973) ...........................21, 22

**California Statutes**

Cal. Civ. Code § 1691 .........................................................................................10

Cal. Health & Saf. Code § 1419 ..........................................................................20

Cal. Health & Saf. Code § 1420 ..........................................................................20

Cal. Ins. Code § 650..............................................................................................10

**Federal Rules**

Federal Rule of Civil Procedure 9(b)...............................................................1, 12

Federal Rule of Civil Procedure 26 ......................................................................15

Federal Rule of Civil Procedure 30 ................................................................15, 18

**Secondary Sources**

Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2016) ......................................................................21

## I. INTRODUCTION

Plaintiff Lighthouse Healthcare Center, LLC ("Lighthouse") filed this breach of contract/bad faith lawsuit against MedPro Group, Inc. ("MedPro") and National Fire & Marine Insurance Company ("NFMI" and, with MedPro, "Defendants") after Defendants denied coverage for a default judgment stemming from claims regarding Valerie Donnell. From 2017-2019, and again in 2023-2024, Defendants failed to investigate Lighthouse's tenders. Now, despite never cross-complaining or asserting rescission as a defense, Defendants move to rescind the Policy due to alleged material misrepresentations in Lighthouse's application materials. Additionally, Defendants assert that Policy Exclusions III.D and III.X bar coverage claiming Donnel is a pre-Policy "potential claim."

Defendants are barred from seeking rescission nine years after the tender and nearly two years after Lighthouse commenced this action "on the policy." While Defendants had the facts underlying their rescission assertion by 2025, they subsequently put forward two underwriting deponents and an underwriting expert, each with no knowledge of the Policy's underwriting. They also waited until the close of fact discovery in August 2026 to first reference rescission, thereby severely prejudicing Lighthouse's ability to defend.

Defendants contend that generic references to the Policy's conditions in their Answer reserved the right to rescind. However, their answer satisfied neither notice pleading nor Fed.R.Civ.P. Rule 9(b)'s requirements that apply to their claim of

knowing misrepresentations. *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126-27 (9th Cir. 2009).

Defendants' request for rescission also fails on the merits.

Lighthouse made no material misrepresentations to Defendants. The unsigned and undated GuideOne Application questions were ambiguous, compound, or inapplicable. Furthermore, Defendants issued the policy despite missing application answers and disclosures reflecting California Department of Public Health ("CDPH") deficiencies. There was no sleight of hand; Defendants waived any claim for rescission by failing to investigate these known disclosures and discrepancies.

The same is true of the challenged response on the NFMI Application, wherein Lighthouse responded "N/A" when asked "within the past 3 years, "How many complaints were made against, and investigated by, [Lighthouse]?". As Lighthouse did not investigate any *Donnell* complaint, this answer was accurate.

None of the additional information Defendants claim should have been disclosed is material. Lighthouse submitted a report to Defendants in December 2016 that disclosed multiple CDPH deficiencies in 2015 and 2016. And on March 7, 2017, *before* Defendants issued the Policy, Lighthouse tendered a notice to them from Ms. Donnell's husband disclosing her June 2016 death and intent to sue Lighthouse. Defendants could have reviewed the Loss Runs that Lighthouse provided to see that this had not been reported to Lighthouse's prior carrier, but did not. Even their current

declarant, Mr. Hopping, knew that Lighthouse had tendered Donnell before the Policy's issuance, but failed to inquire or do anything.

Finally, the cited Policy exclusions do not apply because no pre-policy "potential claim" existed. Under the policy's strict wording, an incident must be "likely to result in a claim," and Ms. Donnell's unheralded death from cardiac arrest does not meet that threshold.

In sum, Defendants' rescission claim fails. The Court should deny their Motion in full.

## II. CORRECTION OF MATERIAL FACTS

### A. Ms. Donnell's Death and Subsequent Matters

Valerie Donnell, a 76 year-old Lighthouse resident, died of cardiac arrest on June 24, 2016, one day after being discharged from a hospital. Lighthouse received medical records requests from, and on behalf of, members of her family. CDPH looked into her death, but did not substantiate any complaint. Plaintiff's Statement of Undisputed Facts in Opposition to Defendants' Motion for Summary Judgment ("Pl. SUF"), 99.

### B. Plaintiff Applies for the Policy

#### 1. The December 2016 AmWINS Submission

In December 2016, insurance broker AmWINS, on behalf of Lighthouse, submitted documents to Defendants, including: an undated and unsigned GuideOne Senior Living Supplemental Application ("GuideOne Application"). Defendants' Statement of Undisputed Facts ("Def. SUF"), 26, 27, 29; Pl. SUF 100.

Defendants did not request this information. Pl. SUF 100. Nor did they seek clarification of who filled out the application or when. Pl. SUF 101.

Question 5 asked whether "all legal proceedings, suits, investigations, or claims against [Plaintiff] during the past 3 years been reported to" Plaintiff's prior carriers; the response was "N/A". Def. SUF 31.

Question 6 asked whether the applicant was "aware of any actual or alleged incident or circumstance that has not already been reported to its insurer, that [Lighthouse] has reason to believe could result in a future claim." "Incident" and "circumstance" are undefined terms, but the form clarifies that it refers "to slip or falls, elopements, facility-acquired pressure sores, unplanned weight loss, or medication errors or omissions". The response was "No". Def. SUF 32.

While MedPro did follow up on certain underwriting materials, Defendants never asked any questions about this application. Pl. SUF 101.

AmWINS' December 2016 submission to Defendants also included a Medicare Nursing Home Compare profile ("NHC Report"), that was retrieved on December 8, 2016. Pl. SUF 102. This report disclosed two CDPH reports since July 2015, with deficiencies issued and linked to the complete reports. Finally, AmWINS submitted Loss Runs from prior carriers through November 2016; Ms. Donnell did not appear on them. Pl. SUF 103.

#### 2. The NFMI Application

Defendants bound coverage on March 1, 2017, subject to completing subjectivities, including a MedPro Application ("NFMI Application"). Lighthouse provided a signed copy on March 6, 2017. Def. SUF 43, 44.

The application lacked answers for numerous questions, including ones about the provision of rehabilitation services, and whether Lighthouse contracted for various forms of therapy. MedPro never sought to obtain the missing answers because some questions are "more important than others". Pl. SUF 104. The NFMI Application also purportedly required the submission of additional documents, including resumes, CDPH survey reports, substantiated complaints, and Center for Medicare Services Staffing and Census forms. Lighthouse did not provide any of these; Defendants made no inquiry as to why. Pl. SUF 105.

### C. Plaintiff Tenders the *Donnell* Notice Before the Policy's Issuance

On or about March 7, 2017, Lighthouse administrator David Strother ("Strother") received a March 1, 2017 Notice of Intent to Commence Legal Action ("*Donnell* Notice") from counsel for Ms. Donnell's husband. The *Donnell* Notice alleged that Ms. Donnell's estate "suffered injury and damages as a result of diagnosis, treatment, surgery and/or care that occurred on or about, without limitation, May 1, 2016 to June 24, 2016". Pl. SUF 106.

In that email, Strother described what he surmised of the circumstances surrounding Ms. Donnell's death:

> The Resident was here for < 2 days and died without warning. The family came upon notification of death and was upset Re: the matter. To my knowledge; they were planning to pay for a private autopsy. The family requested a complete copy of the health record and filed a complaint with CDPH. However, CDPH was not able to substantiate any concern(s) R/T the care of this Resident.

Pl. SUF 107.

Lighthouse caused the *Donnell* Notice to be tendered on March 7, 2017. Pl. SUF 108. A MedPro adjuster notified MedPro's underwriting team about the *Donnell* Notice on March 16, 2017; John Hopping responded that the Policy had not been issued. Pl. SUF 109. Lighthouse received no further communications from Defendants before they issued the Policy on April 3, 2017. Pl. SUF 110.

On April 28, 2017, Medpro completed Lighthouse's on-site risk assessment, which generated a May 22, 2017 report. MedPro asserts no knowledge of the basis for any finding in that report, and its underwriting expert never read it. Pl. SUF 111. MedPro's contractor also generated a Risk Assessment Tool following the assessment, which she provided to the underwriting department; this document identifies Lighthouse CDPH citations from 2015. Pl. SUF 112. When asked why this risk assessment was conducted *after* the policy was already bound and issued, MedPro conceded its practice was to issue policies first and then ask questions after. Pl. SUF 113.

**D. Defendants Take No Action Regarding the *Donnell* Notice or *Donnell* Suit Until 2023**

Between 2017 and 2019, Lighthouse received no communications from Defendants regarding the *Donnell* Notice or its Policy application. Pl. SUF 114. On October 11, 2019, Lighthouse caused a lawsuit filed by Mr. Donnell ("*Donnell* Suit") to be tendered. Pl. SUF 115. As described in Lighthouse's Motion for Summary Judgment, Defendants did not investigate or defend at that time, nor did they seek rescission. *See* Docket Entry ("D.E") 73.

Four years later, Lighthouse tendered the default judgment entered against it in the *Donnell* Suit. Defendants eventually assigned defense counsel. Ultimately, Defendants denied coverage for the *Donnell* Suit based on purported failures to provide timely notice.

**E. Lighthouse Files and Litigates This Action for 18 Months Before Defendants Reference Rescission**

Lighthouse filed this action in February 2025. Def. SUF 73. Defendants neither counterclaimed for rescission, nor plead it as an affirmative defense. Pl. SUF 116. On December 5, 2025, Lighthouse produced documents, including the March 8, 2017 Strother e-mail quoted above as the very first document. Pl. SUF 117. The production occurred after the deadline to amend the pleadings, but the parties had mutually agreed to extend various other case deadlines. Defendants never sought a stipulation or leave of Court to claim rescission. Pl. SUF 118.

When Lighthouse sought Rule 30(b)(6) deponents on underwriting, Defendants did not produce John Hopping or another underwriter. Pl. SUF 119. MedPro's

deponent did not review any internal MedPro underwriting materials, including the Hopping claim materials. Pl. SUF 120. Neither MedPro nor NFMI's deponent spoke to Mr. Hopping or any other underwriter, and had few answers about the specifics of the Policy's underwriting. Pl. SUF 120, 121. Defendant NFMI testified that it tasked underwriting of the Policy to MedPro and did not oversee this underwriting in any respect. Pl. SUF 121. The failure to offer any particulars about underwriting or internal reliance, further indicated that rescission was not at issue and so Lighthouse did not press the matter further.

On August 11, 2026, after completing MedPro's underwriting deposition, and one day before the close of discovery, Defendants supplemented their Rule 26 disclosures to disclose that John Hopping may have discoverable information relevant to "how MedPro's underwriting analysis and decision-making would have changed had Plaintiff's policy application had been correct and fully and accurately disclosed all requested and required information during the Policy underwriting process." Def. SUF 76; Pl. SUF 122. No elaboration was offered.

Defendants also newly disclosed that they were seeking rescission of the Policy based on alleged material misrepresentations, including: "information related to the Donnell Incident; Plaintiff's representation that all prior incidents or potential claims had been reported to its prior insurance carrier; Plaintiff's failure to disclose CDPH's investigation into the facts and circumstances surrounding Valerie Donnell's death at Plaintiff's facility; and Plaintiff's affirmative representation that there had been no

investigations against Plaintiff during the three years preceding Plaintiff's submission of the Policy application." Def. SUF 76.

Yet even after this (inaccurate) disclosure Defendants' retained expert on underwriting drafted a report without speaking to anyone involved in the underwriting of the Policy, expressed that any reference to rescission in the materials he cited was tangential to this case, and explicitly stated that he expressed "no opinion" on whether Defendants would have taken any particular action if Plaintiff had affirmatively disclosed all of the circumstances that followed Ms. Donnell's death. Pl. SUF 123.

## III. STANDARD OF REVIEW

When a party seeks summary judgment on a defense for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (quotations omitted).

An insurer asserting rescission must prove that the insured made a misrepresentation in the insurance application and that the insurer would not have issued the policy absent that misrepresentation. *Duarte v. Pacific Specialty Ins. Co.*, 13 Cal. App. 5th 45, 55 (2017). The threshold inquiry is whether the application contained a false representation, meaning that the actual facts failed to correspond with the application's assertion. *Douglas v. Fidelity National Ins. Co*., 229 Cal. App. 4th 392, 407 (2014).

Defendants fail to meet these standards.

# IV. ARGUMENT

## A. Defendants May Not Rescind the Policy After the Commencement of This Action on the Policy

A party seeking to rescind must give notice "promptly upon discovering the facts which entitle him to rescind." Cal. Civ. Code § 1691. In the insurance context, an insurer may rescind "any time previous to the commencement of an action on the [policy] contract." Cal. Ins. Code § 650. Thus, "rescission must occur before an action on the policy and within a reasonable time from discovering an error in the policy." *Admiral Ins. Co. v. Debber*, 442 F. Supp. 2d 958, 970 (E.D. Cal. 2006).

Once an action on the Policy has commenced, § 650 bars an insurer from rescinding. *Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 416 F. Supp. 2d 802, 805 (N.D. Cal. 2006).

Defendants assert that they may rescind to obtain a "complete defense" to this action under *Superior Dispatch, Inc. v. Ins. Corp. of New York*, 181 Cal. App. 4th 175 (2010), *as modified on denial of reh'g* (Feb. 22, 2010). *Superior Dispatch* is inapposite. There, plaintiff did not raise Insurance Code § 650's bar, so the opinion is silent on the issue. In Defendants' view, insurers could avoid the requirement to return policy premiums by waiting to rescind policies until years after litigation commenced and then offer post-mortem testimony. The case law is otherwise. *See Imperial Cas. & Indem. Co. v. Sogomonian* (1988) 198 Cal.App. 3d 169, 184 (requiring repayment of premiums as a condition of rescission and stating that courts are "not required to believe the 'post mortem' testimony of an insurer's agents that insurance would have been

refused had the true facts been disclosed."). Defendants may not rescind nearly two years after the commencement of an action by the Policy.

### B. Defendants Did Not Preserve Any Right to Rescind

This is even more true given the absence of any counterclaim for rescission. Defendants contend that they preserved the right to rescind based on vague affirmative defenses referencing the entire Policy, and a last-minute amendment to their initial disclosures. Not so.

#### 1. Defendants' Vague Affirmative Defenses Referencing the Entire Policy Did Not Apprise Plaintiff of a Rescission Affirmative Defense

Defendants did not plead an affirmative defense for rescission nor any request to declare the Policy void. Yet, they argue that their Fourth, Eleventh, and Twelfth affirmative defenses, preserved this claim. While they now rely on Policy Condition Q, which declares the Policy void for certain material misrepresentations, none of their defenses reference the Policy being void or invoke this condition. They respectively disclaim coverage based on Plaintiff's failure to: "comply with the conditions precedent"; "satisfy the terms and conditions of the Policy or by the exclusions contained within the Policy"; and satisfy "the conditions precedent to the existence of coverage…particularly the making and reporting of a Claim against Plaintiff within the Claims Reporting Period". Def. SUF 74.

These defenses do not claim or seek rescission. Defendants now seek rescission pursuant to Policy language that: "this policy shall be void with respect to any insured

who knew of such material misrepresentation" in application materials, and assert that Lighthouse intended for them to rely on these materials (including any misrepresentations therein). SUF 36, 53, 61; Def. MSJ, 16:3-16. This request sounds in fraud, and, so is subject to Rule 9(b)'s heightened pleading standards. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). This requires Defendants to allege "the who, what, when, where, and how" of the misconduct. *Id*. at 1106. General references to the whole of the Policy do not satisfy this standard, and so do not sufficiently allege rescission. *See Tutor v. Zwirn*, No. CV106867DSFAJWX, 2010 WL 11553171, at *5 (C.D. Cal. Dec. 22, 2010) (disregarding allegations supporting a fraud-based rescission theory that did not satisfy Rule 9(b)).

Even Rule 8's "fair notice" standards "require a defendant to describe an affirmative defense in 'general terms'" including "the nature and grounds for the affirmative defense." *Sims v. Peak Legal Advocates*, 2018 WL 8731538 (C.D. Cal. Nov. 16, 2018). Collectively, the defenses cited by Defendants cover all Policy provisions but do not put Plaintiff on notice of any violation of any individual clause except in respect to claimed untimely reporting, which is not at issue in this motion. This does not constitute "fair notice". *See Scianna v. Arizona,* No. CV-21-01444-PHX-DJH, 2025 WL 963600, at *6 (D. Ariz. Mar. 31, 2025)*, aff'd sub nom. Scianna v. Aurora Behav. Healthcare-Tempe, LLC,* No. 25-2989, 2026 WL 1232482 (9th Cir. May 5, 2026) (finding that defendant failed to preserve a statute of limitations

affirmative defense where he asserted "the affirmative defenses set forth in Rule 8(c)" but failed to identify "which it wished to assert or why").

Nor have Defendants complied with the requirement imposed by the Ninth Circuit and this Court in its Scheduling Order to show "good cause" to amend the Scheduling Order to allow them to belatedly plead rescission. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Thus, Defendants did not preserve a rescission defense.

**2. Defendants' Late Assertion of Rescission Prejudices Plaintiff**

Nor do the equities permit this late attempt to assert rescission.

***a. Defendants Had an Opportunity to Discover the Facts Supporting its Rescission Request in 2017 and Actual Notice of the Same in December 2025***

Defendants were aware of Ms. Donnell's June 24, 2016 pre-Policy death by March 7, 2017, before issuing the Policy and completing subjectivities. Pl. SUF 108. As detailed in Plaintiff's Motion for Summary Judgment, Lighthouse tendered the *Donnell* Notice on March 7, but Defendants did not contact Plaintiff or otherwise investigate. *See, generally,* D.E. 73. Defendants s

hared information regarding the notice with the underwriting team, including John Hopping, who knew that Lighthouse had tendered the *Donnell* Notice just days after coverage was bound, *prior* to Policy issuance. Pl. SUF 109. Yet, like the claims personnel, he did not inquire about this notice. Pl. SUF 110.

In the interim, they never sought to rescind the Policy.

It is untrue that Defendants first learned of the basis for this affirmative defense in this action on August 10, 2026. On December 5, 2025, the very first document that Lighthouse produced to Defendants was the March 8, 2017 e-mail from David Strother quoted above, which references all of the "facts" on which their Motion is premised. Pl. SUF 117. The parties cooperatively extended several deadlines after this production, but Defendants never requested Plaintiff or the Court to grant leave to assert rescission. Pl. SUF 118. Defendants' contention that they could not assert the defense until after David Strother restated the contents of the March 8 e-mail during deposition is unavailing.

***b. Defendants' Concealment of Their Rescission Defense Has Prejudiced Plaintiff by Depriving it of the Opportunity to Conduct Relevant Discovery***

None of the authorities cited by Defendants authorize seeking rescission for the first time in a motion for summary judgment. Affirmative defenses may only be first asserted at this late stage where doing so will not prejudice the opposing party. In *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) (Defendants' MSJ, 14:17-19), the plaintiff did not assert prejudice from an unpleaded affirmative defense. The contrary is true here. Defendants' late assertion of rescission would prejudice Plaintiff because Defendants' gamesmanship has deprived it of the opportunity to conduct meaningful discovery on this issue.

In the context of a late affirmative defense, prejudice relates largely to discovery. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir.

1999) ("[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice.").

Defendants concealed their intent to pursue rescission for more than 18 months. After omitting this affirmative defense, Defendants continued to hide the ball on a rescission defense through fact and expert discovery. Lighthouse took a Rule 30(b)(6) deposition on underwriting of the Policy in the ordinary course of discovery. MedPro produced David Pulley, who was not involved in underwriting the Policy, did not review any internal underwriting communications and did not speak to any underwriters, including the declarant on whom Defendants' motion rests, John Hopping. Pl. SUF 119, 120. Pulley professed a lack of knowledge as to many of the specifics of the Policy's underwriting. Pl. SUF 119, 120. Lighthouse understood underwriting to be a peripheral matter to the case, and so accepted these binding statements as to Defendants' lack of underwriting knowledge without seeking discovery relief. Defendants cannot hide the ball during Rule 30(b)(6) depositions only to turn around and seek summary judgment based on such concealment. *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018) (finding that an entity may not defeat summary judgment based on an affidavit that "contains information that the Rule 30(b)(6) deponent professed not to know".)

Only on August 11, 2026, after the Pulley deposition and one day before the close of fact discovery, did Defendants supplement their Rule 26 disclosures. Def. SUF 76, Pl. SUF 122, 123. This delay should be dispositive. *Citicorp Real Est., Inc. v.*

*Smith*, 155 F.3d 1097, 1104 (9th Cir. 1998) (affirming trial court's denial of leave to amend to seek rescission because requiring plaintiff to litigate for nearly two years in ignorance of the request was prejudicial).

This late disclosure did not cure Defendants' prior failures. *Ebert v. Cnty. of San Bernardino*, 832 F. Supp. 3d 1040, 1047-48 (C.D. Cal. 2026) is inapposite, as it did not address the prejudice related to unpleaded affirmative defenses. Further, the *Ebert* court found that a defendant's failure to identify a witness was not prejudicial because the supplemental disclosure permitted the plaintiff to depose the witness prior to the discovery cutoff. *Id*. Here, discovery closed within 24 hours of Defendants' late disclosures.

Moreover, Defendants' retained expert on underwriting, Robert M. Anderson, later muddied the waters by drafting a report without speaking to anyone involved in the underwriting of the Policy, expressing that any reference to rescission in the materials he cited was tangential to this case, and explicitly stating that he expressed "no opinion" on whether Defendants would have taken any particular action if Plaintiff had affirmatively disclosed all of the circumstances that followed Mrs. Donnell's death. Pl. SUF 123.

The Court should thus deny Defendants' untimely and prejudicial request for rescission. *Larson v. Warner Bros Ent., Inc.*, 640 F. App'x 630, 633 (9th Cir. 2016) (finding waiver of rescission affirmative defense where substantial delay would require the plaintiff to belatedly adopt a new litigation and discovery strategy);

*AmerisourceBergen Corp. v. Dialysist W., Inc.,* 465 F.3d 946, 953 (9th Cir. 2006) (affirming denial of leave to amend where defendants knew of the underlying facts for 15 months, and their late assertion would require plaintiff to incur additional litigation costs due to the delay); *Hadley v. Kellogg Sales Co.,* No. 16-CV-04955-LHK, 2019 WL 3804661, at *13 (N.D. Cal. Aug. 13, 2019) (collecting cases).

#### c. *Defendants Have Failed to Show that Depriving Lighthouse of Discovery on Rescission is Not Prejudicial*

Defendants argue that Lighthouse cannot be prejudiced by this untimely request for rescission. Both of their asserted theories fail.

Defendants first contend that there can be no prejudice because rescission would have been dispositive at the outset of the case. But their cited authority, *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001), involved undisputed allegations of purely legal issues. Here, by contrast, Defendants assert that their defense was developed through discovery and concede that they must present testimony by the Policy underwriter to establish materiality. Further, there are factual disputes about the sufficiency of the underwriting, the date of alleged misrepresentations, and materiality where Defendants had information that conflicted purported misrepresentations. Def. SUF 77-96. Defendants' rescission claim is fully dependent on factual issues; they could not have prevailed on it as a matter of law at the outset of the case.

Next, they argue that, because the "facts" supporting rescission come from Lighthouse's records, it should have known of this defense, citing *Garcia v. Salvation Army*, 918 F.3d 997 (9th Cir. 2019). But *Garcia* involved the Salvation Army asserting a religious organization exemption ("ROE") against a former member of its congregation. *Id*. at 1009. The court found that the congregant could not be prejudiced by late notice of an ROE by its own church. Here, by contrast, Defendants' rescission request turns on their internal underwriting, i.e. what they consider material in underwriting a policy; these are facts known exclusively to Defendants, not Lighthouse. *Garcia* thus does not bar a finding of prejudice.

As described *supra,* Defendants had an opportunity to investigate the circumstances related to Ms. Donnell's death beginning in 2017, but chose not to. They likewise knew that the family had requested medical records and possibly made a complaint to CDPH since at least December 2025, yet concealed their intent to rescind on this basis. If Plaintiff knew Defendants' intentions earlier, it would have pursued the testimony of John Hopping, further 30(b)(6) designees, contention interrogatories, and further expert testimony on rescission. Plf. SUF 122. As Defendants' expert disavowed a rescission theory, Plaintiff could not even develop relevant rebuttal testimony. Defendants should not be allowed to pursue rescission after depriving Lighthouse's ability to develop a case on this point.

**3. Equitable Estoppel Should Bar Defendants from Asserting Rescission**

For many of the reasons discussed in the previous section, the Court should equitably estop the Defendants from claiming rescission.

A defendant may be equitably estopped from asserting an affirmative defense if the defendant's act or omission caused the plaintiff to refrain from taking action to their detriment and the plaintiff's reliance on the defendant's conduct was reasonable. *Superior Dispatch, supra* 181 Cal. App. 4th at (2010); *see also* D.E. 73. "The plaintiff's reliance on a nondisclosure was reasonable if the plaintiff's failure to discover the concealed fact was reasonable in light of the plaintiff's knowledge and experience." *Id.* at 187.

Here, Defendants received notice of Ms. Donnell's June 24, 2016 death and claim in 2017. Pl. SUF, 114, 115. They could have discovered the facts underlying their request for rescission at any time since then, but chose not to. Between 2017 and 2023, they reserved no rights with respect to the claim or the Policy. Nor did they ask Lighthouse whether the *Donnell* Notice had been tendered to a previous carrier. And, as described *supra*, they actively concealed their intention to request rescission until the close of discovery despite receiving Strother's March 8, 2017 e-mail in December 2025. In sum, either under a prejudice showing or an equitable estoppel finding, the Court should bar Defendants from this late attempt to rescind the Policy.

### C. Defendants Have Not Established A Right to Rescind the Policy

#### 1. Lighthouse Made No Material Misrepresentation in Its Applications

Defendants' request for rescission also fails on the merits.

***a. The GuideOne Application Contains No Material Misrepresentations***

The GuideOne Application Question 5 asks, as of the unknown application date, whether "all legal proceedings, suits, investigations, or claims against any proposed Insured during the past 3 years been reported to the prior carrier(s)", with a response of "N/A". Def. SUF 31. Mr. Hopping contends that the death of Mrs. Donnell, her family's subsequent record requests and intention to seek an autopsy, the coroner's records requests, and an unsubstantiated CDPH inquiry should have been reported here. Not so. First, the form is undated, so Defendants cannot establish that any of these had already occurred or that Lighthouse was aware of them when the form was completed. Further, the application was not requested, and is unsigned so it is not clear who completed that section, why they wrote N/A or what they intended by it. Pl. SUF 100, 101.

Finally, it is a compound question containing at least one ambiguous term. It is unclear what falls within the scope of "investigations"; medical records requests or complaints lodged with regulatory authorities by the Donnell family or CDPH's inquiry do not constitute an "investigation". And the statutes governing CDPH complaints refer to "inquiries", as well as "inspections" and "investigations" that occur following a complaint. Cal. Health & Saf. Code §§ 1419, 1420. There is no record documentation of CDPH's visit following Ms. Donnell's from which Defendants can establish which of these it was. Thus, Defendants can neither show that any visit occurred by the date

of this application, nor whether the visit would be considered an "investigation". This undated and ambiguous response to an ambiguous question cannot support recission. *Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 916 (1973) ("if the applicant for insurance had no present knowledge of the facts sought, or failed to appreciate the significance of information related to him, his incorrect or incomplete responses would not constitute grounds for rescission").

Next, Question 6 asks whether Lighthouse was "aware of any actual or alleged incident or circumstance that has not already been reported to its insurer, that he or she has reason to believe could result in a future claim". The form clarifies that GuideOne is referring "to slip or falls, elopements, facility-acquired pressure sores, unplanned weight loss, or medication errors or omissions". Def. SUF 32. The response given was "No". These examples relate to specific medical occurrences; there is no record of any actual or alleged medical harm or failure by Lighthouse by the December 2016 date of submission that would give it notice of a possible future claim.[1] The actions taken by Mrs. Donnell's family following her death are not clearly responsive to this question. It would be reasonable for the applicant to construe this question in the context of the clarification provided, and truthfully answer "No". *Duarte, supra* 13 Cal. App. 5th at 54; *see also* Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2016) ¶¶ 5:217 to 5:218, p. 5-64 ("[t]he insurer cannot rely on answers given where the

[1] As with Question 5, Defendants cannot establish what Lighthouse was aware of on the date the form was completed because it bears no date and Defendants conducted no inquiry as to when it was filled out.

applicant-insured was *misled* by vague or ambiguous questions."). Defendants' own underwriting deponent acknowledged that the question is susceptible to multiple interpretations.

Defendants assert that the responses to Questions 5 and 6 on the GuideOne Application were material to their underwriting, but the facts demonstrate otherwise.

First, Defendants neither drafted this application, nor requested that Lighthouse provide it. Pl. SUF 120, 121. Thus, materiality cannot be presumed. *Cf. Thompson, supra* 9 Cal. 3d at 916 (observing that questions for which "insurer has demanded answers" are usually material as a matter of law). Nor did Defendants behave as though these were material. Particularly with respect to the ambiguous "N/A" response to compound Question 5, if this were material Defendants would have followed up to determine what "N/A" meant and how the applicant had construed the term "investigation".

Further, Defendants made no inquiry into when the undated application was filled out. Defendants contend that it is their practice to rely on unsigned applications, but make no such representation about undated ones. *See* Hopping Decl., ¶ 9. If these responses were material to underwriting the Policy, Defendants would have sought to determine the date on which the unidentified applicant asserted their accuracy to ensure that there were no gaps in the relevant time period. They did not.

***b. The NFMI Application Contains No Material Misrepresentations***

Defendants also argue that Lighthouse made a material misrepresentation in response to NFMI Application question XVI.F, which asks: within the past 3 years, "How many complaints were made against, and investigated by, [Lighthouse]?" and provides a single blank for the answer, suggesting that the request seeks only one answer, comprising only those complaints that were both made against Lighthouse and that Lighthouse investigated. Lighthouse responded "N/A"; Lighthouse did not investigate complaints against it, including any related to Valerie Donnell. Pl. SUF 124. As Lighthouse did not provide a numerical answer to the prior question, it likewise provided no response as to how many complaints had been substantiated.

MedPro now asserts that these questions were material to its underwriting, but it did not seek clarification of this vague and possibly incomplete response. Further, MedPro's underwriting deponent contradicted this, agreeing that MedPro does not ask for copies of unsubstantiated complaints because it is not interested in them. Pl. SUF 127.

Irrespective, this ambiguous response does not erase Lighthouse's earlier disclosure of investigations conducted in 2015 and 2016. *See* Section II.B.1, *supra*.

Defendants' failure to seek a clear response to XVI.F is consistent with its other conduct indicating that the NFMI Application was not material to underwriting. Lighthouse's NFMI Application contained numerous questions for which Lighthouse had provided no answer, including questions about the provision of services like rehabilitation, and whether it contracted for various forms of therapy. MedPro never

followed up these omissions because "some questions are more important than others", demonstrating that not everything in the application was material to underwriting. Pl. SUF 104.

Nor was it material for Defendants to receive resumes of Lighthouse leadership, CDPH survey reports, and substantiated complaints. The NFMI Application stated that these were "required", but Lighthouse never provided them, and Defendants never asked about them. Pl. SUF 105. This lack of inquiry contradicts Hopping's general assertion of materiality. *Cont'l Cas. Co. v. Stanton Kay & Watson LLP*, No. C05-05333 MJJ, 2006 WL 8442666, at *7 (N.D. Cal. Dec. 11, 2006) (denying summary judgment on materiality where underwriter's declaration did not disclose the specific analysis that would have been applied to undisclosed, purportedly material facts); *Rutherford v. Prudential Ins. Co. of Am.*, 234 Cal. App. 2d 719, 734-35 (Ct. App. 1965) (affirming a jury verdict for the insured where, prior to the policy issuance, the underwriter had information putting him on notice that certain application statements were false or unreliable).

Defendants also describe the Risk Assessment as material to the Policy's terms, but they issued the Policy on April 3, 2017, weeks before the on-site risk assessment was completed, and a month and a half before they received the report. Moreover, they admit that they have no knowledge of the basis for any of the findings made during the risk assessment. Pl. SUF 111. It is thus unclear how an unsubstantiated report could be material to their underwriting. But, if it were, the Risk Assessment Tool generated

for MedPro following the on-site visit clearly noted that Lighthouse had been cited in 2015. Pl. SUF 112. Thus, Defendants could not have relied on any application statement that there had been no investigations or citations in the preceding years.

**2. Defendants Waived Any Right to Rescind Based on "Misrepresentations" in Plaintiff's Application Materials By Failing to Investigate the Inconsistencies in the Documents Provided by Lighthouse**

An insurance company "waive[s] its right to rescind the policy if it ignored information that 'distinctly implied' misrepresentation of true facts" by the insured, thus prompting its duty to further inquire regarding the pertinent facts. *Star Ins. Co. v. Sunwest Metals, Inc.*, 691 F. App'x 358, 360 (9th Cir. 2017).

Defendants contend that Lighthouse made material misrepresentations in the GuideOne and NFMI Applications about Mrs. Donnell's death, records requests, and regulatory inquiries prior to the Policy period. But the other materials Lighthouse provided, including the *Donnell* Tender, put Defendants on notice of these "misrepresentations" before the Policy was issued.

While Defendants assert that Lighthouse's responses on the GuideOne and NFMI Applications concealed a DPH investigation, the facts are otherwise. With the Guide One application, AmWINS also submitted the NHC Report, which disclosed two complaint inspections during 2016, with deficiencies issued. Pl. SUF 102. The subsequent Risk Assessment Tool also disclosed deficiencies in 2015. Defendants could see from the Loss Runs also provided that none of these were reported to the

prior carrier. Pl. SUF 103. So far, from concealing DPH inquiries and/or investigations, Lighthouse disclosed them *and* the fact that they were not previously reported. Thus, Defendants had a duty of inquiry to determine the true facts. *DiPasqua v. California Western States Life Ins. Co*. (1951) 106 Cal. App. 2d 281, 284-285 (finding that insurer had waived right to rescind based on misrepresentation that applicant had not been hospitalized in past 5 years, where insurer was otherwise aware of the hospitalizations).

Defendants received further notice of the purported misrepresentations when they received the *Donnell* Notice just days after Defendants bound coverage, and several weeks before the Policy was issued. Pl. SUF 106. By March 7, 2017, Defendants knew that there was a potential claim arising from alleged misconduct between May 1 and June 24, 2016. There was no reference to this death on the Loss Runs Lighthouse provided Defendants. Pl. SUF 108.

While Lighthouse had tendered the notice to the claims department, a claims handler informed the Underwriting Department and Mr. Hopping that Lighthouse had tendered under the Policy prior to its issuance. Mr. Hopping assisted the claims department in setting up the claim file, but, like the claims department, made no further inquiry. Pl. SUF 109. This complete failure to investigate these inconsistencies until well into this litigation constitutes a waiver of any right to rescind. *DuBeck v. California Physicians' Serv.,* 234 Cal. App. 4th 1254, 1268 (2015) (finding that insurer waived rescission by "ignoring information that would have resolved the truthfulness

of the representations in appellant's application at an early stage" defendant caused the insured to act in reliance on the policy rather than seek alternative coverage).

**D. Neither of Defendants' Asserted Policy Defenses Bar Coverage**

Finally, Defendants seek summary judgment based on Policy Exclusions III.D, which bars "[a]ny claim or potential claim which has or which should have been reported to, or has or should have been accepted by any insurer, including through any self-insured or captive program, prior to the policy period; and III.X, barring "[a]ny potential claim that was first known about or discovered, or should reasonably have been known about or discovered by, an authorized insured, or was reported to, or should have been reported to, a prior insurer, self-insurance program or captive insurer prior to the policy period." The argument fails as to both exclusions for the same reason: there was no "potential claim" prior to the Policy period.

The Policy defines a "potential claim" as "an incident arising from, or in connection with, an event an insured knows or reasonably should know is likely to result in a claim." Def. SUF 65. Defendants' authorities on this standard are inapposite because "likely to result in a claim" is a higher standard than used in those policies. *Kinsale Ins. Co. v. Golden Beginnings, LLC*, 557 F. Supp. 3d 1000, 1007 (C.D. Cal. 2021) (barring coverage for pre-policy "'health care incident[s]' that could reasonably give rise to a 'claim' under this Policy); *Coregis Ins. Co. v. Camico Mut. Ins. Co.*, 959 F. Supp. 1213, 1221 (C.D. Cal. 1997) (barring coverage for claims where the insured

"knew or could have reasonably foreseen that such act, error or omission might be expected to" result in a claim).

Nor was there any pre-binding "incident…likely to result in a claim". Defendants contend that the "incident" is "[a] resident's death followed by a visit by an upset family, records and autopsy demands, agency complaints, and a regulatory investigation". This series of mischaracterized events is not an "incident", commonly defined as "*an* occurrence of an action or situation that is a separate unit of experience", not an aggregation of occurrences. "Incident", Merriam-Webster, https://www.merriam-webster.com/dictionary/incident (last accessed Oct. 27, 2026). Defendants do not argue that any of these individually constitute an incident; further, the inquiry related to the complaint was fully unsubstantiated. *See also* Def. SUF 32 (GuideOne Application describing "incidents" as those related to medical events).

The circumstances here are also fully distinguishable from *Kinsale*, where the resident fell at the facility but received no diagnosis and treatment for her injury for several days, and died shortly thereafter. *Id.* at 1009. Here, there is only Ms. Donnell's unattended heart failure with no allegations of a separate injury or delayed care. Without more, this does not suggest that a claim is "likely".

## V. CONCLUSION

For the foregoing reasons, Lighthouse requests that the Court deny Defendants' Motion for Summary Judgment in full.

Dated: November 2, 2026

THE WAGNER FIRM

*/s/ Avi Wagner*
Avi Wagner
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: 310.491.7949
avi@thewagnerfirm.com

*Attorneys for Plaintiff Lighthouse Healthcare Center, LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1

The undersigned, counsel of record for Plaintiff Lighthouse Healthcare Center, LLC, certifies that this brief contains 6,709 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 2, 2026

*/s/ Avi Wagner*

Avi Wagner

## CERTIFICATE OF COMPLIANCE PURSUANT TO § VII.A OF THE COURT'S STANDING ORDER

The undersigned certifies that this submission _X does not use _____ uses generative artificial intelligence. If generative artificial intelligence was used, following drafting, I reviewed, revised, and supplemented all portions of the brief, including those that were informed by the use of Artificial Intelligence or based on prior templates. I independently verified the factual and legal accuracy of the content and confirmed that all arguments and authorities were appropriate to the issues presented.

Dated: November 2, 2026

*/s/ Avi Wagner*

Avi Wagner

**PROOF OF SERVICE**

I, the undersigned say: I am not a party to the above case, and am over eighteen years old. On November 2, 2026 I served true and correct copies of the foregoing documents,

- **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**
- **PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;**
- **DECLARATION OF AVI WAGNER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**
- **DECLARATION OF LAIB GREENSPOON IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**
- **APPENDIX OF EVIDENCE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND**
- **MEMORANDUM OF EVIDENTIARY OBJECTIONS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 2, 2026, at Los Angeles, California.

*/s/ Charissa Morningstar*

Charissa Morningstar