Avi Wagner (SBN #226688)
THE WAGNER FIRM
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 491-7949
Facsimile: (310) 694-3967
Email: avi@thewagnerfirm.com
*Attorneys for Plaintiff*
*Lighthouse Healthcare Center, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Lighthouse Healthcare Center, LLC, a California Limited Liability Company,

Plaintiff,

vs.

National Fire & Marine Insurance Company, a Nebraska Corporation; MedPro Group, Inc. and DOES 1-100,

Defendant(s).

Case No.: 2:25-cv-01651-ODW-AYP

Honorable Otis D. Wright

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Date: November 23, 2026
Time: 1:30 p.m.

| **Defendants' Undisputed Material Fact and Evidence (Where Dispute is Partial, Disputed Portion in Bold** | **Plaintiff's Response and Supporting Evidence** |
|---|---|
| 1. Plaintiff Lighthouse Healthcare Center, LLC ("Plaintiff') operates a skilled nursing facility (the "Facility") in Los Angeles County, California.<br><br>*Evidence:* Complaint, Dkt. 1 at 1, ¶ 3. | Undisputed. |
| 2. **On or about June 24, 2016, a patient – Valerie Donnell – died while resident at the Facility** (the *"Donnell Incident"*)<br><br>*Evidence:* Complaint, DKT. 1 at 5, ¶ 16 Neumann Decl. Ex. 1 (Pl. Resp. to Defs. RFA No. 1 & Ex. 2-B (Pl. 30(b)(6) Depo Tr. Exhibit 39). | Disputed and irrelevant. None of the evidence cited states that Ms. Donnell died at the facility, or while a resident there. The Complaint states that she "allegedly suffered an injury" at the Facility. The RFA response states only that Plaintiff became aware that Ms. Donnell died on or about June 24, 2016. The e-mail from David Strother states that she was at the facility for less than two days, and died out of nowhere. It does not state the location of her death or whether she was a resident at the |

| | |
|---|---|
| | time. The alleged materiality of the location of her death is unclear.<br>David Strother's deposition testimony was that he didn't recall "if she died inside or outside."<br>*Evidence:* Declaration of Avi Wagner ("Wagner Decl.), Exhibit A, Excerpt of Transcript of Deposition of David Strother ("Strother Tr."), 41:16-19. |
| 3. Upon being notified of Donnell's death, Donnell family came to the Facility **and was upset**.<br><br>*Evidence:* Neumann Decl., Ex. 2-B (Pl. 30(b)(6) Depo Tr. Exhibit 39) & Ex. 3 (Strother Depo Tr. At 41:20-22, 42:13-25) | 3. Disputed. The testimony cited states that David Strother heard that this occurred. |
| 4. David Strother was, at all relevant times, the Facility's administrator.<br><br>*Evidence:* Neumann Decl., (Strother Depo Tr. At 5:21-25. 6:7-8. 11:10-12) | 4. Undisputed |
| 5. Strother testified that he recalls Donnell's family coming to the Facility. | 5. Undisputed |

| | |
|---|---|
| *Evidence:* Neumann Decl., (Strother Depo Tr. at 41:20-22) | |
| 6. Strother further testified that **he would have been informed** that Donnell's family visited the Facility shortly after their visit.<br><br>*Evidence:* Neumann Decl., Ex. 3 (Strother Depo Tr. at 42:23-43:3) | 6. Disputed. The cited testimony states that he would "expect to be informed" after an upset family comes into the facility. |
| 7. Strother relayed **this information** to Laib Greenspoon, Plaintiffs CEO, in a March 8, 2017 email, stating: "[Donnell's] family came upon notification of death and was upset Re: the matter. To my knowledge they were planning to pay for a private autopsy."<br><br>*Evidence:* Neumann Decl., Ex. 2-B (Pl. 30(b)(6) Depo Tr. Exhibit 39). | Undisputed that the document so states. Disputed that the document establishes the underlying facts quoted. Strother testified that he had heard that the family was upset and has no recollection of the basis for his statement that the family was planning to pay for an autopsy. Plaintiff objects to the use of Exhibit 39 as hearsay being used for the truth of the matter asserted.<br><br>Evidence, Wagner Decl., Ex. A, Strother Depo Tr., 41:20-22, 42:13-25; |

| | |
|---|---|
| | 43:16-44:9. |
| 8. Documents from Plaintiff's files reflect that, **on June 24, 2016**, a family member submitted an "Authorization for Use or Disclosure of Medical Information" to Plaintiff, requesting all of Plaintiffs "[m]edical records and information pertaining to medical history, mental, or physical condition, services rendered, or treatment of" Donnell.<br><br>*Evidence:* Neumann Decl., Ex. 3-A (Strother Depo. Tr. Exhibit 200 at LH_00010504) | 8. Disputed. The document reflects that the requesting party signed the document on June 24, 2016, but it bears no indicia of when it was transmitted to or received by Lighthouse, nor have Defendants offered other evidence on this point. |
| 9. Documents from Plaintiffs files reflect that, **on August 3, 2016**, Donnell's husband, Dean Donnell, submitted to Plaintiff a second, substantially similar medical-records request.<br><br>*Evidence:* Neumann Decl., Ex. 3-A (Strother Tr. Exhibit 200 at LH_00010507). | 9. Disputed. The document reflects that the requesting party signed the document on August 3, 2016 but it bears no indicia of when it was transmitted to or received by Lighthouse, nor have Defendants offered other evidence on this point. |

| | |
|---|---|
| 10. Documents from Plaintiff's files reflect that, on July 29, 2016, Dean Donnell submitted a "Consent to Access and Disclose Confidential Information" ("Consent to Access") to the Office of the State Long-Term Care Ombudsman for the California Department of Aging. ("CDA").<br><br>*Evidence:* Neumann Decl., Ex. 3-A (Strother Tr. Exhibit 200 at LH_00010510). | 10. Disputed. The document reflects that the requesting party signed the document on July 29, 2016 but it bears no indicia of when or if it was transmitted to or received by the Office of the State Long-Term Care Ombudsman for the California Department of Aging, nor have Defendants offered other evidence on this point. |
| 11. The Consent to Access authorized WISE & Healthy Aging-a long-term care ombudsman-to "advocate for [Mr.<br>Donnell] in the resolution of [his] complaint(s)" and to access records, take and disclose photographs, and disclose information "to assist in the resolution of [his] complaints."<br><br>*Evidence:* Neumann Decl., Ex. 3-A | 11. Undisputed that the documents so state. Disputed whether WISE & Healthy Aging in fact received this authorization. |

| | |
|---|---|
| (Strother Tr. Exhibit 200 at LH_00010509-510). | |
| 12. The Consent to Access identified Valerie Donnell as the resident and Plaintiffs Facility as the place of residence.<br><br>*Evidence:* Neumann Decl., Ex. 3-A (Strother Tr. Exhibit 200 at LH_00010510). | 12. Undisputed that the document so states. |
| 13. The Consent to Access also listed an **ODIN Case Number corresponding to a complaint filed with the Office of the State Long-Term Care Ombudsman**.<br><br>*Evidence:* Neumann Decl., Ex. 3-A (Strother Tr. Exhibit 200 at LH_00010510). | 13. Disputed. The Consent to Access includes an "ODIN #", but the document does not indicate that the number corresponds with a complaint, nor does it evidence that any complaint has been filed. |
| 14. Per Plaintiff's records, on August 11, 2016 WISE and HEALTHY AGING delivered a request for Donnell's medical records to Plaintiff, | 14. Undisputed that the document so states, disputed that the document was delivered on that date; there is no |

| | |
|---|---|
| attaching the Consent to Access which listed the ODIN Case number.<br><br>*Evidence:* Neumann Decl., Ex. 3-A (Strother Tr. Exhibit 200 at LH_00010509-510). | evidence to support this contention. |
| 15. Documents produced from Plaintiff's files further reflect (redacted) that the Los Angeles County Department of Coroner, by a records request dated June 25, 2016 directed to Plaintiff, stated that **it was conducting an investigation into the death of [Donnell]. . .** as required by California Government Code § 27491."<br><br>*Evidence:* Neumann Decl., Ex. 3-A (Strother Tr. Exhibit 200 at LH_00010508). | 15. Undisputed that the document so states, but there is no evidence for the truth of this assertion. Further, disputed to the extent that Defendants contend that the Los Angeles County Department of Coroner was actually conducting an "investigation". The statute cited, California Government Code § 27491 describes the coroner's efforts under this section as an "inquiry", and states that the "inquiry" it authorizes "does not include those investigative functions usually performed by other law enforcement agencies." *Id*. at (e). |

| | |
|---|---|
| 16. **Strother knew that Donnell's family requested a complete copy of the health record and had requested an autopsy**.<br><br>*Evidence:* Neumann Decl., Ex. 2-B (Pl. 30(b)(6) Depo Tr. Exhibit 39) & Ex. 3 (Strother Depo at 47:22-48:23). | 16. Disputed and vague. The cited testimony does not reference any request for Ms. Donnell's health record or an autopsy. When asked about the cited e-mail at deposition, Mr. Strother stated that he did not know the basis of his statement that the family had requested an autopsy.<br>The assertion is also unclear as to time (i.e. is this referring to period in 2016, 2017 or some other time period).<br>Plaintiff objects to the use of Exhibit 39 as hearsay being used for the truth of the matter asserted.<br><br>Evidence: Wagner Decl., Ex. A, Strother Depo., 43:25-44:1; 46:1-47:17. |
| 17. **Strother further knew that Donnell's family had filed a complaint with the California** | 17. Disputed. Strother testified the following as to whether the family had |

| | |
|---|---|
| **Department of Public Health ("CDPH").** *Evidence:* Neumann Decl., Ex. 2-B (Pl. 30(b)(6) Depo Tr. Exhibit 39) & Ex. 3 (Strother Depo Tr. at 47:22-48:23). | filed a CDPH complaint: "I thought that to be the case, but I had no way to verify that." Plaintiff objects to the use of Exhibit 39 as hearsay being used for the truth of the matter asserted. Evidence: Wagner Decl., Ex. A, Strother Depo Tr. at 47:13-17). |
| 18. Strother also knew that CDPH performed an investigation but "was not able to substantiate any concern(s)" with respect to the care of Donnell. *Evidence:* Neumann Decl., Ex. 2-B (Pl. 30(b)(6) Depo Tr. Exhibit 39) & Ex. 3 (Strother Depo Tr. at 47:22-48:23). | 18. Disputed. The testimony cited asks whether it was Mr. Strother's "understanding" that CDPH had performed an investigation. It does not include testimony regarding his personal knowledge. Plaintiff objects to the use of Exhibit 39 as hearsay being used for the truth of the matter asserted. |
| 19. Strother relayed this information to Greenspoon in his March 8, 2017 | 19. Undisputed that the document |

| | |
|---|---|
| email, stating: "[Donnell's] family requested a complete copy of the health record **and filed a complaint with CDPH.** However, CDPH was not able to substantiate any concern(s) R/T the care of this Resident."<br><br>*Evidence:* Neumann Decl., Ex. 2-B (Pl. 30(b)(6) Depo Tr. Exhibit 39) & Ex. 3 (Strother Depo Tr. at 44:10-14). | contains the language quoted.<br>Disputed to the extent that Defendants are claiming these comments reflect Mr. Strother's personal knowledge. Strother testified the following as to whether the family had filed a CDPH complaint: "I thought that to be the case, but I had no way to verify that." Plaintiff objects to the use of Exhibit 39 as hearsay being used for the truth of the matter asserted.<br>Evidence: Wagner Decl., Ex. A, Strother Depo Tr. at 47:13-17. |
| 20. Strother testified that the only way he would have known that CDPH was unable to substantiate any concern is if CDPH had communicated that result to Lighthouse.<br><br>*Evidence:* Neumann Decl., Ex. 3 (Strother Depo Tr. at 48:1-23). | 20. Undisputed. |
| 21. At his deposition, Strother confirmed that he would not tell Mr. | 21. Disputed. Strother's testimony was |

| | |
|---|---|
| Greenspoon something untrue.<br><br>*Evidence:* Neumann Decl., Ex. 3 (Strother Depo Tr. at 47:7-11). | that he does not "intentionally" tell Greenspoon things that are untrue.<br><br>Evidence: Wagner Decl., Ex, A, Strother Tr. 47:7-11. |
| 22. Strother testified that he authored the March 8, 2017 email and **confirmed that CDPH "had done an investigation" and would have informed him of the result.**<br><br>*Evidence:* Neumann Decl., Ex. 2-B (Pl. 30(b)(6) Depo Tr. Exhibit 39) & Ex. 3 (Strother Depo Tr. at 46:1-48:23) | 22. Disputed. The testimony cited asks whether it was Mr. Strother's "understanding" that CDPH had performed an investigation. It does not include testimony regarding his personal knowledge.<br>Plaintiff objects to the use of Exhibit 39 as hearsay being used for the truth of the matter asserted. |
| 23. At his deposition, Strother further testified that when a family makes an inquiry and requests records following a resident's death, that is something he believed should be reported or alerted to Shomer Insurance Services ("Shomer"), Plaintiff's insurance broker. | 23. Disputed. Strother later responded that he had not ever given Shomer notice other than when unusual circumstances surrounded a death or he had received a legal notice. |

| | |
|---|---|
| *Evidence:* Neumann Decl., Ex. 3 (Strother Depo Tr. at 30:11-31:3) | Evidence: Wagner Decl., Ex. A, Strother Tr., 67:20-68:14. |
| 24. With respect to the testimony described in paragraph 23 above, in his errata sheet, Strother changed his "yes" response to the question of whether he believes that situation is something that should have been reported to Shomer to "[t]his never occurred."<br><br>*Evidence:* Neumann Decl., Ex. 3 (Strother Depo Tr. Signature Page with Errata) | 24. Disputed in part.<br>The errata reflects his earlier deposition testimony where Strother responded that he had not ever given Shomer notice other than when unusual circumstances surrounded a death or he had received a legal notice.<br><br>Evidence: Wagner Decl., Ex. A, Strother Tr., 67:20-68:14. |
| 25. Plaintiff's 30(b)(6) representative had previously testified that Lighthouse had no knowledge of any CDPH complaint and that Strother's statement regarding CDPH was "more conjecture than knowledge."<br><br>*Evidence:* Neumann Decl., Ex. 2-B (Pl. 30(b)(6) Depo Tr. at 100:2-21). | Undisputed. |

| | |
|---|---|
| 26. On December 9, 2016, Plaintiff submitted to MedPro (the third-party administrator for California senior care policies issued by NFMI) **an application** for an NFMI senior care professional liability insurance policy.<br><br>*Evidence:* Neumann Decl., Ex. 4 (Riss Depo Tr. at 28:4-10) & Ex. 4-A (Riss Depo Tr. Exhibit 122) | 26. Disputed to the characterization of the documents as an "application". Defendants have otherwise described this set of documents as a "submission". Defendants admit that they did not request an application.<br><br>Evidence: Declaration of John Hopping ("Hopping Decl."), ¶¶ 7, 8; Wagner Decl., Ex. D, Excerpt of Deposition of John Pulley ("Pulley Tr."), 24:23-25; 32:9-10; Ex, Ex. E, Excerpt of Deposition of Adam Karnik ("Karnik Tr."), 15:17, 16:20-25, 21:9-10. |
| 27. The purpose of the submission described in paragraph 26 above was to obtain an insurance quote from MedPro.<br><br>*Evidence:* Neumann Decl., Ex. 4 (Riss Depo Tr. at 27:25-28:3) & Ex. 5 (Zolonz Depo Tr. at 65:6-9) | 27. Undisputed. |

| | |
|---|---|
| 28. Shomer submitted the application described in paragraph 26 above to Plaintiff's wholesale broker, AmWINS Insurance Brokerage of California, LLC ("AmWINS"), which in turn submitted it to MedPro.<br><br>*Evidence:* Neumann Decl., Ex. 4 (Riss Depo Tr. at 23:23-24:22) | 28. Disputed. The evidence cited speaks to the "general process" AmWINS uses in working with Shomer on behalf of prospective insureds to solicit quotes and policies from carriers. It does not purport to describe the conduct of Shomer, AmWINS, Lighthouse, or MedPro with respect to the Policy at issue here. |
| 29. The **application** consisted of (i) an ACORD Commercial General Liability Section, (ii) an ACORD Commercial Insurance Application Applicant Information Section, (iii) a GuideOne Insurance Senior Living Community Supplemental Application (the "GuideOne Application"), (iv) loss runs from Plaintiffs prior carriers, and (v) a Medicare Nursing Home Profile.<br><br>*Evidence:* Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122 at MP-NFM_LH 007816-7860) | 29. Disputed to the characterization of the documents as an "application". Defendants have otherwise described this set of documents as a "submission".<br>Evidence: Hopping Decl., ¶¶ 7, 8. |
| 30. The ACORD materials described in | 30. Undisputed. |

| | |
|---|---|
| paragraph 29 above include **general information** about Plaintiff, its Facility, and the requested terms.<br><br>*Evidence:* Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122 at MP-NFM-LH 007816-7819) | |
| 31. On the GuideOne Application described in paragraph 29 above, **Plaintiff** answered, "N/A" to Section VI, Question 5: "Have all legal proceedings, suits, investigations, or claims against any proposed Insured during the past 3 years been reported to the prior carriers(s)?"<br><br>*Evidence:* Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122 at MP-NFM-LH 007823) | 31. Undisputed that the question is answered in this manner. Disputed to the extent that the document is unsigned and undated, so it is unclear from the face of the document who provided this answer, and Defendants have testified that they did no research into the provenance of this document.<br><br>Evidence: Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122); Wagner Decl., Ex. D, Pulley Tr. 32-33. |
| 32. On the GuideOne Application, **Plaintiff** answered "No" to Section VI, Question 6, which asked, "Is the undersigned, or any person who is | 32. Undisputed that the question is answered in this manner. Disputed to the extent that document is unsigned |

| | |
|---|---|
| given responsibility by the applicant to give or receive notice of a claim or notice of a possible future claim, aware of any actual or alleged incident or circumstance that has not already been reported to its insurer, that he or she has reason to believe could result in a future claim? (This includes, but is not limited to, incidents or circumstances related to slips or falls, elopements, facility-acquired pressure sores, unplanned weight loss, or medication errors or omissions.)"<br><br>*Evidence:* Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122 at MP-NFM-LH 007823) | and undated, so it is unclear from the face of the document who provided this answer, and Defendants have testified that they did no research into the provenance of this document.<br><br>Evidence: Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122); Wagner Decl., Ex. D, Pulley Tr. 32-33. |
| 33. Plaintiff did not report Donnell's death, or any facts surrounding that death, to GuideOne Insurance, it's professional liability insurer for the March 1, 2016 through March 1, 2017 policy period.<br>*Evidence:* Neumann Decl., Ex. 2-B (Pl. 30(b)(6) Depo Tr. at 94:10-13), Ex. 3 (Strother Depo Tr. at 30:11-31:3 | 33. Undisputed, though the evidence relied upon does not support this fact. |

| | |
|---|---|
| & Signature Page with Errata), & Ex. 4-A (Riss Depo Tr. Exhibit 122 at MP-NFM-LH 007827-28). | |
| 34. The GuideOne loss run Plaintiff submitted (valued as of November 9, 2006, for the policy term March 1, 2016 to March 2017) makes no reference to the Donnell Incident.<br><br>*Evidence:* Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122 at MP-NFM-LH 007827-28). | 34. Undisputed. |
| 35. In submitting the application, Plaintiff represented to MedPro that all information and representations included in the application were truthful and accurate.<br>*Evidence:* Neumann Decl., Ex. 4 (Riss Depo Tr. at 30:22-25, 31:16-32:4, 39:7-17) & Ex. 5 (Zolonz Depo Tr. at 22:14-21, 22:23-24:2) | 35. Disputed. Riss's cited testimony states that, in his personal capacity, he understood Lighthouse was representing that the materials were correct when they were submitted to AmWINS. Thus, it reflects Mr. Riss's personal understanding of what Lighthouse was doing. Mr. Zolonz's testimony is that, by submitting applications to AmWINS, Shomer was representing to AmWINS that the |

| | |
|---|---|
| | material therein was truthful. There is no testimony by Lighthouse about what it understood, nor any testimony as to what was being represented to MedPro. The fact is also vague as to the meaning of the term "application", as multiple "applications" were submitted at different times. |
| 36. Plaintiff and its brokers expected MedPro to rely on the application in underwriting a policy for Plaintiff.<br><br>*Evidence*: Neumann Decl., Ex. 4 (Riss Depo Tr. at 30:22-25, 31:16-32:4, 39:7-17) & Ex. 5 (Zolonz Depo Tr. at 22:14-21, 22:23-24:2). | 36. Disputed. The evidence cited contains no testimony by Lighthouse. The cited testimony by Mr. Zolonz of Shomer Insurance was in respect to a hypothetical by defense counsel. Mr. Zolonz elsewhere testified that he did not have knowledge of whether MedPro would rely on Lighthouse's application in underwriting.<br>The fact is also vague as to the meaning of the term "application", as multiple "applications" were submitted at |

| | |
|---|---|
| | different times.<br><br>Evidence: Wagner Decl., Ex. B, Excerpt of Transcript of Deposition of Aaron Zolonz ("Zolonz Tr.") 65:11-67:20. |
| 37. On December 9, 2016, MedPro confirmed receipt of Plaintiffs submission.<br><br>*Evidence*: Neumann Decl., Ex. 4-B (Riss Depo Tr. Exhibit 123). | 37. Undisputed. |
| 38. On February 17, 2017, MedPro delivered a quote for Plaintiffs senior care Policy to AmWINS.<br><br>*Evidence:* Neumann Decl., Ex. 4-C (Riss Depo Tr. Exhibit 125 at Amwins_0000904-905, 908-911). | 38. Undisputed. |
| 39. The quote stated, ***"Subject To The Following Conditions:*** This quotation is based upon a reliance on the information submitted prior to the date of this request and is contingent | 39. Undisputed that the document states this. The meaning of the undefined terms "information" and "completed" is unclear. |

| | |
|---|---|
| upon the underwriting of a completed National Fire & Marine application."<br><br>*Evidence:* Neumann Decl., Ex. 4-C (Riss Depo Tr. Exhibit 125 at Amwins_0000910) (emphasis in original). | |
| 40. The quote listed several "additional subjectivities" to coverage, including (1) a "Written Order to Bind," (2) a "Recently signed and dated Med Pro Supplemental Application," (3) "Risk Management Customer Contact Information Page for Onsite Visit," and (4) "Currently Valued Financials-PRIOR to Binding."<br><br>*Evidence:* Neumann Decl., Ex. 4-C (Riss Depo Tr. Exhibit 125 at Amwins_0000910). | 40. Undisputed. |
| 41. On February 17, 2017, AmWINS delivered Plaintiffs recent financial statements to MedPro, as requested "prior to binding." | 41. Undisputed. |

| | |
|---|---|
| *Evidence:* Neumann Decl., Ex. 4-C (Riss Depo Tr. Exhibit 125 at Amwins_0000910) & Ex. 4- D (Riss Depo Tr. Exhibit 128). | |
| 42. On February 28, 2017, pursuant to direction from Shomer, AmWINS submitted a written order to bind coverage to MedPro.<br><br>*Evidence*: Neumann Decl., Ex. 4-E (Riss Depo Tr. Exhibit 129) & Ex. 4-F (Riss Depo Tr. Exhibit 130). | 42. Undisputed. |
| 43. On March l, 2017, MedPro delivered a Senior Care Binder (the "Binder") to AmWINS.<br><br>*Evidence:* Neumann Decl., Ex. 4-G (Riss Depo Tr. Exhibit 131). | 43. Undisputed. |
| 44. The Binder listed the terms of coverage, consistent with the quote, and again noted that "additional subjectivities" must be satisfied before a Policy would issue: (1) a "Recently signed and dated MedPro | 44. Undisputed that the document so states. |

| | |
|---|---|
| Supplemental Application," and (2) a "Risk Management Customer Contact Information Page for Onsite Visit."<br><br>*Evidence*: Neumann Decl., Ex. 4-G (Riss Depo Tr. Plaintiffs Exhibit 131 at Amwins_0000963). | |
| 45. The Binder was a **placeholder** pending issuance of the actual Policy.<br><br>*Evidence*: Hopping Decl. ¶27. | 45. Disputed in part. The fact is vague with respect to the term "placeholder". Legally, a binder "temporarily obligates the insurer to provide that insurance coverage pending issuance of the insurance policy."<br><br>Evidence: Cal. Ins. Code § 382.5(a). |
| 46. On March 6, 2017, Plaintiff provided MedPro with an executed NFMI Senior Exhibit Care Application (the "NFMI Application). | 46. Undisputed. |

| | |
|---|---|
| *Evidence*: Neumann Decl., Ex. 4-H (Riss Depo Tr. Exhibit 132) & Ex. 4-1 (Riss Depo Tr. Exhibit 134). | |
| 47. Section IV.F of the NFMI Application asked, "How many complaints were made against, and investigated by, the Applicant in the past three (3) years?"<br><br>*Evidence:* Neumann Decl., Ex. 4-1 (Riss Depo Tr. Exhibit 134 at MP-NFM-LH 007944). | 47. Undisputed. |
| 48. Plaintiff answered "n/a" to that question.<br><br>*Evidence*: Neumann Decl., Ex. 4-1 (Riss Depo Tr. Exhibit 134 at MP-NFM-LH 007944). | 48. Undisputed. |
| 49. Plaintiff did not respond to the second half of Section IV.F, which asked, "Of those complaints, how many complaints against the Applicant were substantiated?"<br><br>*Evidence*: Neumann Decl., Ex. 4-1 (Riss Depo Tr. Exhibit 134 at MP- | 49. Undisputed. |

| | |
|---|---|
| NFM-LH 007944). | |
| 50. Strother signed the NFMI Application on March 2, 2017, representing that (1) he had authority to execute the application on Plaintiffs behalf, and (2) he had "reviewed the responses contained in [the] application and represent them to be complete and accurate to the best of [his] knowledge."<br><br>*Evidence:* Neumann Decl., Ex. 4-1 (Riss Depo Tr. Exhibit 134 at MP-NFM-LH 007952). | 50. Undisputed. |
| 51. Strother acknowledged and agreed that, "any and all responses to questions, statements and explanations made in this application, or in any and all documents, supplemental pages or other attachments…are true and that [he], nor any applicant, have knowingly suppressed or misstated any material facts and [he], and any applicant, agree that this application, and any Attachments, shall be the basis of the contract with the Company." | 51. Undisputed. |

| | |
|---|---|
| *Evidence*: Neumann Decl., Ex. 4-1 (Riss Depo Tr. Exhibit 134 at MP-NFM-LH 007952). | |
| 52. Strother "agree[d] that if[he] fail[ed] to comply with these terms [Plaintiff] will have no coverage for any claim under any policy of insurance for which [they] are applying."<br><br>*Evidence*: Neumann Decl., Ex. 4-I (Riss Depo Tr. Exhibit 134 at MP-NFM-LH 007952). | 52. Undisputed that the document so states. |
| 53. Plaintiff (and its brokers) submitted the NFMI Application with the expectation that Defendants would rely on it in issuing a policy.<br><br>*Evidence:* Neumann Decl., Ex. 4 (Riss Depo Tr. at 19:14-21) & Ex. 5 (Zolonz Depo Tr. at 22:14-21). | 53. Disputed. The evidence cited does not include any testimony by Plaintiff or otherwise indicate Plaintiff's expectations in submitting the NFMI application. The cited testimony by Mr. Zolonz of Shomer Insurance was in respect to a hypothetical by defense counsel. Mr. Zolonz elsewhere testified that he did not have knowledge of whether MedPro would rely on Lighthouse's application in underwriting. |

| | |
|---|---|
| | Evidence: Wagne Decl., Ex. B, Zolonz Tr. 65:11-67:20. |
| 54. Plaintiff satisfied each of the original and additional subjectivities.<br><br>*Evidence:* Hopping Decl. ¶¶ 29, 39. | 54. Undisputed. |
| 55. On April 3, 2017, NFMI issued Senior Care Liability Policy No. NSC100276 (the "Policy") to Plaintiff.<br><br>*Evidence:* Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139); Complaint, Dkt. 1 at 3 ¶ 10. | 55. Undisputed. |
| 56. MedPro would not have issued the Policy if the subjectivities had not been satisfied.<br><br>*Evidence:* Hopping Decl. ¶ 28. | 56. Disputed. The NFMI Application, a subjectivity, that MedPro received from Lighthouse contained multiple omissions, and lacked several documents that the application claimed were "required", yet MedPro issued the Policy. |

| | |
|---|---|
| | Evidence: Neumann Decl., Ex. 4-H (Riss Depo Tr. Exhibit 132) at Amwins_0001036, Amwins_0001041, Amwins_0001044; Wagner Decl., Ex. D, Pulley Tr., 48:15-49:14; 52:16-53:21; 58:7-59:12; 59:21-60:9; 62:14-63:17. |
| 57. The Policy is a claims-made and reported senior care liability policy issued by NFMI and administered by MedPro.<br><br>*Evidence:* Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139 at MP-NFM-LH 008056). | 57. Undisputed. |
| 58. The Policy has a policy period from March 1, 2017 to March 1, 2018, with a retroactive date of March 1, 2007.<br><br>*Evidence:* Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139 at MP-NFM-LH 008056). | 58. Undisputed. |
| 59. Policy Condition Q(l) provides: "By acceptance of this policy, each | 59. Undisputed that the document so |

| | |
|---|---|
| **insured** agrees, represents, and warrants that the statements and particulars made in all applications, including any statements and particulars made in any and all documents, supplemental pages or other attachments for the purposes of any application, are true and correct. It is further understood and agreed that any application and attachments are incorporated into, and shall form a part of, this policy. Therefore, this policy and any endorsements hereto, and all applications and attachments, embody all agreements between the **company** and any of its authorized representatives, and all **insureds** relating to this insurance."<br><br>*Evidence:* Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139 at MP-NFM-LH 008082) (emphasis in original). | states. Disputed in part because the fact is ambiguous with respect to the meaning of "applications". The Policy elsewhere implies that the term "applications" assumes a signed application and never expressly references the term in respect to any unsigned application.<br><br>*Evidence:* Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139 at MP-NFM-LH 008082-83) |
| 60. Policy Condition Q(2) provides: "In the event any application was executed or endorsed by an **insured's** insurance | 60. Undisputed. |

| | |
|---|---|
| producer, the insured acknowledges that the insurance producer has acted under the insured's express authority and that the **insured** has thoroughly reviewed the information contained on any application. The representations made by an insured in the applications and attachments are the basis for the coverage provided, as well as the **company's** calculation of the applicable premium. Therefore, it is understood and agreed that, to the extent permitted by law, the company reserves the right to rescind this policy, or deny any coverage provided for a **claim** or **potential claim,** based upon any material misrepresentation made by any **insured.** As used in this condition, "material misrepresentation" means concealment, misrepresentation, omission or fraud which, if known by the **company,** would have led to refusal by the **company** to make this contract or provide coverage, or to make this contract or provide coverage on different terms or conditions." | |

| | |
|---|---|
| *Evidence:* Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139 at MP-NFM-LH 008082-83) (emphasis in original). | |
| 61. Policy Condition Q(3) provides: "In the event of any material misrepresentation in connection with any of the particulars or statements in the application, this policy shall be void with respect to any **insured** who knew of such material misrepresentation or to whom such knowledge is imputed." *Evidence:* Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139 at MP-NFM-LH 008083) (emphasis in original). | 61. Undisputed. |
| 62. Policy Condition Q(4) provides that "[t]he **company** reserves all rights based upon any material misrepresentation by the **insured."** *Evidence:* Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139 at MP-NFM-LH 008083) (emphasis in original). | 62. Undisputed. |

| | |
|---|---|
| | |
| 63. Policy Exclusion III.D bars, with respect to any coverage part shown on the Declarations as "Claims-Made and Reported," "any claim or potential claim which has or which should have been reported to, or has or should have been accepted by any insurer, including through any self-insured or captive program, prior to the policy period."<br><br>*Evidence:* Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139 at MP-NFM-LH 008072). | 63. Undisputed. |
| 64. Policy Exclusion III.X bars, with respect to any coverage part shown on the Declarations as "Claims-Made and Reported," "any potential claim that was first known about or discovered, or should reasonably have been known about or discovered by, an authorized insured, or was reported to, or should have been reported to, a prior insurer, self-insurance program or captive insurer prior to the policy period." | 64. Undisputed. |

| | |
|---|---|
| *Evidence:* Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139 at MP-NFM-LH 008075). | |
| 65. The Policy defines "claim" as "an express, written demand upon an insured for money or services as compensation for damages, including a suit," and "potential claim" as "an incident arising from, or in connection with, an **event** an insured knows or reasonably should know is likely to result in a claim."<br><br>*Evidence:* Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139 at MP-NFM-LH 008063, 8068-69) (emphasis in original). | 65. Undisputed. |
| 66. The Policy defines "event" as "an accident" and "health care event" as "any event in the rendering of, or failure to render, **professional services** that results in injury." | 66. Undisputed. |

| | |
|---|---|
| *Evidence*: Neumann Decl., Ex. 4-J (Riss Depo Tr. Exhibit 139 at MP-NFM-LH 008064-65) (emphasis in original). | |
| 67. **On or around March 1, 2017**, Plaintiff received a Notice of Intent to Commence Action Against Health Care Provider ("Notice of Intent").<br><br>*Evidence:* Complaint, Dkt. 1 at 5 ¶ 17; Neumann Decl., Ex. 2 (Pl. 30(b)(6) Depo Tr. at 96:7-20), Ex. 2-A (Pl. 30(b)(6) Depo Tr. Exhibit 3), & Ex. 2-B (Pl. 30(b)(6) Depo Tr. Exhibit 39). | 67. Disputed. None of the evidence cited supports a March 1, 2017 receipt of the Notice of Intent. The Complaint states that Lighthouse received the Notice of Intent in March 2017. Exhibit 2 identifies the March 8, 2017 e-mail from Strother to Greenspoon, which does not state the date of receipt. Exhibit 2-A, the Notice of Intent, has a proof of service indicating that it was served by mail only on March 1, 2017. Ex. 2-A at Page ID# 962. This does not demonstrate receipt on the same day; it more plausibly reflects receipt several days thereafter. |

| | |
|---|---|
| 68. The Notice of Intent notified Plaintiff that Dean Donnell (Donnell's husband}--as an individual and as the personal representative of the Estate of Valerie Donnell-"intend[ed] to commence a legal action against [it]."<br><br>*Evidence:* Neumann Decl., Ex. 2-A (Pl. 30(b)(6) Depo Tr. Exhibit 3 at MP-NFM-LH 008431). | 68. Undisputed. |
| 69. The Notice of Intent alleged Plaintiff was "negligent, reckless, and/or engaged in intentional malfeasance, or other wrongful conduct, in the diagnosis, care and/or treatment of Valerie Donnell."<br><br>*Evidence*: Neumann Decl., Ex. 2-A (Pl. 30(b)(6) Depo Tr. Exhibit 3 at MP-NFM-LH 008431-32). | 69. Undisputed. |
| 70. The Notice of Intent did not contain **a monetary demand**.<br><br>*Evidence*: Neumann Decl., Ex. 2-A (Pl. 30(b)(6) Depo Tr. Exhibit 3 at MP-NFM-LH 008431-32). | 70. Disputed to the extent that this fact implies that the Notice of Intent did not include an intent to seek damages. It stated that Mr. Donnell intends "to seek general, special, statutory and punitive |

| | |
|---|---|
| | damages, attorneys' fees and other costs.") <br><br> Evidence: Neumann Decl., Ex. 2-A (Pl. 30(b)(6) Depo Tr. Exhibit 3 at Page ID #960. |
| 71. On June 5, 2017, Dean Donnell filed a Complaint in the Los Angeles County Superior Court for (1) professional negligence, (2) negligence, (3) wrongful death, and (4) dependent abuse, against Plaintiff and other defendants, arising out of the *Donnell* Incident (the *"Donnell* Suit"). <br><br> *Evidence:* Neumann Decl., Ex. 2-C (Pl. 30(b)(6) Depo Tr. Exhibit 78). | 71. Undisputed. |
| 72. On January 17, 2023, the Superior Court entered a default judgment against Plaintiff. <br><br> *Evidence*: Neumann Decl., Ex. 2-D (Pl. 30(b)(6) Depo Tr. Exhibit 86). | 72. Undisputed. |
| 73. On February 26, 2025, Plaintiff | 73. Undisputed. |

| | |
|---|---|
| filed its Complaint in this Court for (1) breach of contract, and (2) bad faith against Defendants, alleging that Defendants "fail[ed] and refus[ed] to defend and indemnify [Plaintiff] against a professional liability lawsuit [the *Donnell* Suit] falling within the scope of an NFMI-issued and MedPro administered senior care liability policy."<br><br>*Evidence: See generally* Complaint, Dkt. 1; id. at 2, ¶¶ 1, 7, 9**,** ¶¶ 38-39, 45. | |
| 74. Defendants pleaded, in their Fourth, Eleventh, and Twelfth Affirmative Defenses, that Plaintiffs' claims fail because Plaintiff did not comply with the Policy's terms, conditions, and conditions precedent.<br><br>*Evidence:* Answer, Dkt. 14 at 8-9. | 74. Undisputed. |

| | |
|---|---|
| 75. In their Answer, Defendants expressly reserved "the right to assert additional responses and affirmative defenses based on facts revealed during discovery."<br><br>*Evidence*: Answer, Dkt. 14 at 7-8. | 75. Undisputed. |
| 76. On August 11, 2026, Defendants served Plaintiff with a supplemental Rule 26(a) disclosure statement, expressly disclosing that they "seek rescission of [the] Policy ... based on Plaintiffs failure to disclose, and affirmative misrepresentations concerning, material facts in Plaintiffs Policy application," including Plaintiffs nondisclosure of **"CDPH'**s investigation," and identifying the witnesses supporting that defense.<br><br>Neumann Deel., Ex. 6 (Defs.' First Suppl. Rule Rule 26(a) Discl. at 4, 8-9). | 76. Undisputed. |
| 77. John Hopping, **the underwriter in MedPro's senior care division assigned to underwrite the Policy, reviewed and relied on Plaintiffs full** | 77. Disputed. Mr. Hopping declares that he started working for MedPro in February 2024, nearly 7 years after the |

| | |
|---|---|
| **submission, including Plaintiffs answers to the Liability Information questions in the GuideOne Application**, in determining whether to quote the policy requested and in determining the amount of premium to charge.<br><br>*Evidence:* Hopping Decl., ¶¶ 5, 18. | Policy's underwriting. The fact is also vague as to the scope of "Plaintiff's full submission"; this could refer to only the December 2016 submission, or also include the NFMI Application and other post-quote subjectivities, which Hopping also could have relied on in determining the premium.<br>The fact does not describe how Mr. Hopping determined the date on which Lighthouse made these representations on this unsigned and undated document. MedPro has testified that it did not seek clarification of these issues.<br>The fact is vague as to the specific role that the GuideOne Application played in his underwriting decisions or factored into generating a quote. The fact does not describe how Mr. Hopping determined what Lighthouse meant by |

| | |
|---|---|
| | responding "N/A" to question Question 5, nor how it construed the application's questions. The fact does not describe how MedPro construed ambiguous terms in this application that was drafted by another carrier.<br>The fact is unclear as to how Mr. Hopping considered Lighthouse's disclosure of multiple CDPH inspections and deficiencies in 2015 and 2016, as well as the lack of reported incidents on the GuideOne Loss Run, against the apparent contradiction with the responses to Questions 5 and 6.<br>Plaintiff objects to this statement as lacking foundation.<br>Evidence: Hopping Decl., ¶ 2; Ex. 4-A (Riss Depo Tr. Exhibit 122) at MP-NFM-LH 007820-26 (Unsigned, Undated GuideOne Application); NFM- |

| | |
|---|---|
| | LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Wagner Decl., Ex. D, Pulley Tr., 32:23-33:2; 33:19-23, 42:24-43:6. |
| 78. MedPro relied on these materials as part of its typical underwriting process. *Evidence:* Hopping Decl., ¶¶ 9-10. | 78. Disputed. The fact is vague as to the meaning of "these materials". Plaintiff objects to this statement as lacking foundation. |
| 79. Mr. Hopping declares that in the senior care line of business, it is common practice for brokers to submit applications to MedPro on ACORD forms and on other insurance companies' senior care application forms, and that it is common for | 79. Disputed. The fact does not state that it is typical for these applications to also be undated. Ex. 4-A (Riss Depo Tr. Exhibit 122) at MP-NFM-LH 007820-26 (Unsigned, Undated GuideOne Application) |

| | |
|---|---|
| such applications not to be signed.<br><br>*Evidence*: Hopping Decl., ¶ 9. | |
| 80. In reliance on Plaintiff's submission and representations, including Plaintiff's answers to the Liability Information questions in the GuideOne Application, Mr. Hopping decided to prepare a quote for the coverage Plaintiff requested, and he based his premium calculation on that information.<br><br>*Evidence*: Hopping Decl., ¶ 19. | 80. Disputed.<br>Disputed. Mr. Hopping declares that he started working for MedPro in February 2024, nearly 7 years after the Policy's underwriting. The fact is also vague as to the scope of "Plaintiff's full submission"; this could refer to only the December 2016 submission, or also include the NFMI Application and other post-quote subjectivities, which Hopping also could have relied on in determining the premium.<br>The fact does not describe how Mr. Hopping determined the date on which Lighthouse made these representations on this unsigned and undated document. MedPro has testified that it did not seek |

| | |
|---|---|
| | clarification of these issues.<br>The fact is vague as to the specific role that the GuideOne Application played in his underwriting decisions or factored into generating a quote. The fact does not describe how Mr. Hopping determined what Lighthouse meant by responding "N/A" to question Question 5, nor how it construed the application's questions. The fact does not describe how MedPro construed ambiguous terms in this application that was drafted by another carrier.<br>The fact is unclear as to how and when Mr. Hopping purportedly considered Lighthouse's disclosure of multiple CDPH inspections and deficiencies in 2015 and 2016, as well as the lack of reported incidents on the GuideOne Loss Run, against the apparent |

| | |
|---|---|
| | contradiction with the responses to Questions 5 and 6.<br><br>Plaintiff objects to this statement as lacking foundation.<br><br>Evidence: Hopping Decl., ¶ 2; Ex. 4-A (Riss Depo Tr. Exhibit 122) at MP-NFM-LH 007820-26 (Unsigned, Undated GuideOne Application); NFM-LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Wagner Decl., Ex. D, Pulley Tr., 32:23-33:2; 33:19-23, 42:24-43:6. |
| 81. Mr. Hopping then reviewed Plaintiff's completed NFMI Application to decide whether to move forward with issuing the Policy. | 81. Disputed. The fact is unclear as to the meaning of the term "completed". The NFMI Application submitted by Lighthouse contained numerous blank responses for which MedPro requested |

| | |
|---|---|
| *Evidence:* Hopping Decl. ¶ 37. | no supplementation. It likewise lacked multiple "required" documents that MedPro did not require Lighthouse to produce before or after Policy issuance. Mr. Hopping's declaration does not describe how he determined which questions and documents were necessary for Policy issuance, and which were not. Nor does it describe how he construed the blank responses on the NFMI Application. To the extent that Mr. Hopping is stating that he relied on the entire NFMI Application, this conflicts with testimony by MedPro that it is not concerned with everything on the application.<br>Mr. Hopping does not describe how he construed Lighthouse's "N/A" response to Question VI.F, nor what role that response played in his underwriting. |

| | |
|---|---|
| | The fact does not describe whether Mr. Hopping reviewed the NFMI Application against the prior submission, including its disclosures of recent deficiencies.<br>Plaintiff objects to this statement as lacking foundation.<br><br>Evidence: Neumann Decl., Ex. 4-I (Riss Depo Tr. Exhibit 134 at MP-NFM-LH 007946-47; 7950); Wagner Decl., Ex. D, Pulley Tr., 48:15-49:14; 52:16-53:21; 58:7-59:12; 59:21-60:9; 62:14-63:17; Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122) at NFM-LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report). |
| 82. In reliance on Plaintiff's | 82. Disputed. The fact is vague as to |

| | |
|---|---|
| representations in the NFMI Application and GuideOne Application, and all subjectivities being satisfied, Mr. Hopping authorized the Policy to be issued on the same terms as originally quoted.<br><br>*Evidence:* Hopping Decl. ¶ 40. | whether Mr. Hopping relied on documents submitted outside of the GuideOne Application and NFMI Application, such as the NHC Report that disclosed recent CDPH deficiencies and the Loss Run that does not reference Ms. Donnell.<br><br>The fact does not describe how Mr. Hopping determined the date on which Lighthouse made these representations in the unsigned and undated GuideOne Application. MedPro has testified that it did not seek clarification of these issues.<br><br>The fact is vague as to the specific role that the GuideOne Application played in his underwriting decisions or factored into generating a quote or determining Policy terms or premiums. The fact does not describe how Mr. Hopping |

| | |
|---|---|
| | determined what Lighthouse meant by responding “N/A” to question Question 5, nor how it construed the application’s questions. The fact does not describe how MedPro construed ambiguous terms in this application that was drafted by another carrier.<br>The fact is unclear as to how Mr. Hopping considered Lighthouse’s disclosure of multiple CDPH inspections and deficiencies in 2015 and 2016, as well as the lack of reported incidents on the GuideOne Loss Run, against the apparent contradiction with the responses to Questions 5 and 6.<br>The fact is unclear on how Mr. Hopping relied on the blank responses in Lighthouse’s NFMI Application. MedPro has testified that it made no inquiry as to these questions. The |

| | |
|---|---|
| | NFMI Application likewise lacked multiple "required" documents that MedPro did not require Lighthouse to produce before or after Policy issuance. Mr. Hopping's declaration does not describe how he determined which questions and documents were necessary for Policy issuance, and which were not. To the extent that Mr. Hopping is stating that he relied on the entire NFMI Application, this conflicts with testimony by MedPro that it is not concerned with everything on the application.<br>Mr. Hopping does not describe how he construed Lighthouse's "N/A" response to Question VI.F, nor what role that response playing in his underwriting.<br>Plaintiff objects to this statement as lacking foundation. |

| | |
|---|---|
| | Evidence: Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122) at MP-NFM-LH 007820-26 (Unsigned, Undated GuideOne Application); NFM-LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Pulley Tr., 32:23-33:2; 33:19-23, 42:24-43:6; Neumann Decl., Ex. 4-I (Riss Depo Tr. Exhibit 134 at MP-NFM-LH 007946-47; 7950); Wagner Decl., Ex. D, Pulley Tr., 48:15-49:14; 52:16-53:21; 58:7-59:12; 59:21-60:9; 62:14-63:17. |
| 83. Plaintiff did not disclose to MedPro during the Policy underwriting process that: a. A patient at Plaintiff's facility, Valerie | 83. Disputed. Lighthouse submitted Mr. Donnell's March 1, 2017 Notice of Intent to Sue, which alleged Ms. Donnell's June 24, 2016 death, to |

| | |
|---|---|
| Donnell, died on June 24, 2016;<br>b. Mrs. Donnell's mother and husband submitted requests for Mrs. Donnell's records to Plaintiff in June and August 2016;<br>c. Mrs. Donnell's family intended to request a private autopsy;<br>d. In July 2016, Mr. Donnell engaged an ombudsman to assist Mrs. Donnell's family in pursuing a complaint filed with the California Department of Aging regarding Plaintiffs care of Mrs. Donnell;<br>e. On August 11, 2016, the ombudsman submitted a request for Mrs. Donnell's medical records to Plaintiff;<br>f. Mrs. Donnell's family | MedPro prior to Policy issuance. Mr. Hopping was informed that Lighthouse had tendered in relation to Ms. Donnell prior to Policy issuance.<br>Hopping's statements as to c., f. and g. rely on facts that have not been established.<br>Disputed that Lighthouse did not disclose the issuance of deficiencies issued during 2016.<br>Plaintiff objects to this statement as lacking foundation.<br><br>Evidence: Riss Ex. 136 (E-Mail to MedPro tendering *Donnell* Notice); MP-NFM-LH 009089 (March 16, 2017 E-Mail from Hopping responding to *Donnell* inquiry with a copy of the binder); NFM-LH 007837-47 (December 8, 2016 Medicare.Gov |

| | |
|---|---|
| filed a complaint with the California Department of Public Health ("CDPH") regarding Plaintiffs care of Mrs. Donnell; and<br>g. The CDPH performed an investigation of Plaintiff's care of Mrs. Donnell.<br>*Evidence:* Hopping Decl., ¶ 44. | Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Wagner Decl., Ex, A, Strother Depo Tr. At 41:20-22, 42:13-25; 43:16-44:9; 47:13-17. |
| 84. MedPro only learned of those facts during the course of this litigation.<br><br>*Evidence:* Hopping Decl. ¶ 45. | 84. Disputed. The fact is unclear as to when, if, or how, in litigation MedPro purportedly learned of "those facts". The fact is vague with respect to the term "those facts". To the extent that fact 84 is referencing the items in fact 83, disputed on the same bases, which are incorporated by reference here, along with all supporting evidence cited in response to fact 83. |

| | |
|---|---|
| | Plaintiff objects to this statement as lacking foundation. |
| 85. Mr. Hopping considers the information stated above in Paragraph 83 to be the type of information he would have expected to be disclosed in response to Section VI, Questions 5 and 6 of the GuideOne Application, and Section IV.F of the NFMI Application.<br><br>*Evidence:* Hopping Decl. ¶ 46. | 85. Disputed. Mr. Hopping does not describe how these 7 purported facts would be responsive to each of these three questions. The fact also does not describe the basis for Mr. Hopping's belief about what is responsive to questions in the GuideOne Application, which MedPro did not draft.<br>The fact does not describe whether Mr. Hopping considered Lighthouse's cumulative submissions, which disclosed recent CDPH deficiencies, and the absence of Ms. Donnell's death in the Loss Run, despite the purported lack of disclosure on these three |

| | |
|---|---|
| | specific questions.<br><br>Plaintiff objects to this statement as lacking foundation.<br><br><br>Evidence: Evidence: Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122) at MP-NFM-LH 007820-26 (Unsigned, Undated GuideOne Application); NFM-LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Wagner Decl., Ex. D, Pulley Tr., 32:23-33:2; 33:19-23, 42:24-43:6; 48:15-49:14; 52:16-53:21; 58:7-59:12; 59:21-60:9; 62:14-63:17; 65:17-66:4; Neumann Decl., Ex. 4-I (Riss Depo Tr. Exhibit 134 at MP-NFM-LH 007946-47; 7950). |

| | |
|---|---|
| 86. Mr. Hopping declares that the purpose of the application process and the information requested therein is to allow the underwriter to evaluate the nature of the risk being submitted for consideration.<br><br>*Evidence:* Hopping Decl. ¶ 47. | 86. Undisputed that Mr. Hopping so declares.<br>Disputed to the extent that MedPro did not require Lighthouse to respond to all questions in the NFMI Application, nor provide all "required documents". MedPro admitted that it was not necessarily interested in all of the information and documents sought by the NFMI Application.<br>MedPro also conducted a risk assessment only after Policy issuance, and agreed that it issues policies before assessing risks.<br>Further disputed to the extent that MedPro did not request the information in the GuideOne Application.<br>Evidence: Neumann Decl., Ex. 4-I (Riss Depo Tr. Exhibit 134 at MP-NFM-LH 007946-47; 7950); Wagner Decl., Ex. |

| | |
|---|---|
| | D, Pulley Tr., 24:23-25; 32:9-10; 48:15-49:14; 52:16-53:21; 58:7-59:12; 59:21-60:9; 62:14-63:17. |
| 87. Mr. Hopping declares that information bearing on whether claims have been made or may be made against the insured during the policy period is particularly important and is among the most important information he considers in assessing the risk to be insured. This includes the information requested in Section VI, Questions 5 and 6 of the GuideOne Application, and Section IV.F of the NFMI Application, regarding complaints, investigations, existing claims, and incidents and circumstances that could give rise to a claim.<br><br>*Evidence:* Hopping Decl. ¶ 47. | 87. Undisputed that Mr. Hopping so declares.<br>Disputed to the extent that MedPro conducted no inquiry into how Lighthouse construed these questions on the GuideOne Application. MedPro did not draft this document, and Mr. Hopping otherwise does not state that he had any particular understanding of undefined terms in the questions. Nor does Mr. Hopping identify what he understood that Lighthouse was representing by its answers to any of these questions on either application.<br><br>Evidence: Neumann Decl., Ex. 4-I (Riss Depo Tr. Exhibit 134 at MP- |

| | |
|---|---|
| | NFM-LH 007946-47; 7950); Wagner Decl., Ex. D, Pulley Tr., 24:23-25; 32:9-10; 48:15-49:14; 52:16-53:21; 58:7-59:12; 59:21-60:9; 62:14-63:17. |
| 88. Mr. Hopping declares that such information is especially material to underwriting when the requested coverage is claims-made coverage, since the policy could cover claims first made during the policy period, but arising from earlier incidents or circumstances.<br><br>*Evidence:* Hopping Decl. ¶ 47. | Undisputed that Mr. Hopping so declares.<br>Disputed to the extent that MedPro conducted no inquiry into how Lighthouse construed the purportedly "important" Questions 5 and 6 on the GuideOne Application nor Question VI.F on the NFMI Application, even though Lighthouse's responses were ambiguous: "N/A" to Question 5 on the GuideOne Application with Question 6 left blank; and "N/A" to VI.F on the NFMI Application.<br>Dispute to extent that the fact is unclear as to what Mr. Hopping understood the GuideOne Application to be asking: |

| | |
|---|---|
| | MedPro did not draft the GuideOne Application, and he otherwise does not state that he had any particular understanding of undefined terms in the questions. Nor does Mr. Hopping identify what he understood that Lighthouse was representing by its answers to any of these questions on either application.<br>Plaintiff objects to this statement as lacking foundation.<br><br>Evidence: Neumann Decl., Ex. 4-I (Riss Depo Tr. Exhibit 134 at MP-NFM-LH 007946-47; 7950); Wagner Decl., Ex. D Pulley Tr., 24:23-25; 32:9-10; 48:15-49:14; 52:16-53:21; 58:7-59:12; 59:21-60:9; 62:14-63:17. |
| 89. Mr. Hopping declares that because Plaintiff sought claims-made-and-reported coverage with a | 89. Undisputed that Hopping so declares. |

| | |
|---|---|
| retroactive date of March 1, 2007-under which the Policy could respond to claims first made during the policy period but arising from incidents or circumstances occurring earlier-it was important to him in underwriting the risk to have assurance that all known incidents, circumstances, complaints, and investigations that might give rise to a claim had been disclosed and reported to Plaintiffs prior insurers.<br><br>*Evidence:* Hopping Decl., ¶ 48. | Disputed to the extent that MedPro conducted no inquiry into how Lighthouse construed the purportedly "important" Questions 5 and 6 on the GuideOne Application nor Question VI.F on the NFMI Application, even though Lighthouse's responses were ambiguous: "N/A" to Question 5 on the GuideOne Application with Question 6 left blank; and "N/A" to VI.F on the NFMI Application.<br><br>Disputed to extent that the fact is unclear as to what Mr. Hopping understood the GuideOne Application to be asking: MedPro did not draft the GuideOne Application, and he otherwise does not state that he had any particular understanding of undefined terms in the questions. Nor does Mr. Hopping identify what he understood |

| | |
|---|---|
| | that Lighthouse was representing by its answers to any of these questions on either application.<br>Plaintiff objects to this statement as lacking foundation.<br><br>Evidence: Neumann Decl., Ex. 4-I (Riss Depo Tr. Exhibit 134 at MP-NFM-LH 007946-47; 7950); Wagner Decl., Ex. D, Pulley Tr., 24:23-25; 32:9-10; 48:15-49:14; 52:16-53:21; 58:7-59:12; 59:21-60:9; 62:14-63:17. |
| 90. Based on his experience underwriting senior care liability risks, Mr. Hopping would have expected that a resident's death at Plaintiffs facility near the time of underwriting-followed by repeated records requests, a request for a private autopsy, complaints to state agencies, and a CDPH | Disputed. This hypothetical assertion is belied by the actual facts. Prior to issuing the Policy, MedPro knew that Ms. Donnell's husband intended to file suit based on alleged misconduct resulting in Ms. Donnell's death in June 2016. Mr. Hopping also personally knew that Lighthouse had |

| | |
|---|---|
| investigation-would have been reported to Plaintiffs prior insurer. To Mr. Hopping, had those events occurred and not been reported, that circumstance would itself have presented a substantial underwriting concern.<br>*Evidence:* Hopping Decl., ¶ 49. | tendered a notice related to the name "Donnell" prior to Policy issuance. MedPro underwriting also had a Loss Run showing that Ms. Donnell's death had not been reported to the prior carrier by November 2016 and an NHC Report documenting multiple deficiencies found in 2016. Contrary to Mr. Hopping's declaration, in spite of this information, MedPro and Mr. Hopping issued the Policy without further inquiry.<br>The fact's statements about a request for private autopsy and a CDPH complaint and investigation are hypothetical, as Mr. Hopping lacks personal knowledge of whether these occurred.<br>Evidence: Riss Ex. 136; MP-NFM-LH 009089; NFM-LH 007837-47 |

| | |
|---|---|
| | (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Wagner Decl., Ex. A, Strother Depo Tr. At 41:20-22, 42:13-25; 43:16-44:9; 47:13-17 |
| 91. In its Policy applications, Plaintiff failed to disclose the facts identified above in Paragraph 83, including the facts that Mrs. Donnell's family had submitted complaints to the California Department of Aging and CDPH, and that CDPH had investigated Plaintiffs care of Mrs. Donnell.<br>*Evidence:* Hopping Decl. ¶ 50. | 91. Disputed.<br>Lighthouse submitted Mr. Donnell's March 1, 2017 Notice of Intent to Sue, which alleged Ms. Donnell's June 24, 2016 death, to MedPro prior to Policy issuance. Mr. Hopping was informed that Lighthouse had tendered in relation to Ms. Donnell prior to Policy issuance.<br>Hopping's statements as to c., f. and g. rely on facts that have not been established.<br>Disputed that Lighthouse did not disclose the issuance of deficiencies |

| | |
|---|---|
| | issued during 2016 in its application materials.<br><br>Evidence: Riss Ex. 136 (E-Mail to MedPro tendering *Donnell* Notice); MP-NFM-LH 009089 (March 16, 2017 E-Mail from Hopping responding to *Donnell* inquiry with a copy of the binder);, NFM-LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Wagner Decl., Ex. A, Strother Depo Tr. At 41:20-22, 42:13-25; 43:16-44:9; 47:13-17 |
| 92. This information would have impacted Mr. Hopping's decisions to quote, bind, and underwrite the risk, as well as the premium quoted, had it been made known to him during the underwriting process. | Disputed. The fact is vague as to what "information" would have impacted his underwriting.<br>Further, Mr. Hopping had knowledge of Lighthouse's 2016 deficiencies, the |

| | |
|---|---|
| *Evidence:* Hopping Decl. ¶ 51. | fact that Lighthouse had tendered a notice for *Donnell* days after binding coverage, as well as the fact that no incident related to Ms. Donnell appeared on the Loss Runs. Mr. Hopping does not state whether this knowledge did affect his underwriting decisions.<br>To the extent that "this information" refers to the purported *Donnell* family request for an autopsy, complaint to CDPH, and subsequent investigation, these are not established facts.<br><br>Plaintiff objects to this statement as lacking foundation.<br><br>Evidence: Riss Ex. 136 (E-Mail to MedPro tendering *Donnell* Notice); MP-NFM-LH 009089 (March 16, |

| | |
|---|---|
| | 2017 E-Mail from Hopping responding to *Donnell* inquiry with a copy of the binder); NFM-LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Wagner Decl., Ex. A, Strother Depo Tr. At 41:20-22, 42:13-25; 43:16-44:9; 47:13-17. |
| 93. Mr. Hopping declares that had he known of any of those facts-including the true answers to Section VI, Questions 5 and 6 of the GuideOne Application, and Section IV.F of the NFMI Application-while underwriting the Policy, he would have quoted and issued the Policy on different terms, or not issued it at all.<br>*Evidence:* Hopping Decl., ¶ 52. | 93. Disputed. The fact is vague as to the meaning of "those facts". The fact also does not identify what the "true answers" to Section VI, Questions 5 and 6 of the GuideOne Application, and Section IV.F of the NFMI Application are, nor the basis for what he contends the "true answers" to be. Disputed to the extent that "these facts" refers back to the "facts" stated in |

| | |
|---|---|
| | UMF 83. Lighthouse restates that dispute below:<br>Lighthouse submitted Mr. Donnell's March 1, 2017 Notice of Intent to Sue, which alleged Ms. Donnell's June 24, 2016 death, to MedPro prior to Policy issuance. Mr. Hopping was informed that Lighthouse had tendered in relation to Ms. Donnell prior to Policy issuance.<br>Hopping's statements as to c., f. and g. rely on facts that have not been established.<br>Disputed that Lighthouse did not disclose the issuance of deficiencies issued during 2016.<br>Plaintiff objects to this statement as lacking foundation.<br><br>Evidence: Riss Ex. 136 (E-Mail to |

| | |
|---|---|
| | MedPro tendering *Donnell* Notice); MP-NFM-LH 009089 (March 16, 2017 E-Mail from Hopping responding to *Donnell* inquiry with a copy of the binder); NFM-LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Wagner Decl., Ex. A, Strother Depo Tr. At 41:20-22, 42:13-25; 43:16-44:9; 47:13-17 |
| 94. Most likely, Mr. Hopping would have either (i) quoted the Policy with a higher premium, or, more likely, (ii) expressly excluded any claim related to Mrs. Donnell from the scope of coverage provided by the Policy.<br><br>*Evidence:* Hopping Decl., ¶ 52. | 94. Disputed. The fact does not identify what would have caused Mr. Hopping to have changed the Policy terms. It is vague as to which asserted omission would have caused this result, or how these purported omissions would have collectively caused this result.<br>Disputed to the extent that Mr. |

| | |
|---|---|
| | Hopping had knowledge of Lighthouse's 2016 deficiencies, the fact that Lighthouse had tendered a notice for *Donnell* days after binding coverage, as well as the fact that no incident related to Ms. Donnell appeared on the Loss Runs as of Policy issuance.<br>To the extent that the fact asserts that any of the purported *Donnell* family request for an autopsy, complaint to CDPH, and subsequent investigation, would have caused Mr. Hopping to change Policy terms, these are not established facts.<br>Plaintiff objects to this statement as lacking foundation.<br><br>Evidence: Riss Ex. 136 (E-Mail to MedPro tendering *Donnell* Notice); |

| | |
|---|---|
| | MP-NFM-LH 009089 (March 16, 2017 E-Mail from Hopping responding to *Donnell* inquiry with a copy of the binder); NFM-LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Wagner Decl., Ex. A, Strother Depo Tr. At 41:20-22, 42:13-25; 43:16-44:9; 47:13-17. |
| 95. Mr. Hopping declares that, at a minimum, had he known of any such complaint, investigation, or other potentially significant incident at the time of underwriting, he would have sought additional information from Plaintiff before deciding whether, and on what terms, to extend coverage.<br><br>*Evidence:* Hopping Decl., ¶ 53. | 95. Undisputed that Mr. Hopping so declares. Disputed to the extent that Mr. Hopping and underwriting were provided with notice of Lighthouse's 2016 deficiencies, the fact that Lighthouse had tendered a notice for *Donnell* just days after binding coverage, as well as the fact that no incident related to Ms. Donnell appeared on the Loss Runs as of Policy |

| | |
|---|---|
| | issuance. Mr. Hopping did not make further inquiry about this information prior to issuing the Policy, and does not identify whether he modified any quote or Policy terms as a result of this information.<br><br>Plaintiff objects to this statement as lacking foundation.<br><br>Evidence: Riss Ex. 136 (E-Mail to MedPro tendering *Donnell* Notice); MP-NFM-LH 009089 (March 16, 2017 E-Mail from Hopping responding to *Donnell* inquiry with a copy of the binder); NFM-LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Wagner Decl., Ex. A, Strother Depo Tr. At 41:20-22, 42:13- |

| | |
|---|---|
| | 25; 43:16-44:9; 47:13-17. |
| 96. Mr. Hopping declares that increasing the premium, adding an exclusion for the known incident, or declining the risk altogether are common and ordinary underwriting responses when MedPro learns of a significant risk-related incident during the application process.<br><br>*Evidence:* Hopping Decl. ¶ 54. | 96. Undisputed that Mr. Hopping so declares. Disputed to the extent that Mr. Hopping and underwriting were provided with notice of Lighthouse's 2016 deficiencies, the fact that Lighthouse had tendered a notice for *Donnell* just days after binding coverage, as well as the fact that no incident related to Ms. Donnell appeared on the Loss Runs as of Policy issuance. The fact does not indicate whether MedPro accounted for any of this information during its underwriting.<br>Evidence: Riss Ex. 136 (E-Mail to MedPro tendering *Donnell* Notice); MP-NFM-LH 009089 (March 16, 2017 E-Mail from Hopping responding to *Donnell* inquiry with a copy of the |

| | |
|---|---|
| | binder); NFM-LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Wagner Decl., Ex. A, Strother Depo Tr. At 41:20-22, 42:13-25; 43:16-44:9; 47:13-17. |
| 97. Mr. Hopping declares that NFMI issued the Policy on the terms offered based on its belief that the information provided by Plaintiff on the applications was truthful, and that Plaintiff's failure to disclose information regarding Mrs. Donnell denied him the opportunity to accurately assess the risk to be insured, whether NFMI wished to take on that risk, and, if so, the terms on which coverage would be offered.<br><br>*Evidence:* Hopping Decl. ¶ 55. | Undisputed that Mr. Hopping so declares.<br><br>Disputed. The fact does not identify how the information submitted by Lighthouse was not truthful. Disputed that Mr. Hopping and MedPro were denied the opportunity to accurately assess the risk. Mr. Hopping and underwriting were provided with notice of Lighthouse's 2016 deficiencies, the fact that Lighthouse had tendered a notice for *Donnell* just days after binding coverage, as well as the fact that |

| | |
|---|---|
| | no incident related to Ms. Donnell appeared on the Loss Runs as of Policy issuance. The fact does not indicate whether MedPro accounted for any of this information during its underwriting. MedPro did not make further inquiry related to this information before or after issuing the Policy. NFMI testified that it performs no independent underwriting nor oversight of MedPro's underwriting.<br><br>MedPro also assigned certain subjectivities, including the need for a risk assessment, as a Policy condition. The resulting Risk Assessment Report and Tool, which MedPro's underwriting department received, further disclosed citations. Neither Mr. Hopping nor anyone else at MedPro made any further inquiry in light of these disclosures. |

| | |
|---|---|
| | MedPro's underwriting deponent further testified that it was MedPro's practice to issue policies before inquiring into risks.<br>Plaintiff objects to this statement as lacking foundation.<br><br>Evidence: Riss Ex. 136 (E-Mail to MedPro tendering *Donnell* Notice); MP-NFM-LH 009089 (March 16, 2017 E-Mail from Hopping responding to *Donnell* inquiry with a copy of the binder); NFM-LH 007837-47 (December 8, 2016 Medicare.Gov Nursing Home Compare Report); MP-NFM-LH 007828 (November 9, 2016 Loss Run); Pulley Depo., 102:21-103:21, 107:2-7; 65:17-66:4; Karnik Tr. 15:17, 16:20-25, 21:9-10; Wagner Decl., Ex. A, Strother Depo Tr. At |

| | |
|---|---|
| | 41:20-22, 42:13-25; 43:16-44:9; 47:13-17. |
| 98. In responding to Defendants' interrogatories, Plaintiff admitted that "[b]y February 28, 2017, [Plaintiff] was aware that a liability claim [arising from the *Donnell* Incident] was possible."<br><br>*Evidence:* Neumann Decl., Ex. 1 (Pl. Resp. to Defs. RFA No. 2). | 98. Disputed. The fact is vague as to the meaning of the word "possible", which is not the same as "likely" or "probable". |
| | |
| **Plaintiff's Undisputed Material Facts in Opposition to Motion for Summary Judgment** | **Plaintiff's Supporting Evidence** |
| 99. Lighthouse understood, as of March 2017, that the California Department of Public Health ("CDPH") had "looked into" the June 24, 2016 death of former resident Valerie Donnell, but that no complaint had been substantiated. | Ex. 2-B (Pl. 30(b)(6) Depo Tr. Exhibit 39). |
| 100. The December 9, 2016 submission of documents by AmWINS to MedPro | Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122); Wagner Decl., Ex. D, |

| | |
|---|---|
| included an undated and unsigned GuideOne Senior Living Supplemental Application ("GuideOne Application") that MedPro had not requested in order to generate an insurance quote. | Pulley Tr., 24:23-25; 32:9-10. |
| 101. MedPro followed up on other application materials, but made no inquiry into when as to who filled the application out, when, or when it was transmitted to AmWINS, nor any clarification of any response therein. | Wagner Decl., Ex. D, Pulley Tr., 32:23-33:2; 33:19-23, 42:24-43:6. |
| 102. AmWINS' December 2016 submission also included a Medicare Nursing Home Compare profile ("NHC Report") retrieved on December 8, 2016. This report disclosed two CDPH inspections of Lighthouse since July 2015, with deficiencies issued. | Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122) at MP-NFM-LH 007837-7847. |
| 103. AmWINS' December 2016 submission to MedPro also included | Neumann Decl., Ex. 4-A (Riss Depo Tr. Exhibit 122) at MP-NFM-LH |

| | |
|---|---|
| Loss Runs from prior carriers through November 2016; Ms. Donnell did not appear on them | 007828-7830. |
| 104. Lighthouse's returned NFMI Application lacked answers for numerous questions, including ones about the provision of rehabilitation services, and whether Lighthouse contracted for various forms of therapy. MedPro testified that it never sought to obtain the missing answers because "some questions are more important than others". | Wagner Decl., Ex. D, Pulley, 48:15-49:14; 52:16-53:21; 58:7-59:12; Neumann Decl., Ex. 4-H (Riss Depo Tr. Exhibit 132) at Amwins_0001036, Amwins_0001041, Amwins_0001044. |
| 105. The NFMI Application also purportedly required the submission of additional documents, including resumes, CDPH survey reports, substantiated complaints, and Center for Medicare Services Staffing and Census forms. Lighthouse did not | Wagner Decl., Ex, D, Pulley Depo., 59:21-60:9; 62:14-63:17. |

| | |
|---|---|
| provide any of these, and Defendants made no inquiry as to why. | |
| 106. On or about March 7, 2017, Lighthouse administrator David Strother received a March 1, 2017 Notice of Intent to Commence Legal Action ("Donnell Notice") sent by counsel for Ms. Donnell's husband, alleging that Ms. Donnell's estate "suffered injury and damages as a result of diagnosis, treatment, surgery and/or care that occurred on or about, without limitation, May 1, 2016 to June 24, 2016". | Neumann Decl., Ex. 2-A (Pl. 30(b)(6) Depo Tr. Exhibit 3 at ID #960); Ex. 2-B. |
| 107. In an e-mail dated March 8, 2017, David Strother described what he knew or had been told and believed about the circumstances surrounding Ms. Donnell's death: The Resident was here for < 2 days and died without warning. The family came upon notification of | Neumann Decl., Ex. 2-B. |

| | |
|---|---|
| death and was upset Re: the matter. To my knowledge; they were planning to pay for a private autopsy. The family requested a complete copy of the health record and filed a complaint with CDPH. However, CDPH was not able to substantiate any concern(s) R/T the care of this Resident. | |
| 108. Lighthouse caused the *Donnell* Notice to be tendered to MedPro on March 7, 2017. | Exhibit 136, March 8, 2017 E-Mail from Steven Riss to Alysha Olsen. |
| 109. A MedPro adjuster notified MedPro's underwriting team about the *Donnell* Notice on March 16, 2017; John Hopping responded that the Policy had not been issued and provided the binder. | MP-NFM-LH 009089 (March 16, 2017 E-Mail from Hopping responding to *Donnell* inquiry with a copy of the binder) |
| 110. Lighthouse received no further communications from Defendants about the *Donnell* Notice or their applications before Defendants issued the Policy on April 3, 2017. | Declaration of Laib Greenspoon ("Greenspoon Decl."), ¶¶ 3-5; Ex. 5 (OASIS Case Summary Report). |
| 111. On April 28, 2017, Lighthouse | Wagner Decl., Ex. D, Pulley, 97:13- |

| | |
|---|---|
| completed the required on-site risk assessment, which generated a May 22, 2017 report. MedPro admits that it has no knowledge of the basis for any finding in that report, and its underwriting expert never read it. | 101:18; Ex. F, Anderson, 97:7-99:16. |
| 112. MedPro's contractor also generated a Risk Assessment Tool following the on-site assessment, which she provided to the underwriting department, which identifies that Lighthouse had received citations in 2015. | Wagner Decl., Ex. D, Pulley Depo., 102:21-103:21, 107:2-7; Ex. 120 at MP-NFM-LH 008166. |
| 113. When asked why this on-site risk assessment was conducted *after* the Policy was already bound and issued, MedPro conceded that its practice was to issue policies first and then ask questions after. | Wagner Decl., Ex. D, Pulley 65:17-66:4. |

| | |
|---|---|
| 114. Between 2017 and 2019, Lighthouse received no communication from Defendants regarding the *Donnell* Tender or its Policy application. | Greenspoon Decl., ¶ 9. |
| 115. MedPro did not communicate to Lighthouse any intent to rescind the Policy following the October 11, 2019 tender of a lawsuit filed by Mr. Donnell ("*Donnell* Suit") and August 11, 2026. | Greenspoon Decl., ¶ 10. |
| 116. After Lighthouse filed this action, Defendants neither filed a counterclaim for rescission, nor plead it as an affirmative defense. | Wagner Decl., ¶ 12. |
| 117. On December 5, 2025, Lighthouse produced documents, including the March 8, 2017 David Strother e-mail to Laib Greenspoon relied upon by Defendants, as the very first document. | Wagner Decl., ¶¶ 9, 10, Exs. G, H. |
| 118. Though the parties had mutually agreed to extend various other case | Wagner Decl, ¶ 11. |

| | |
|---|---|
| deadlines, Defendants never sought a stipulation or leave of Court to amend their answer or otherwise claim rescission. | |
| 119. When Lighthouse sought Rule 30(b)(6) deponents specifically on underwriting, Defendants did not produce John Hopping or any other underwriter of the Policy in issue. | Wagner Decl., ¶ 13; Ex. D, Pulley Tr., 8:6-11. |
| 120. MedPro produced a Rule 30(b)(6) deponent on underwriting who had not reviewed any internal MedPro underwriting materials, any of Hopping's documents related to the *Donnell* claim, and did not speak to Hopping or any other Policy underwriter to prepare for the deposition, and had few answers about the specifics of the Policy's underwriting. | Wagner Decl., Ex. D, Pulley 8:6-11; 28:10-14; 25:20-25; 15:2-17; 16:16-21; 33:14-34:24; 37:21-39:14, 48:8-49:6; 52:16-53:21; 67:15-68:9. |

| | |
|---|---|
| 121. Defendant NFMI's Rule 30(b)(6) deponent testified that it performs no independent underwriting or oversight of MedPro's underwriting. | Wagner Decl., Ex, E, Karnik 15:17, 16:20-25, 21:9-10. |
| 122. If Lighthouse had been aware of Defendants' request for rescission, and John Hopping's relevance to the issue earlier, it would have pursued the deposition of John Hopping, sought better prepared Rule 30(b)(6) deponents, and/or served contention interrogatories related to rescission. | Wagner Decl., ¶ 13. |
| 123. After Defendants' August 11, 2026 disclosure of their request for rescission, Defendants' retained expert on underwriting drafted a report without speaking to anyone involved in the underwriting of the Policy, expressed that any reference to rescission in the materials he cited was tangential to this | Wagner Decl., Ex. F, Anderson Tr., 7:10-29; 49:2-19; Ex. C, Anderson Report Excerpt, p. 32. |

| | |
|---|---|
| case, and explicitly stated that he expressed “no opinion” on whether Defendants would have taken any particular action if Plaintiff had affirmatively disclosed all of the circumstances that followed Ms. Donnell’s death. | |
| 124. Lighthouse did not conduct any investigation into the death of Valerie Donnell, nor any complaint related to her death. | Greenspoon Decl., ¶ 14. |
| 125. MedPro’s Rule 30 (b)(6) underwriting deponent admitted that Question 5 on the GuideOne Application was susceptible to multiple interpretations. | Wagner Decl., Ex. D, Pulley Depo., 37:4-38:6. |
| 126. Judge Wright’s Standing Order, and the Scheduling Order initially issued in this case require parties who seek leave to amend pleadings after the | Wagner Decl., ¶ 14, Ex. I; D.E. 20, 6:24-7:1. |

| | |
|---|---|
| relevant cutoff date to address the propriety of the amendment under *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). | |
| 127. MedPro's Rule 30(b)(6) deponent on underwriting agreed that MedPro does not ask for copies of unsubstantiated complaints because it is not interested in them. | Wagner Decl., Ex. D, Pulley Tr., 60:10-61:19. |
| | |
| | |
| | |

DATED: November 2, 2026

THE WAGNER FIRM

By: *__/s/ Avi Wagner*

Avi Wagner
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310)491-7949
Facsimile: (310)694-3967
Email: avi@thewagnerfirm.com
*Attorneys for Plaintiff Lighthouse Healthcare Center, LLC*